1   John Burton, State Bar No. 86029
    THE LAW OFFICES OF JOHN BURTON
2   414 South Marengo Avenue
    Pasadena, California  91101
3
    Telephone:  (626) 449-8300
4   Facsimile:   (626) 449-4417
    E-Mail:      jb@johnburtonlaw.com
5
    PETER M. WILLIAMSON, State Bar No. 97309
6   WILLIAMSON & KRAUSS
    18801 Ventura Boulevard., Suite 206
7   Tarzana, California  91356
8   Telephone:  (818) 344-4000
    Facsimile:   (818) 344-4899
9   E-Mail:      pmw@williamson-krauss.com
10  Attorneys for Plaintiffs Betty Lou Heston, individually,
    and Robert H. Heston, individually and
11  as the personal representatives of Robert C. Heston, deceased

12

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15

16  BETTY LOU HESTON, individually,        Case No. C 05-03658 JW
    and ROBERT H. HESTON,
17  individually and as the personal       **PLAINTIFFS' MEMORANDUM OF**
    representatives of ROBERT C.           **LAW IN OPPOSITION TO**
18  HESTON, deceased,                      **MOTION TO DISMISS OF**
                                           **DEFENDANT TASER**
19              Plaintiffs,                **INTERNATIONAL, INC.**

20       v.                                Date: March 13, 2005
                                           Time: 9:00 a.m.
21  CITY OF SALINAS and SALINAS            Courtroom: 8
    POLICE DEPARTMENT, SALINAS
22  POLICE CHIEF DANIEL ORTEGA,
    TASER  INTERNATIONAL, INC.,
23  and DOES 1 to 10,

24              Defendants.

25

26

27

28

1  **1.     INTRODUCTION**

2         This civil rights and products liability action arises from the death of Robert C.

3  Heston while being subdued by police officers using a controversial electrical control

4  weapon manufactured by defendant Taser International, Inc. The police officer

5  defendants have answered the complaint. Taser, however, filed a Rule 12(b)(6) motion

6  to dismiss both the negligence and strict liability causes of action against it, as well as

7  a purported breach of warrantee claim not even in the complaint, claiming that it owed

8  no duty of care to the decedent because he was not the buyer or end user of the product,

9  and that it does not manufacture a product subject to strict liability.

10        The motion is  contrary to well-established California law and should be denied.

11 **2.     STATEMENT OF FACTS**

12        As alleged in the complaint, on February 20, 2005, plaintiff Robert H. Heston

13 called 911 because his son, Robert Clark Heston, was acting strangely and Mr. Heston

14 suspected his son – who had a history of  substance abuse – might be under the

15 influence.  Salinas Police Department responded to the call.  An officer came to the

16 Heston home spoke with Mr. Heston, who requested that officers remove Robert from

17 his property for his own good.  The officer said he could not arrest Robert if he had not

18 committed an illegal act and left.  Robert's agitation and paranoia escalated.  He yelled

19 out delusionally to his father that the police were barricading the area and were going

20 to kill them. Mr. Heston and other family members tried to calm him down verbally

21 without success.  Robert started throwing household items out the front door. 911 was

22 called again. Complaint, paras. 12-13.

23        Police returned to the house.  Three officers shot Robert with Taser weapons and

24 Robert went down on the living room floor.He was screaming in agony. Taser wires

25 ran from his body to the officers' weapons.  The officers continued to discharge their

26 Tasers, multiple times, until  Robert no longer moved or made any sound. The officers

27 pinned him on his chest and applied their body weight, suffocating him. He died later

28 at the hospital. Complaint, paras. 14-15.

1    **3.    STANDARD OF REVIEW**

2        The Court must decide whether the facts alleged, if true, would entitle plaintiffs

3    to a legal remedy. Unless the answer is unequivocally "no," a Rule 12(b)(6) motion

4    should be denied. *Conley v. Gibson*, 355 US 41, 45-46 (1957);  *De La Cruz v. Tormey*,

5    582 F.2d 45, 48 (9th Cir. 1978). A Rule 12(b)(6) dismissal is proper only where there

6    is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged

7    under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699

8    (9th Cir. 1990); *Graehling v. Village of Lombard, III.*, 58 F.3d 295, 297 (7th Cir. 1995)

9    ("A suit should not be dismissed if it is possible to hypothesize facts, consistent with

10   the complaint, that would make out a claim.") The Court must construe the complaint

11   in the light most favorable to plaintiffs, accepting the allegations as true, and determine

12   whether plaintiffs can prove any set of facts to support a claim that would merit relief.

13   *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

14       "The motion to dismiss for failure to state a claim is viewed with disfavor and

15   is rarely granted." *Gilligan v. Jamco Develop. Corp.* 108 F.3d 246, 249 (9th Cir. 1997).

16   **4.    PLAINTIFFS HAVE ALLEGED A NEGLIGENCE CAUSE OF ACTION**

17   **AGAINST TASER INTERNATIONAL, INC.**

18       Defendant Taser contends that it cannot be held liable in negligence for the death

19   of Mr. Heston, even if proximately caused by the use of its electric control weapon,

20   because "there is no contractual privity," and therefore no basis for the imposition of

21   a duty of care. Taser's Memorandum at 5.

22       Taser's argument boils down to the now legally discredited contention that it

23   owed the decedent no duty of care because he was not a purchaser or end user of its

24   product. More than 35 years ago, the California Supreme Court rejected precisely this

25   contention in *Pike v. Frank G. Hough Co.*, 2 Cal.3d 465 (1970), holding that a

26   "'manufacturer of a chattel made under a plan or design which makes it dangerous for

27   the uses for which it is manufactured is subject to liability to others whom he should

28   expect to use the chattel *or to be endangered by its probable use* for physical harm

1   caused by his failure to exercise reasonable care in the adoption of a safe plan or

2   design.'" *Id*. at 470 (quoting Rest.2d Torts § 398) (emphasis added).

3        In paragraphs 41 through 46 of the Complaint, plaintiffs alleged, among other

4   things, that Taser manufactured the electric shock weapons used against the decedent,

5   that it negligently and carelessly designed and manufactured the weapon in that it was

6   capable of causing personal injuries to persons while being used in a manner

7   reasonably foreseeable, that it was sold to police agencies without adequate warnings

8   of these dangers, and that the decedent died as a result of the use of the product on his

9   person.

10       These allegations are adequate to state a cause of action for negligence against

11  Taser. The gravamen of plaintiffs' products liability claims is that Taser is

12  manufacturing and selling electrical control weapons representing them to be not

13  deadly, without adequately testing for dangers or warning customers – law enforcement

14  agencies intending to use the weapons on people such as plaintiffs' decedent – about

15  the dangers of applying multiple shocks followed by aggressive restraint procedures

16  including chest compressions. Failures to warn give rise to both negligence and strict

17  liability. *Finn v. G.D. Searle & Co.*, 35 Cal.3d 691, 700-01 (1984).

18       In the present case, Taser provides its electrical control weapons to law

19  enforcement as a "non-lethal" device for "violent confrontations" by incapacitating the

20  human body through the delivery of five-second shocks of 50,000 volts of electricity.

21  Taser cannot legitimately claim that it owed no duty to decedent, who died after being

22  subjected to the product's intended use, and that, if the product was more dangerous

23  than Taser indicated to its customers, decedent's injuries were not readily foreseeable.

24       Moreover, plaintiffs' allegations fall squarely within the ambit of a California

25  jury instruction on point:

26            One who supplies a product . . . for another to use, which the

27        supplier knows or has reason to know is dangerous or is likely to be

28        dangerous for the use for which it is supplied, has a duty to use reasonable

1    care to give warning of the dangerous condition of the product or of facts

2    which make it likely to be dangerous to those whom the supplier should

3    expect to use the product *or be endangered by its probable use*, if the

4    supplier has reason to believe that they will not realize its dangerous

5    condition. A failure to fulfill that duty is negligence.

6    BAJI 9.20 (emphasis added).

7    Finally, Taser asserts that it owes no duty to decedent under the rationale of

8    *Adkinson v. Rossi Arms Co.* 659 P.2d 1236 (Alaska 1983), in which plaintiffs sought

9    damages from a shotgun manufacturer "for the consequences of an intentional

10   homicide." *Id*. at 1239-40. The case is obviously distinguishable. There, the shotgun,

11   a deadly weapon, was used as designed to cause the death of a third person. Here,

12   Taser's electrical control weapon was used as a supposedly non-lethal alternative to a

13   firearm, without the officers being warned about the dangers of inflicting repeated

14   shocks followed by chest compressions. During this intended and foreseeable use of

15   the electrical control weapon, injuries were inflicted to Mr. Heston which resulted in

16   his death.

17   Plaintiffs should have their day in court on the Seventh Cause of Action.

18

19

20

21

22

23

24

25

26

27

28

1   **5.    PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUPPORT**
2   **THEIR STRICT LIABILITY CAUSE OF ACTION AGAINST TASER FOR**
3   **FAILURE TO WARN ON THE DANGERS OF ITS ELECTRIC CONTROL**
4   **WEAPON.**

5       Taser argues that because the decedent was not the "buyer or end user of the
6   Taser™,"  Taser's Memorandum at 10, it cannot be held strictly liable unless its
7   product is "abnormally dangerous."  That is not the law.

8       An entity may be strictly liable in tort when a product it places on the market,
9   knowing that it is to be used without inspection for defects, proves to have a defect that
10  causes injury to a human being.  *Greenman v. Yuba Power Products, Inc.* 59 Cal. 2d
11  57 (1963). The rule first enunciated in *Greenman* "extends its protection to the injured
12  party without reference to the role he played, or even if he played none, in the
13  transaction wherein the defective chattel was acquired from its purveyor." *McClaflin*
14  *v. Bayshore Equipment Rental Co.*, 274 Cal. App. 2d 446, 452 (1969).

15      Accordingly, the rule of strict liability does not require that the injured party be
16  a purchaser or even an end user of the product.

17          If anything, bystanders should be entitled to greater protection than the
18          consumer or user where injury to bystanders from the defect is reasonably
19          foreseeable. Consumers and users, at least, have the opportunity to inspect
20          for defects and to limit their purchases to articles manufactured by
21          reputable manufacturers and sold by reputable retailers, whereas the
22          bystander ordinarily has no such opportunities. In short, the bystander is
23          in greater need of protection from defective products which are
24          dangerous, and if any distinction should be made between bystanders and
25          users, it should be made, contrary to the position of defendants, to extend
26          greater liability in favor of the bystanders.
27  *Elmore v. American Motors Corp.*, 70 Cal.2d 578, 586 (1969).

28          Taser asserts that its weapon is not "abnormally dangerous" as a matter of law

1    but  fails to cite one single authority for this proposition, or even for the proposition

2    that plaintiffs must show a product's danger to trigger strict liability.

3         For notice pleading purposes, *Greenman* requires that plaintiffs only allege that

4    defendant's electrical control weapons are defectively designed or manufactured and

5    that the defect, which may consist solely of a failure to warn of certain dangers,

6    proximately caused the injury to the decedent. Plaintiffs have pled these allegations.

7    Second Amended Complaint, paras. 47-50.[1]

8         Whether Taser's product is defective, and whether its defects played a role in Mr.

9    Heston's demise are questions of fact for the jury to determine after hearing the

10   evidence. They are not straightforward questions of law susceptible to disposition on

11   a Rule 12(b)(6) motion. Accordingly, the motion to dismiss the Eighth Cause of Action

12   should be denied as well.[2]

13   **6.     CONCLUSION**

14        For the foregoing reasons, the motion of defendant Taser International, Inc., to

15   dismiss plaintiff's Seventh and Eighth Causes of Action should be denied, and this

16   defendant should be ordered to answer the complaint forthwith.

17   DATED:   February 20, 2006

18                                        Respectfully submitted,

19                                        THE LAW OFFICES OF JOHN BURTON
                                          WILLIAMSON & KRAUSS
20

21                                        By:   /s/ Peter M. Williamson
                                               PETER M. WILLIAMSON
22                                             Attorneys for Plaintiffs

23

24   ───────────────────────────────────

25   [1]BAJI 9.00.7 sets forth the elements for strict liability based on a failure to warn
     of a product's dangers. Plaintiffs' allegations, not coincidentally, track that instruction.
26   Taser's attack on plaintiffs' allegations of improper "training" are in fact directed toward
     the failure to warn theory.

27   [2]Taser's motion to dismiss appears to be a boilerplate document because it
     includes an argument that plaintiffs cannot sue for breach of warranty because they were
28   not in privity with Taser, even though there is no such cause of action alleged in this
     case.