1  John Burton, State Bar No. 86029
   THE LAW OFFICES OF JOHN BURTON
2  414 South Marengo Avenue
   Pasadena, California  91101
3
   Telephone:  (626) 449-8300
4  Facsimile:   (626) 449-4417
   E-Mail:      jb@johnburtonlaw.com
5
   PETER M. WILLIAMSON, State Bar No. 97309
6  WILLIAMSON & KRAUSS
   18801 Ventura Boulevard., Suite 206
7  Tarzana, California  91356
8  Telephone:  (818) 344-4000
   Facsimile:   (818) 344-4899
9  E-Mail:      pmw@williamson-krauss.com
10 Attorneys for Plaintiffs Betty Lou Heston, individually,
   and Robert H. Heston, individually and
11 as the personal representatives of Robert C. Heston, deceased

12

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15

| | |
|---|---|
| 16 BETTY LOU HESTON, individually, and ROBERT H. HESTON, individually and as the personal representatives of ROBERT C. HESTON, deceased, | Case No. C 05-03658 JW |
| | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF DEFENDANT TASER INTERNATIONAL, INC.,TO DISMISS FIRST AMENDED COMPLAINT** |
| Plaintiffs, | Date:       June 26, 2006 |
| v. | Time:      9:00 a.m. |
| CITY OF SALINAS and SALINAS POLICE DEPARTMENT, SALINAS POLICE CHIEF DANIEL ORTEGA, SALINAS POLICE OFFICERS MICHAEL DOMINICI, CRAIG FAIRBANKS, JAMES GOODWIN, LEK LIVINGSTON, VALENTIN PAREDEZ, JUAN RUIZ and TIM SIMPSON, TASER INTER-NATIONAL, INC.,  and DOES 1 to 10, | Courtroom:  8 |
| Defendants. | |

1    **1.    INTRODUCTION**

2        This civil rights and products liability action arises from the death of Robert C.

3 Heston while being subdued by City of Salinas police officers using an electrical

4 control weapon manufactured by defendant Taser International, Inc. The police officer

5 defendants have answered the amended complaint. Taser, however, filed a Rule

6 12(b)(6) motion to dismiss the negligence and strict liability causes of action against

7 it, as well as a purported breach of warrantee claim not alleged, claiming that it owed

8 no duty of care to Mr. Heston because he was not the buyer or end user of the product,

9 and that it does not manufacture a product subject to strict liability.

10        The motion is contrary to well-established California law and should be denied.

11    **2.    STATEMENT OF FACTS**

12        As alleged in the amended complaint, on February 20, 2005, plaintiff Robert H.

13 Heston called 911 because his son, Robert C. Heston, was acting strangely and Mr.

14 Heston suspected his son – who had a history of substance abuse – might be under the

15 influence. Salinas police officers responded and spoke with the father, who requested

16 that officers remove his son for his own good. The officer said he could not arrest

17 Robert and left. Robert's agitation and paranoia escalated. He yelled out delusionally

18 to his father that the police were barricading the area and were going to kill them. The

19 father and other family members tried to calm him down without success. Robert

20 started throwing household items out the front door. 911 was called again. Amended

21 Complaint, paras. 13-14.

22        Police returned to the house. Several officers shot Robert with Taser weapons

23 and Robert went down on the living room floor. He was screaming in agony. Taser

24 wires ran from the darts stuck in his body to the officers' weapons. The officers

25 continued to discharge their Tasers over and over, until Robert no longer moved or

26 made any sound. The officers then subjected him to aggressive restraint procedures. He

27 died later at the hospital. Amended Complaint, paras.15-16.

28

1  **3.      STANDARD OF REVIEW**

2      A complaint may be dismissed as a matter of law for only two reasons: (1) lack

3  of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory.

4  *Conley v. Gibson*, 355 U.S. 41,45-46 (1957); *Robertson v. Dean Witter Reynolds, Inc*.,

5  749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A JAMES WM. MOORE, ET AL.,

6  MOORE'S FEDERAL PRACTICE ¶ 12.08 at 2271 (2d ed. 1982)). For purposes of a

7  motion to dismiss, all allegations of material fact are taken as true and "construed in

8  the light most favorable to the nonmoving party." *Clegg v. Cult Awareness Network*,

9  18 F.3d 752, 754 (9th Cir. 1994). The amended complaint should not be dismissed

10  "unless it appears beyond doubt the plaintiff[s] can prove no set of facts in support of

11  [their] claim that would entitle [them] to relief." *Id*.  Motions to dismiss generally are

12  viewed with disfavor under this liberal standard and are granted rarely. *See Gilligan*

13  *v. Jainco Dev. Corp*., 108 F.3d 246, 249 (9th Cir. 1997).

14      In sum, the Court must decide whether the facts alleged, if true, would entitle

15  plaintiffs to a legal remedy. Unless the answer is unequivocally "no," a Rule 12(b)(6)

16  motion should be denied. *Conley v. Gibson*, 355 US 41, 45-46 (1957);  *De La Cruz v.*

17  *Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).

18  **4.      PLAINTIFFS HAVE ALLEGED A NEGLIGENCE CAUSE OF ACTION**

19  **AGAINST TASER INTERNATIONAL, INC. (SEVENTH CLAIM)**.

20      To prevail on a negligence claim, "[Plaintiffs] must show that [Taser] owed them

21  a legal duty, that it breached the duty, and that the breach was a proximate or legal

22  cause of their injuries." *Merrill v. Navegar, Inc.*, 26 Cal. 4th 464, 477 (2001).

23      "The existence and scope of duty are legal questions for the court." (citing *Ann*

24  *M. v. Pacivic  Plaza Shopping Center*, 6 Cal.4th 66, 674 (1993)). The general rule

25  enunciated by section 1714 of the California Civil Code is that "everyone is

26  responsible, not only for the result of his willful acts, but also for an injury occasioned

27  to another by his want of ordinary care or skill in the management of his property or

28  person," and there is no reason not to follow that rule here.

1   Courts generally consider several factors to determine whether an exception to
2   this rule should be made for reasons of public policy. These factors include
3   "foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered
4   injury, the closeness of the connection between the defendant's conduct and the injury
5   suffered, the moral blame attached to the defendant's conduct, the policy of preventing
6   future harm, the extent of the burden to the defendant and consequences to the
7   community of imposing a duty to exercise care with resulting liability for breach, and
8   the availability, cost, and prevalence of insurance for the risk involved." *Rowland v.*
9   *Christian*, 69 Cal.2d 108, 113 (1968).

10   Under a negligence theory of product liability, a "manufacturer's duty of care
11   extends to all persons within the range of potential danger from his product." *Pike v.*
12   *Frank Q. Hough Co.*, 2 Cal.3d 465, 467 (1970). Reasonable care must be used by a
13   manufacturer to "design his product as to make it not accident-proof, but safe for the
14   use for which it was intended." *Id*. at 470. Here, the intended use is to aid police
15   officers in temporarily incapacitating violent or erratic suspects by delivering electric
16   shocks. Accordingly, Taser has a duty of care to design and manufacture its products
17   to avoid foreseeable dangers arising from that use, and to warn its customers and users
18   of any foreseeable dangers, not only to officers firing the weapons, but also to people
19   being hit by them, especially if they are, like Robert Heston, shocked repeatedly.

20   In the present case,  although Robert Heston was not a buyer or end user of
21   Taser's products, Taser's duty extends to "all persons within the range of potential
22   danger from [its] product." *Id.* at 467. Second, the purpose of the product is to assist
23   police in restraining third party suspects, who foreseeably might be violent or under the
24   influence of drugs or alcohol. It follows that Taser has a duty to test and warn of any
25   foreseeable dangers that could arise when suspects are subjected multiple electrical
26   shocks or to both shocks and aggressive restraint procedures, including the net effects
27   of such procedures on respirations.

28

1    Defendant Taser contends that it cannot be held liable in negligence for the death

2    of Mr. Heston, even if it was proximately caused by its electric control weapon,

3    because "there is no contractual privity," and therefore no basis for the imposition of

4    a duty of care. Taser's Memorandum at 3.  The California Supreme Court rejected the

5    argument that no duty extends beyond the purchaser or end user of a product in *Pike*

6    *v. Frank G. Hough Co.*, 2 Cal.3d 465 (1970), holding that a "'manufacturer of a chattel

7    made under a plan or design which makes it dangerous for the uses for which it is

8    manufactured is subject to liability to others whom he should expect to use the chattel

9    *or to be endangered by its probable use* for physical harm caused by his failure to

10   exercise reasonable care in the adoption of a safe plan or design.'" *Id*. at 470 (quoting

11   Rest.2d Torts § 398) (emphasis added).

12   In paragraphs 42 through 47 of the Complaint, plaintiffs alleged, among other

13   things, that Taser manufactured the electric shock weapons used against the decedent,

14   that it negligently and carelessly designed and manufactured the weapon in that it was

15   capable of causing personal injuries to persons while being used in a manner

16   reasonably foreseeable, that it was sold to police agencies without adequate warnings

17   of these dangers, and that the decedent died as a result of the use of the product on his

18   person.

19   These allegations are adequate to state a cause of action for negligence against

20   Taser. The gravamen of plaintiffs' products liability claims is that Taser manufactures

21   and sells electrical control weapons representing them to be not deadly, without

22   adequately testing for dangers or warning customers – law enforcement agencies

23   intending to use the weapons on people such as Robert – about the dangers of applying

24   multiple shocks or following their use with aggressive restraint procedures which

25   might impair breathing. Such failures to warn give rise to both negligence and strict

26   liability. *Finn v. G.D. Searle & Co.*, 35 Cal.3d 691, 700-01 (1984).

27   In the present case, Taser provides its electrical control weapons to law

28   enforcement as a "non-lethal" device for "violent confrontations" by incapacitating the

1    human body through the delivery of five-second shocks of 50,000 volts of electricity.

2    Taser cannot legitimately claim that it owed no duty to decedent, who died while being

3    subjected to the product's intended use, and that, if the product was more dangerous

4    than Taser indicated to its customers, decedent's injuries were not readily foreseeable.

5              Indeed, plaintiffs' allegations fall within the California jury instruction on point:

6                   One who supplies a product . . . for another to use, which the

7              supplier knows or has reason to know is dangerous or is likely to be

8              dangerous for the use for which it is supplied, has a duty to use reasonable

9              care to give warning of the dangerous condition of the product or of facts

10             which make it likely to be dangerous to those whom the supplier should

11             expect to use the product *or be endangered by its probable use*, if the

12             supplier has reason to believe that they will not realize its dangerous

13             condition. A failure to fulfill that duty is negligence.

14   BAJI 9.20 (emphasis added).

15             Plaintiffs anticipate that in its reply brief Taser may argue that Plaintiffs  failed

16   to allege a causal link between the alleged negligent manufacture and design defects

17   in Taser's product and their son's death. To establish causation, plaintiffs "must show

18   (1) [Taser's] act or omission was a cause in fact of the injury; and (2) [Taser] should

19   be held responsible for negligently causing the injury." *Vasquez v. Residential*

20   *Investments*, *Inc*., 118 Cal.App.4th 269, 288 (2004). The causation in fact in the first

21   part of the test is a question of fact for the jury and requires a showing that the

22   negligent design of the product was a substantial factor contributing to the harm

23   suffered. *See Id.; Whiteley v. Phillip Morris, Inc*., 117 Cal.App.4th 635, 703 (2004);

24   California Jury Instructions-Civil § 1220. Plaintiffs allege at paragraph 15 of their

25   Amended Complaint:

26                   Two officers armed with Tasers fired at him.  One set of Taser prongs hit

27             him, the other set missed.  A third officer shot at him with his Taser and

28             Robert went down on the living room floor.  Mr. Heston recalls seeing

1    four or five officers enter through the front door.  Robert was face down

2    in the living room.  He was screaming in agony. Taser wires ran from his

3    body to the officers' weapons.  The officers continued to discharge their

4    Tasers, multiple times, until  Robert no longer moved or made any sound.

5  Under these circumstances, the issue of causation should survive causation and

6  presents an issue of fact.

7        Finally, Taser asserts that it owes no duty to decedent under the rationale of

8  *Adkinson v. Rossi Arms Co.* 659 P.2d 1236 (Alaska 1983), in which plaintiffs sought

9  damages from a shotgun manufacturer "for the consequences of an intentional

10  homicide." *Id*. at 1239-40.  The case is obviously distinguishable. There, the shotgun,

11  a deadly weapon, was used as designed to kill someone. Here, Taser's electrical control

12  weapon was used as a supposedly non-lethal alternative to a firearm, without the

13  officers being warned about the deadly risks associated with inflicting repeated shocks

14  or following shocks with aggressive restraints.

15        Plaintiffs should have their day in court on the Seventh Cause of Action.

16  **5.     PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUPPORT**

17  **THEIR STRICT LIABILITY CAUSE OF ACTION AGAINST TASER FOR**

18  **FAILURE TO WARN ON THE DANGERS OF ITS ELECTRIC CONTROL**

19  **WEAPON.**

20        Taser argues that because the decedent was not the "buyer or end user of the

21  Taser™," Taser's Memorandum at 8, it cannot be held strictly liable unless its product

22  is "abnormally dangerous."  That is not the law.

23        A defendant may be strictly liable in tort when a product it places on the market,

24  knowing that it will be used without inspection, has a defect that causes injury to a

25  human being.  *Greenman v. Yuba Power Products, Inc.* 59 Cal. 2d 57 (1963).  In a

26  strict liability action based on defective design, "a product is defective either (1) if the

27  product has failed to perform as safely as an ordinary consumer would expect when

28  used in an intended or reasonably foreseeable manner, or (2) if . . . the benefits of the

1   challenged design do not outweigh the risk of danger inherent in such design." *Merrill*,

2   26 Cal.4th at 479 (citing *Barker v. Lull Engineering Co.*, 20 Cal.3d 413, 418 (1978)).

3   Thus, it is not necessary to show that a product is inherently dangerous to assert a strict

4   liability theory of product liability.

5        Contrary to the thrust of Taser's argument, *Greenman* "extends its protection to

6   the injured party without reference to the role he played, or even if he played none, in

7   the transaction wherein the defective chattel was acquired from its purveyor."

8   *McClaflin v. Bayshore Equipment Rental Co.*, 274 Cal. App. 2d 446, 452 (1969).

9   Accordingly, strict liability does not require that the injured party be a purchaser or end

10  user of the product.

11       If anything, bystanders should be entitled to greater protection than the

12       consumer or user where injury to bystanders from the defect is reasonably

13       foreseeable. Consumers and users, at least, have the opportunity to inspect

14       for defects and to limit their purchases to articles manufactured by

15       reputable manufacturers and sold by reputable retailers, whereas the

16       bystander ordinarily has no such opportunities. In short, the bystander is

17       in greater need of protection from defective products which are

18       dangerous, and if any distinction should be made between bystanders and

19       users, it should be made, contrary to the position of defendants, to extend

20       greater liability in favor of the bystanders.

21  *Elmore v. American Motors Corp.*, 70 Cal.2d 578, 586 (1969).

22       Taser asserts that its weapon is not "abnormally dangerous" as a matter of law

23  but  fails to cite any authority for this proposition, or even for the proposition that

24  plaintiffs must show a product's abnormal danger to trigger strict liability.

25       For notice pleading purposes, *Greenman* requires that plaintiffs only allege that

26  defendant's electrical control weapons are defectively designed or manufactured and

27

28

1  that the defect, which may consist solely of a failure to warn, proximately caused the
2  injury. Plaintiffs pled these allegations. Amended Complaint, paras. 48-51.[1]

3      Taser argues that it had no duty to warn because the potential dangers of its
4  weapons should have been obvious to Robert Heston and the officers who used them
5  to shock him to death. Taser's Memorandum at 10-11. This is not a case like *Bojorquez*
6  *v. House of Toys*, 62 Cal.App. 3d 930, 933 (1976), or *Holmes v. J.C. Penny Co.*, 133
7  Cal.App.3d 216, 220 (1982). It is frankly somewhat outrageous for Taser to compare
8  its space-age electronic incapacitating weapon to slingshots and pellet guns, and assert,
9  without any support in fact or law, that "the potential dangers of the TASER™ ECD
10  and the nature of its use and operation are matters generally known to the public."
11  Taser's Memorandum at 12. Taser is fully aware of the burgeoning public controversy
12  over its representations of the weapon's safety. Among other things, there was a
13  scathing critique of the weapon's safety in a report by Amnesty International and as
14  recently as May 25, the *New York Times* ran an article entitled "The Safety of Tasers
15  Is Questioned Again." (In the article, a scientist studying the effect of the weapon for
16  the United States Department of Justice determined that shocks from the weapon could
17  stop the hearts of pigs. Taser International disputed the finding.)

18      In any event,  to the extent that Taser asserts that the effect of an electric shock
19  from its  weapon is common knowledge – a dubious proposition at best – it does not
20  necessarily follow that therefore the potentially lethal effects of multiple shocks, or of
21  shocks followed by aggressive restraint procedures which compromise the ability to
22  breath, were foreseeable. And if the combined effects were foreseeable to the officers,
23  they were foreseeable to Taser, too, and thus Taser should have issued warnings.

24

25

26      [1]BAJI 9.00.7 sets forth the elements for strict liability based on a failure to warn
of a product's dangers. Plaintiffs' allegations, not coincidentally, track that instruction.
27  Taser's attack on plaintiffs' allegations of improper "training" are in fact directed toward
the failure to warn theory. CACI 1205, cited at page 12 of Taser's Memorandum, tracks
28  those elements. Taser's contention that the allegations of the amended complaint fail to
track those elements is specious.

1    Finally, plaintiffs are not seeking to impose a duty to train on Taser. The gist of

2  the strict liability claim is that Taser manufactures and sells its weapons without

3  adequate testing for dangers or warnings of any reasonable foreseeable dangers, not its

4  failure to train officers.

5    Whether Taser's product is defective, or its dangers obvious and well known to

6  the public, and whether its defects played a role in Mr. Heston's demise are questions

7  of fact for the jury to determine after hearing the evidence. They are not straightforward

8  questions of law susceptible to disposition on a Rule 12(b)(6) motion. Accordingly, the

9  motion to dismiss the Eighth Cause of Action should be denied as well.[2]

10  **6.    CONCLUSION**

11    For the foregoing reasons, the motion of defendant Taser International, Inc., to

12  dismiss plaintiff's Seventh and Eighth Causes of Action should be denied, and this

13  defendant should be ordered to answer the complaint forthwith.

14  DATED:   June 7, 2006

15                                    Respectfully submitted,

16                                    THE LAW OFFICES OF JOHN BURTON
                                      WILLIAMSON & KRAUSS
17

18                                    By:  /s/ John Burton
                                              John Burton
19                                        Attorneys for Plaintiffs

20

21

22

23

24

25

26  _____

27    [2]Taser's motion to dismiss appears to be a boilerplate document because it
    includes an argument that plaintiffs cannot sue for breach of warranty because they were
28  not in privity with Taser, even though there is no such cause of action alleged in this
    case.

**PLAINTIFFS' OPPOSITION TO TASER MOTION TO DISMISS AMENDED COMPLAINT**
N.D. Cal. Case No. 05-03658 JW
- 9 -