IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Betty Lou Heston, et al., | NO. C 05-03658 JW |
| Plaintiffs, | **ORDER DENYING DEFENDANT TASER INTERNATIONAL, INC.'S MOTION TO DISMISS** |
| v. | |
| City of Salinas, et al., | |
| Defendants. / | |

## I. INTRODUCTION

Betty Lou ("Betty") and Robert Heston ("Robert Sr.") (collectively "Plaintiffs") bring this civil rights and products liability action as the result of the death of their son Robert C. Heston ("Robert Jr."). Robert Jr. died shortly after being subdued by Salinas police officers using taser guns in the living room of Plaintiffs' home.

Before this Court is Defendant Taser International, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court conducted a hearing on June 27, 2006. Based upon the papers submitted to date and the oral arguments of counsel, the Court DENIES Defendant Taser International, Inc.'s Motion to Dismiss.

## II.  BACKGROUND

The Plaintiffs allege the following facts:

On February 20, 2005, Robert Sr. called 911 for assistance because his son Robert Jr. was "acting strangely."  Robert Jr. has had a history of struggling with substance abuse and had been released on parole only a week earlier.  Robert Sr. suspected that his son might be under the influence.  When a Salinas police officer arrived at Plaintiffs' home, Robert Sr. requested that the officer remove Robert Jr. from the property "for his own good."  The officer told Robert Sr. that he could not arrest Robert Jr. if he had not committed an illegal act.  Robert Sr. and his son-in-law, Kurt Kastner ("Kastner"), implored the officer not to leave Robert Jr. in his current condition.  Robert Sr. suggested that the officer contact Robert Jr.'s parole officer.  The officer informed the Plaintiffs that he could not contact the parole officer or remove Robert Jr. from Plaintiffs' home at that time.  (First Amended Complaint for Damages, hereafter, "FAC," ¶ 13, Docket Item No. 26.)

As soon as the police left, Robert Jr.'s agitation and paranoia escalated.  He yelled out "delusionally" to his father, claiming that the police were barricading the area and were going to kill the family.  The Plaintiffs attempted to calm Robert Jr. but were unsuccessful.  Robert Jr. then started to throw household items out the front door.  Kastner called 911.  (FAC ¶ 14.)  The police once again responded to the call.  The officers responding to the second call included Defendants Michael Dominici, Craig Fairbanks, James Goodwin, Lek Livingston, Valentin Pardez, Juan Ruiz, and Tim Simpson.  When they arrived at the house, Robert Jr. was in the open front doorway of Plaintiffs' home.  Two officers armed with tasers fired at Robert Jr.  One set of taser prongs hit him, the other set missed.  A third officer shot at Robert Jr. with his taser and Robert Jr. went face down on the living room floor, screaming in agony.  Taser wires ran from his body to the officers' weapons.  The officers continued to discharge their tasers, multiple times, until Robert Jr. no longer moved or made any sound.  The officers pinned him on his chest and applied their body weight.  (FAC ¶ 15.)

The officers then handcuffed Robert Jr., who was already unconscious.  The FAC alleges that at some point right after, Robert Jr. "turned blue."  Paramedics administered CPR and were able to

2

restore his breathing and heartbeat. He was transported to the hospital. Robert Jr. did not regain consciousness and died the next day. (FAC ¶ 16.)

On September 12, 2005, Plaintiffs filed this wrongful death action. Named as defendants are the City of Salinas ("City"), the Salinas Police Department, Salinas Police Chief Daniel Ortega (collectively "the City Defendants"), and Taser International, Inc. ("TASER"). Plaintiffs amended their Complaint on May 22, 2006, to include police officers Michael Dominici, Craig Fairbanks, James Goodwin, Lek Livingston, Valentin Pardez, Juan Ruiz, and Tim Simpson as Defendants (collectively "the officer Defendants"). Against all Defendants except for TASER, Plaintiffs allege six causes of action. The First through Third Causes of Action are based on a violation of 42 U.S.C. § 1983, wrongful death, survival action, and deprivation of the rights of Plaintiffs' to familial relationships with Robert Jr. The Fourth Cause of Action is for a violation of Cal. Civ. Code § 52.1. The Fifth and Sixth Causes of Action are for assault and battery, and police negligence. Against Defendant TASER, Plaintiffs allege two causes of action under product liability theories of negligence and strict liability.

Defendant TASER moves for dismissal of Plaintiffs' FAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under the negligence theory of product liability, Defendant TASER contends that Plaintiffs have not alleged, and as a matter of law, cannot show that TASER owed Robert Jr. any duty. (Defendant TASER International Inc.'s Notice of Motion and Motion to Dismiss First Amended Complaint; Memorandum of Points and Authorities, hereafter, "Motion," at 3, Docket Item No. 27.) With respect to the strict liability theory of product liability, Defendant TASER contends that Plaintiffs' FAC fails to allege facts sufficient to state a valid claim for relief because Robert Jr. was not the buyer or end user of the product. Defendant TASER also contends that Plaintiffs cannot recover in strict liability based on a theory that TASER manufactures an inherently dangerous product. (Id. at 8, 9.)

Plaintiffs contend that Defendant TASER's arguments are based on product liability legal theories that have long been discredited. (Plaintiffs' Memorandum of Law in Opposition to Motion

1  of Defendant TASER International Inc., to Dismiss First Amended Complaint, hereafter, "Opp'n.," at
2  4, Docket Item No. 30.)

### III. STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant. Dismissal can be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistrer v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusory allegations couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). A complaint should not be dismissed under Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Moore v. City of Costa Mesa, 886 F.2d 260, 262 (9th Cir. 1989). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d. 1122, 1129 (9th Cir. 2000).

The Federal Rules of Civil Procedure have established a liberal standard of "notice pleading." A plaintiff's factual pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) & (e)(1). The Supreme Court has explained that the Federal Rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The

4

Supreme Court has reaffirmed the liberal notice-pleading requirements by stating that a prima facie case is "an evidentiary standard, not a pleading requirement." <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506, 510 (2002).

## IV. DISCUSSION

TASER challenges the sufficiency of Plaintiffs' Seventh Cause of Action for negligence on the ground that Plaintiffs have failed to allege facts sufficient to show that TASER owed a duty of care to Robert Jr. TASER further contends that even if there were a duty, the facts as alleged in the FAC are insufficient to show that a breach of its alleged duty caused the death of Robert Jr.

TASER also contests the validity of the Eighth Cause of Action for strict liability for a product defect because the FAC fails to show that a taser gun is an inherently dangerous product and also that any alleged defect caused Robert Jr.'s death. TASER contends that under strict products liability, a duty of care cannot be extended to Robert Jr. since he was not a purchaser or user of the product. Because of the differences between strict liability and negligence action, the Court discusses each of the objections separately.

The California Supreme Court has emphasized that strict liability differs from negligence in that the focus of strict liability concerns the condition of the product itself, whereas, the focus of negligence concerns the reasonableness of the manufacturer's conduct. <u>See</u> <u>Anderson v. Owens Corning Fiberglass</u>, 53 Cal. 3d 987, 1001-02 (1991). Although a warning defect, as alleged in Plaintiffs' FAC, requires consideration of what was known or should have been known by the manufacturer, the <u>Anderson</u> court clarified the difference between strict liability and negligence under California tort law when evaluating a failure to warn:

> [F]ailure to warn in strict liability differs markedly from failure to warn in a negligence context. Negligence law in a failure-to-warn case requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about. Strict liability is not concerned with the standard of due care or the reasonableness of the manufacturer's conduct. The rules of strict liability require a plaintiff to prove only that the defendant did not adequately warn of a particular risk that was known

5

or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution. Thus, in strict liability, as opposed to negligence, the reasonableness of the defendant's failure to warn is immaterial.

Id. at 1002-03.

The issue of breach of warranty is not discussed in this Order because Plaintiffs have disavowed pleading a claim for breach of warranty in their memorandum. (Opp'n at 1.)

**A.**   **Seventh Cause of Action for Negligence**

    **1.**   **Duty**

        **a.**   **Rowland v. Christian Factors**

To establish a negligence claim based on products liability, Plaintiffs must allege facts showing the existence of a duty of care between TASER and Robert Jr. that was breached, and that the breach was the legal cause of injury. Merrill v. Navegar, Inc., 26 Cal. 4th 464, 477 (2001). Whether a duty of care exists is a question of law. Friedman v. Merk & Co., 107 Cal. App. 4th 454, 464 (2003). TASER contends that there was no duty of care owed to Robert Jr. because the factors in Rowland v. Christian are not satisfied. The factors analyzed under Rowland include:

> [T]he foreseeability of the harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

Rowland v. Christian, 69 Cal. 2d 108, 113 (1968).

TASER argues that "[e]ven if the Court were to find Robert [Jr.]'s injuries foreseeable, foreseeability is not the sole determinant of the existence of a duty. The remaining four factors weigh strongly against the imposition of a duty." (Motion at 3.) However, the factors used under Rowland are not conjunctive requirements that must all be satisfied in order to find a duty of care, but rather, they involve a balancing of factors. Rowland, 69 Cal. 2d at 113. California courts have found that of all the Rowland factors, foreseeability of harm is a particularly important factor in

determining whether a duty of care is owed as a matter of law. Friedman, 107 Cal. App. 4th at 465 (citing Randi W. v. Muroc Joint Unified School Dist., 14 Cal. 4th 1066, 1077 (1997)).

TASER acknowledges in its reply to the original Complaint that Plaintiffs have addressed foreseeability but contend that the harm to Robert Jr. was not foreseeable because he was not the purchaser or user of the taser. (Defendant TASER International, Inc.'s Reply in Support of Motion to Dismiss Complaint, at 3.)  This argument fails, however, when evaluating the FAC in the light most favorable to the Plaintiffs by making reasonable inferences. See Usher, 828 F.2d at 561.  One of the foreseeable law enforcement uses of the taser – which as its marketing as an "electronic control device" suggests – is to temporarily immobilize people who are resisting police restraint with electric shocks.  A taser used in combination with pinning a resisting party to the ground is therefore a reasonable inference as to the foreseeable use of the product.  Accordingly, the Plaintiffs have sufficiently addressed the foreseeability factor under Rowland.

Additionally, the facts alleged in the FAC allow reasonable inferences as to satisfying other Rowland factors.  The alleged fact of Robert Jr. "turning blue" after being shocked multiple times with the taser allows a reasonable inference as to the closeness of connection. (FAC ¶ 16.)  Moral blame may be inferred by TASER placing the product on the market in "conscious disregard of the safety of the public." (FAC ¶ 51.)  Given the weight of the foreseeability factor and the reasonable inferences made as to other Rowland factors, a duty of care is sufficiently alleged for the purposes of evaluating the sufficiency of the Plaintiffs' FAC.

The application of the Rowland factors in the light most favorable to the Plaintiffs in this case is consistent with California's stance that "[t]he manufacturer's duty of care extends to all persons within the range of potential danger from his product." Pike v. Frank G. Hough Co., 2 Cal. 3d 465, 467 (1970).  Reasonable care must be used by a manufacturer so as to make its product safe for the use for which it was intended. Id. at 470 (quoting Varas v. Barco Mfg. Co., 205 Cal. App. 2d 246, 258 (1962)); see also RESTATEMENT (SECOND) OF TORTS § 398 ("A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is

7

1 subject to liability to others whom he should expect to use the chattel or to be endangered by its
2 probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a
3 safe plan or design.")

4     The FAC satisfies the requirement of alleging facts based on cognizable legal theories while
5 providing notice to TASER. Plaintiffs allege that TASER knew or should have known that the
6 taser's probable use would endanger people who are likely to be shocked by the taser. Specifically,
7 Taser failed to warn Salinas law enforcement officers of the risks of taser shocks to people under the
8 influence of drugs or subjected to chest compression. (FAC ¶¶ 42, 46.) Given that the FAC alleges
9 that TASER's product placed Robert Jr. within the range of potential danger from a probable use of
10 the taser, a duty of care to Robert Jr. exists for the purposes of this motion.

11     As TASER correctly points out, however, a products liability claim may be limited or
12 eliminated when the dangers of the product are generally known and foreseeable to the user. <u>Pike</u>, 2
13 Cal. 3d at 473-74 (discussion of limiting effects on products liability negligence claim for patent
14 dangers); *cf.* <u>Bojorquez v. House of Toys</u>, 62 Cal. App. 3d 930, 933 (1976) (elimination of strict
15 products liability claim for patent danger). However, "the obviousness of peril is relevant to the
16 manufacturer's defenses, not to the issue of duty." <u>Pike</u>, 2 Cal. 3d at 473. This point is highlighted
17 when comparing <u>Bojorquez v. House of Toys</u> with the present case. <u>Bojorquez</u> involved an injury
18 from a slingshot where the court noted that the potential danger of a slingshot has been widely
19 known "[e]ver since David slew Goliath." <u>Bojorquez</u>, 62 Cal. App. 3d at 934. The potential danger
20 of tasers, on the other hand, is still arguably unknown. Whether the alleged dangers of the taser
21 were known to the Salinas police officers or to Robert Jr. is therefore a triable issue of fact.

22     **b.    Effect of an Unlawful Act of Plaintiff on Duty**

23     TASER contends that it owed no duty to Robert Jr. under <u>Adkinson v. Rossi Arms Co.</u>, and
24 by analogy to <u>Huber v. Peek-A-Boot, Inc.</u> because "[n]o court will lend assistance to one who
25 founds his cause of action upon an illegal act . . . when it appears that the very party who is seeking
26 aid from the court participated in the unlawful purpose." <u>Huber v. Peek-A-Boot, Inc.</u>, 189 Cal. App.
27
28     8

2d 512, 515 (1961) (quoting <u>Schur v. Johnson</u>, 2 Cal. App. 2d 680, 683 (1934)). The plaintiff in <u>Huber</u> was found to have committed perjury and was therefore bared from asserting a claim against his employer for fraud and misrepresentation in promising not to sue over the plaintiff's sworn false statements. <u>Huber</u>, 189 Cal. App. 2d 512. In <u>Adkinson</u>, the plaintiff was precluded from a claim against a shotgun manufacturer for losses incurred from the plaintiff's shooting of a victim which resulted in the plaintiff's manslaughter conviction. <u>Adkinson v. Rossi Arms Co.</u>, 659 P.2d 1236 (Alaska 1983). The cases cited by TASER, however, are distinguished from the present case in that the use of the taser did not result in a criminal finding against Robert Jr.

TASER contends that Robert Jr. was engaged in an unlawful act. However, for the purposes of this motion, the Court must construe the facts as alleged in the FAC in the light most favorable to the Plaintiffs. <u>Usher</u>, 828 F.2d at 561. The FAC alleges that Robert Jr. was in the open front doorway of the house when two officers armed with tasers fired at him. (FAC ¶ 15.) Viewing these facts in the light most favorable to the Plaintiffs, it is arguable that Robert Jr. was not resisting arrest. Therefore, TASER's argument for not imposing liability due to Robert Jr.'s own alleged illegal act fails at this early stage of the litigation.

### 2. Causation

TASER contends that the facts alleged in the FAC are insufficient to show that the taser shocks caused Robert Jr.'s death. In a negligence action, a plaintiff must show that a defendant's breach of a duty of care was the legal cause of the plaintiff's injury. <u>Vasquez v. Residential Investments, Inc.</u>, 118 Cal. App. 4th 269, 288 (2004). Legal cause requires that the defendant's act or omission was a substantial factor in causing the injury to the plaintiff. <u>Id.</u> "Legal causation is generally a question of fact to be determined by the jury . . . unless, as a matter of law, the facts admit of only one conclusion." <u>Whitely v. Phillip Morris Inc.</u>, 117 Cal. App. 4th 635, 694-95 (2004). For the purposes of this motion, the Court must determine whether it appears without doubt that the Plaintiffs can prove no set of facts to support the allegation that the taser shocks substantially caused Robert Jr.'s death. See <u>Conley</u>, 355 U.S. at 45-46. The FAC alleges that:

> [t]he officers continued to discharge their [t]asers, multiple times, until Robert [Jr.] no longer moved or made any sound. The officers pinned him on his chest and applied their body weight, suffocating him. The officers then handcuffed decedent. He was unconscious. At some point thereafter it was observed that he was "turning blue." Paramedics administered CPR and were able to restore his breathing and heartbeat. He was transported to the hospital. He did not regain consciousness and died the next day.

(FAC ¶ 15-16.) Nothing in this alleged causal chain eliminates the possibility that electric shocks from the tasers were not a legal cause of Robert Jr.'s death. Instead, these alleged facts indicate that there is a question as to whether the taser shocks were a legal cause of death. This could possibly be proven by an autopsy report and therefore the issue of causation cannot be eliminated as a matter of law at the pleading stage.

### B. Eighth Cause of Action for Strict Liability

TASER contends that the FAC fails to state a cause of action under strict liability because: 1) the product is not shown to be inherently dangerous; 2) a duty of care cannot be extended to those who do not purchase or use the product; and 3) the FAC fails to state sufficient facts to establish causation.

California tort law imposes strict liability upon a manufacturer when it places a product in the market, knowing that it is to be used without inspection for defects, and the product proves to have a defect that causes injury to a human being. Anderson, 53 Cal. 3d at 994 (quoting Greenman v. Yuba Power Products, Inc., 59 Cal. 2d 57 (1963)). The FAC alleges that TASER placed the taser guns in the "stream of commerce," knowing they "would be used without inspection for defects or dangers in their parts, mechanisms, or design," that they had "manufacturing and/or design defects," and that they caused "serious personal injuries" to Plaintiffs and Robert Jr. (FAC ¶¶ 50, 42, 48, 49.) These alleged facts satisfy the elements of a strict products liability claim as outlined in Greenman.

There are three different types of product defects that allow for a strict liability claim under California tort law: manufacturing defects, design defects and warning defects. Anderson, 53 Cal. 3d at 995. Plaintiffs allege manufacturing and/or design defects in the Eighth Cause of Action and more fully allege a warning defect when synthesizing the Seventh and Eighth Causes of Action.

10

(FAC ¶ ¶ 48, 51, 42.) For the purposes of this motion, the Court needs only to find facts sufficient to establish a cause of action as to one of these three alleged defects. The discussion below primarily examines a strict liability cause of action for a failure to warn because the Plaintiffs imply that the gravamen of their claims against TASER is based on a failure to warn theory of products liability. (Opp'n at 4.)

### 1.   **Inherently Dangerous**

TASER contends that strict liability cannot be imposed because the Plaintiffs' allegations fail to show that TASER manufactures an inherently dangerous product. Strict products liability, however, is not limited to products that are inherently dangerous. Johnson v. Standard Brands Paint Co., 274 Cal. App. 2d 331, 337-38 (1969) (observing that "[t]he doctrine of strict liability is not confined to products which are inherently dangerous"). As specifically applied to warning defects, "directions or warnings are in order where reasonably required *to prevent the use of a product from becoming unreasonably dangerous*. It is the lack of such a warning that renders a product unreasonably dangerous and therefore defective." Gonzales v. Carmenita Ford Truck Sales, Inc., 192 Cal. App. 3d 1143, 1151 (1987) [*emphasis included in original*] (citing Barth v. B.F. Goodrich Tire Co., 265 Cal. App. 2d 228, 244 (1968)). Therefore, a complaint does not need to state facts that the product is inherently dangerous to establish a cause of action under strict liability for a warning defect, but rather, only that the lack of an adequate warning *makes* the product unreasonably dangerous. The FAC satisfies this requirement[1] by stating that:

> Defendants' product is unreasonably dangerous and defective for use on human beings because, among other reasons, it was sold without warnings as to the effects of multiple shocks, the danger of shocking people under the influence of drugs, and the effects of [t]aser shocks on respiration, such that the weapon, when used in combination with chest compression techniques cause unnecessary deaths.

(FAC ¶ 42.) The Strict Liability Cause of Action can therefore proceed under a failure to warn theory for the purposes of this motion without alleging that the taser is inherently dangerous.

---

[1] Although the alleged facts that claim a warning defect are primarily found under the Seventh Cause of Action for negligence, the Court views the facts alleged in the FAC on the whole in construing the Complaint in the light most favorable to the Plaintiff.

11

### 2. Duty Under Strict Liability

#### a. Extension of Duty to Non-Users

TASER contends that under strict liability, a duty of care cannot extend to those who do not purchase or use the product. The strict liability rule set out in Greenman, however, "extends its protection to the injured party without reference to the role he played, or even if he played none, in the transaction wherein the defective chattel was acquired from its purveyor." McClaflin v. Bayshore Equip. Rental Co., 274 Cal. App. 2d 446, 452 (1969). Ever since Elmore v. Am. Motors Corp., a duty to bystanders under strict products liability has been a cognizable legal theory in California tort law. Elmore v. Am. Motors Corp., 70 Cal.2d 578, 587 (1969) (holding that "[t]he doctrine of strict liability in tort is available in an action for personal injuries by a bystander against the manufacturer and retailer of a defective product"); see also Preissman v. Ford Motor Co., 1 Cal. App. 3d 841 (1969) (holding automobile manufacturer strictly liable for gear shift defect when a parked car rolled into plaintiff parking attendant); see also Johnson v. Standard Brands Paint Co., 274 Cal. App. 2d 331 (1969) (holding ladder retailer strictly liable for a defective extension ladder of an electrician which fell onto a plumber's stepladder causing the plumber to fatally fall). In light of these cases, TASER cannot claim that there was no duty of care owed to Robert Jr. under strict products liability.

#### b. Duty to Warn of Known Foreseeable Dangers

TASER makes the same argument here with respect to the duty to warn of known foreseeable dangers as in the Seventh Cause of Action. "Strict liability for failure to warn does not attach if the dangerous propensity is either obvious or known to the injured person at the time the product is used." Gonzales, 192 Cal. App. 3d at 1151-52. However, as in Gonzales, the facts in the present case do not infer that the alleged dangers were obvious. Tasers are marketed as a nonlethal method of controlling people and as alleged in the FAC, "expressly and impliedly represented . . . [as] safe for the purpose for which it was intended." (FAC ¶ 51.) Given this alleged representation and the relatively recent development of taser use by law enforcement, the allegations viewed in the

12

light most favorable to the Plaintiffs suggest that it can be shown that the dangers of the product were not obvious.

TASER cites Holmes v. J.C. Penney Co. where the court refused to extend strict liability because it was "inconceivable" that the user of a pellet gun was unaware of the risk that an errant shot could injure a bystander such as the plaintiff. Holmes v. J.C. Penney Co., 133 Cal. App.3d 216, 220 (1982). Unlike the present case, it is conceivable that the Salinas police officers were unaware that their tasers could cause Robert Jr.'s death.

Furthermore, the adequacy of any warnings that were provided to law enforcement would likely be a question of fact. Jackson v. Deft, Inc., 223 Cal. App. 3d 1305, 1320 (1990) (noting that "[i]n most cases . . . the adequacy of a warning is a question of fact for the jury"). Accordingly, the Court finds that the Plaintiffs have sufficiently pled a warning defect.

**3.     Causation**

As with the Negligence Cause of Action, TASER contends that even if a duty of care was owed under strict liability, the Plaintiffs have not alleged enough facts to infer that Robert Jr.'s death was caused by any alleged defect. "A manufacturer is only liable when a defect in its product was a legal cause of injury. A tort is a legal cause of injury only when it is a substantial factor producing the injury." Soule v. Gen. Motors Corp., 8 Cal. 4th 548, 572 (1994). As discussed under the Negligence Cause of Action, the causal chain as alleged in the FAC reasonably suggests that the use of the product may have lead to Robert Jr.'s death. The existence of a manufacturing defect, design defect or warning defect as alleged in the Strict Liability Cause of Action further supports the Plaintiffs' causal argument at the pleading stage.

Defendant may argue that the officers' misuse of the taser would prevent the application of strict liability. However, *any* use that is *reasonably foreseeable* allows for strict liability. See Horn v. Gen. Motors Corp., 17 Cal. 3d 355, 370 (1976) (driving without a seat belt is a foreseeable use of a station wagon and therefore does not preclude strict liability). Plaintiffs have alleged the foreseeability of the use of multiple shocks, the use on people under the influence of drugs, and the

13

use on people subjected to chest compression by claiming that the taser is "capable of causing, and in fact did cause, personal injuries to people while being *used in the manner reasonably foreseeable*." (FAC ¶ 48) [*emphasis added*]. Accordingly, any misuse of the taser by the officers would not eliminate TASER's liability under strict liability.

## V. CONCLUSION

The Court DENIES Defendant TASER's Motion to Dismiss Plaintiffs' Seventh and Eighth Causes of Action.

Dated: July 11, 2006

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

John Christopher Burton jb@johnburtonlaw.com
Mildred K. O'Linn mko@mmker.com
Peter M. Williamson pmw@williamson-krauss.com
Vincent P. Hurley vhurley@hurleylaw.com

Dated: July 11, 2006                              Richard W. Wieking, Clerk

                                                  By:  /s/ JW Chambers
                                                       Melissa Peralta
                                                       Courtroom Deputy

**United States District Court**
For the Northern District of California