1  JOHN BURTON, State Bar No. 86029
   THE LAW OFFICES OF JOHN BURTON
2  414 South Marengo Avenue
   Pasadena, California  91101
3
   Telephone:   (626) 449-8300
4  Facsimile:   (626) 449-4417
   E-Mail:      jb@johnburtonlaw.com
5
   PETER M. WILLIAMSON, State Bar No. 97309
6  WILLIAMSON & KRAUSS
   18801 Ventura Boulevard., Suite 206
7  Tarzana, California  91356
8  Telephone:   (818) 344-4000
   Facsimile:   (818) 344-4899
9  E-Mail:      pmw@williamson-krauss.com
10 Attorneys for Plaintiffs Betty Lou Heston and Robert H. Heston,
   individually, and Misty Kastner as the personal representative
11 of Robert C. Heston, deceased
12
13              **UNITED STATES DISTRICT COURT**
14             **NORTHERN DISTRICT OF CALIFORNIA**
15

| | |
|---|---|
| 16  BETTY LOU HESTON and ROBERT<br>17  H. HESTON, individually, and MISTY<br>    KASTNER, as the personal<br>18  representative of ROBERT C.<br>    HESTON, deceased,<br>19<br>              Plaintiffs,<br>20<br>         v.<br>21<br>    CITY OF SALINAS, SALINAS<br>22  POLICE DEPARTMENT, MICHAEL<br>    DOMINICI, JAMES GODWIN, LEK<br>23  LIVINGSTON, JUAN RUIZ and<br>    TASER INTERNATIONAL, INC.,<br>24<br>              Defendants. | Case No. C 05-03658 JW (RS)<br><br>**JOINT PRE-TRIAL CONFERENCE<br>STATEMENT**<br><br>Pre-Trial Conference:<br><br>Date:          April 29, 2008<br>Time:          1:00 p.m.<br>Courtroom:  8<br><br>Trial:<br><br>Date:          May 13, 2008<br>Time:          9:00 a.m.<br>Courtroom:  8 |

25
26
27
28

1   This Joint Pre-Trial Conference Statements is submitted by the following parties:

2   (a)   Plaintiffs Betty Lou Heston and Robert H. Heston, individually, and Misty

3   Kastner, as the personal representative of Robert C. Heston, deceased.

4   (b)   Defendants City of Salinas, Salinas Police Department, Michael Dominici,

5   James Godwin, Lek Livingston, and Juan Ruiz.

6   (c)   Defendant TASER International, Inc. (TASER)

7   On March 23, 2008, counsel met and conferred by telephone to discuss various

8   issues relating to the case in preparation for this Joint Pretrial Conference Statement.

9   **1.     BRIEF DESCRIPTIONS OF CLAIMS AND DEFENSES**

10  **Plaintiffs' Claims:**

11  (a)   Plaintiffs claim that defendants Godwin, Livingston, and Ruiz subjected

12  the decedent to excessive force with TASER® M26 Electronic Control Devices (ECDs)

13  in violation of the Fourth Amendment and deprived plaintiffs Betty Lou Heston and

14  Robert H. Heston of their due process rights to familial relations in violation of the

15  Fourteenth Amendment.

16  (b)   Plaintiffs claim that defendant Dominici was an integral part of the

17  aforementioned constitutional violations.

18  (c)   Plaintiffs claim that defendants Dominici and Ruiz are liable in their

19  supervisory capacities.

20  (d)   Plaintiffs claim that deliberate indifference in the training and supervision

21  of officers using ECDs by defendants City of Salinas and Salinas Police Department was

22  a substantial factor in causing the foregoing constitutional violations.

23  (e)   Plaintiffs claim that defendants Dominici, Godwin, Livingston, and Ruiz

24  battered the decedent, and that defendants City of Salinas and Salinas Police Department

25  are vicariously liable for that battery.

26  (f)   Plaintiffs claim that defendants Dominici, Godwin, Livingston, and Ruiz

27  were negligent in regards to the health and welfare of the decedent, and that defendants

28  City of Salinas and Salinas Police Department are vicariously liable for that negligence.

(g)    Plaintiffs claim that defendants City of Salinas and Salinas Police Department were negligent in regards to the training and supervision of officers using ECDs.

(h)    Plaintiffs claim that defendant TASER negligently manufactured and marketed TASER® M26 ECDs by not providing adequate warnings that repeated applications of its electrical current can cause cardiac arrest, especially in persons who are in an agitated or excited physical state.

(i)    Plaintiffs claim that defendant TASER is strictly liable for their injuries and other damages because TASER® M26 ECDs were manufactured and marketed without adequate warnings that repeated applications of the electrical current can cause cardiac arrest, especially in persons who are in an agitated or excited physical state.

(j)    Plaintiffs claim that the foregoing wrongful conduct of defendants was a substantial factor in causing their decedent to undergo cardiac arrest on February 19, 2005, and to die the next day from the effects of the cardiac arrest.

**Defenses of defendants City of Salinas, Salinas Police Department, Michael Dominici, James Godwin, Lek Livingston, and Juan Ruiz.**

(a)    Defendant City and its officers contend that Heston was a threat to officers, his father, and anyone else in the area, Heston assaulted officers and resisted and obstructed their attempts to protect his father and subdue him, that he continued to resist while on the ground, and that the rapidly evolving, tense and uncertain totality of circumstances warranted using ECDs to control Heston.

(b)    Defendant City and its officers contend that use of a TASER ECD was a reasonable alternative means of subduing the suspect who was observed to be in excited delirium.

(c)    All Defendants contend that multiple applications of ECDs is medically safe.

(d)    The individual officers contend they were acting in self-defense and used only that amount of force reasonably necessary to protect themselves and others, and the

1    force used was that force a reasonable law enforcement officer would have used under

2    the same or similar circumstances considering the totality of the circumstances.

3        (e)    The individual officers also contend that their actions were objectively

4    reasonable and their conduct did not violate clearly established statutory or constitutional

5    rights of which a reasonable person would have known, and they are therefore immune

6    from liability pursuant to the principles of qualified immunity.

7        (f)    Defendants contend that Sergeant Dominici supervised appropriately and

8    in conformance with his training and the policy, custom and practice of the Salinas

9    Police Department as well as in conformance with the suggested guidelines in the

10   training provided by TASER.

11       (g)    The City contends that its training was appropriate and pursuant to all

12   training and scientific information available on and before February 19, 2005. The

13   training program was adequate to train officers to properly handle usual and recurring

14   situations which they would encounter, and Defendants did not act with deliberate

15   indifference with regard to the need to adequately train officers.

16       (h)    All Defendants contend that ECDs are appropriate for use as pain

17   compliance and to incapacitate the suspect so that he can be handcuffed.  The City and

18   TASER contend that multiple, and/or sequential and/or simultaneous deployment of

19   ECDs is not lethal; that the suspect died due to excited delirium as a result of heavy use

20   of methamphetamine and an enlarged heart.

21       (i)    Defendants contend that, to the extent Plaintiffs' complaint contains

22   California tort claims and facts not fairly reflected in the public entity claim of Plaintiffs,

23   said causes of action based upon such facts are barred.

24       (j)    All Defendants contend they are immune from liability for any claim based

25   on the laws of the State of California pursuant to the California Government Code §§

26   815, 815.2, 820.2, 820.4.

27       (k)    All Defendants contend that Plaintiffs, including Decedent Heston, were

28   themselves careless and negligent in and about the matters alleged in the Complaint, and

1   such carelessness and negligence caused, or proximately contributed to the occurrence

2   of the incident and to the injuries.   Decedent Heston assumed the risk of the matters

3   causing the injuries, and the risk assumed proximately contributed to and proximately

4   caused the injuries.

5        (l)    All Defendants contend that Decedent Heston breached his duty to refrain

6   from resisting his lawful detention and arrest and, as such, the Defendants were

7   privileged in their use of force to overcome Plaintiff's resistance and used reasonable

8   force under the totality of the circumstances.

9        (m)    To the extent that Plaintiffs claim negligence regarding the health and

10   welfare of decedent, such claim was not presented in Plaintiffs' Tort Claim to City of

11   Salinas, or in Plaintiffs' First Amended Complaint.

12   **Defenses of Defendant TASER**

13        (a)    Plaintiffs claim that Defendant TASER was negligent and/or strictly liable

14   to plaintiffs for the alleged defective design and manufacture of TASER's product, the

15   ADVANCED TASER® M26 Electronic Control Device (ECD, device, or M26).

16   TASER denies those claims and contends that the product was designed and

17   manufactured without defect for its intended use.   The product was shipped with

18   instructions and warnings regarding its intended use. TASER further contends that the

19   plaintiffs' decedent was comparatively negligent during the events leading up to, and

20   including the incident.

21        (b)    Plaintiffs claim that Defendant TASER was negligent and/or strictly liable

22   to plaintiffs for the alleged defective design and manufacture of TASER's product, the

23   M26.   TASER denies those claims and contends that the product was designed and

24   manufactured without defect for its intended use.   The product was shipped with

25   instructions and warnings regarding its intended use. TASER further contends that

26   plaintiffs' decedent was comparatively negligent during the events leading up to, and

27   including the incident.

28   ///////////////

(c)     TASER also contends that multiple, and/or sequential and/or simultaneous deployment of TASER ECDs is not lethal, and that the decedent died due to excited delirium as a result of his chronic substance abuse, heavy use of methamphetamine, and an enlarged heart caused by his long-term drug abuse.

(d)     TASER also contends that the TASER ECD was not defective in design, manufacture or distribution, and that any warning or instructions given by TASER were adequate to avoid injury to persons or property.

TASER's affirmative defenses are set out in full as follows:

(a).     TASER denies that plaintiffs sustained any injury, damage, or loss, if any, by reason of any act or omission on the part of TASER, or any agent, servant, or employee of TASER.

(b)     TASER specifically denies that any negligence on its part contributed to or was a legal cause of any injuries sustained by plaintiff.  But, in the event it is found that TASER is negligent in any manner or to any degree, certain co-defendants may be negligent to a certain degree for the injuries or damages sustained by plaintiffs, and there may be persons or parties not named to this action, including plaintiffs, who likewise may have contributed in whole or in part to the injuries alleged to have been sustained by plaintiff; whereby, TASER contends that in the event there is found to be fault on the part of TASER, which in any manner or degree contributed to the injuries of the plaintiff, that a finding should be made apportioning and fixing the comparative fault of any of all parties or persons whether named to this action or otherwise.

(c)     The liability, if any, of TASER is further limited by the provisions by Proposition No. 51, as set forth in the California Civil Code, § 1431 et seq.

(d)     Plaintiffs' decedent failed to take any action to mitigate plaintiffs' damages, if any, and plaintiffs' recovery in this action, if any, must be reduced accordingly, or otherwise barred.

(e)     To the extent that plaintiffs or decedent suffered any detriment, such detriment was unavoidable. The damages sustained by plaintiffs or decedent, if any,

1  were the result of an unavoidable accident insofar as TASER is concerned and occurred

2  without any negligence, want of care, default, or other breach of duty to plaintiffs or the

3  decedent on the part of TASER.

4        (f)    Neither plaintiffs nor the decedent suffered damage proximately or legally

5  caused by, or resulting from, conduct of TASER.

6        (g)    At the time and place referred to in the First-Amended Complaint, and

7  before such event, decedent and others knew the risk involved in placing themselves in

8  the position which decedent then assumed such risk, including, but not limited to, the

9  risk of suffering serious bodily injury or death.

10        (h)    The injuries, losses, and/or damages complained of by plaintiffs, resulted

11  from a superseding, intervening act of another person(s), or event, whether named herein

12  or not, which was the direct and proximate cause of any such damages, losses, and/or

13  injuries, if any, complained of by plaintiffs.  By reason of such intervening acts

14  or events, TASER's liability, if any, is limited or otherwise barred.

15        (i)    Recovery against TASER is barred to the extent anyone failed to use the

16  allegedly defective product in its intended manner, or in a reasonable manner.

17        (j)    The benefits of the challenged design of the TASER product alleged in the

18  First Amended Complaint outweigh any inherent risk of danger in said products.

19        (k)    TASER did not have, at all times relevant to the First-Amended Complaint,

20  actual or constructive knowledge of the alleged danger, or risk inherent in the use of the

21  TASER product as alleged in the First-Amended Complaint.

22        (l)    The TASER product was not defective in design, manufacture or

23  distribution.

24        (m)    Any warning or instructions given by TASER was adequate to avoid injury

25  to person(s) or property from any inherent dangers of the TASER product alleged in the

26  First-Amended Complaint.

27        (n)    Any purported defect in the TASER product alleged in the First-Amended

28  Complaint were caused by alteration, in and/or modification of the product after its

1  purchase.

2       (o)    Any purported defect in the TASER product alleged in the First-Amended

3  Complaint resulted from misuse of the product by third parties.

4       (p)    Any purported defect in the TASER product alleged in the First-Amended

5  Complaint was not the proximate nor legal cause of plaintiffs' or decedent's damages,

6  if any.

7       (q)    A warning by TASER could not have been effective in lessening plaintiffs'

8  or decedent's alleged risk of personal injury.

9       (r)    The alleged injury did not result from a use of the TASER product which

10  was reasonably foreseeable by TASER.

11       (s)    To the extent the TASER product was being used in a reasonable manner

12  appropriate to the purpose for which it was intended, recovery against TASER is barred.

13       (t)    The TASER product by which plaintiffs allege decedent was injured was

14  designed in accordance with the existing state of the art.  Misuse of the TASER product

15  if any, was without TASER's knowledge, approval, or consent and was contrary to the

16  printed, and other, instructions that were delivered with the TASER product.  Any such

17  use of the TASER product was not reasonably foreseeable to TASER either at or before

18  the time of the sale, or at any time before the time TASER received notice of the incident

19  described in the First Amended Complaint.

20       (u)    There was no defect in the TASER product at the time that it left the

21  possession of TASER.

22       (v)    Negligence on the part of the plaintiffs or the decedent or others was a

23  proximate cause of the decedent's injury.

24       (w)    The risks of the design of the subject product are outweighed by its benefits

25  in that any alternate design would entail unreasonable cost, be uneconomic or

26  impractical, interfere with the product's performance, or create other or increased risks.

27       (x)    There was no obligation on TASER to warn in that the alleged dangerous

28  propensity was obvious and or known at the time the TASER product was being used.

(y)    The alleged risk was neither known nor scientifically knowable at the time of the manufacture or distribution of the subject TASER product.

(z)    Plaintiffs' cause of action for negligence is barred or plaintiffs' recovery should be diminished because the alleged damage was caused by the plaintiff, the decedent or others failure to exercise ordinary care on their own behalf for their own safety. That negligence caused the injury and damage, if any, that decedent sustained. Consequently, plaintiffs right to recover should be diminished by the decedent's and other's proportional share of fault.

(aa)    The damages sustained, if any, were proximately caused by the acts, omissions, negligence, fraud and/or breach of obligations by persons other than TASER, and beyond defendant's supervision and control.

(bb)    If plaintiffs or decedent suffered or sustained any loss, injury, damage or detriment, the same was directly and proximately caused and contributed to by the strict liability, breach of warranty, conduct, acts, omissions, activities, carelessness, recklessness, negligence, and/or intentional misconduct of plaintiff, plaintiffs' decedent, or others, thereby completely or partially barring plaintiffs' recovery herein.

(cc)    If any individual herein suffered or sustained any loss, injury, damage, or detriment as a result of exposure to any produce constructed for or on behalf of TASER, no liability should attach to TASER in that the state of the engineering and/or construction knowledge, and/or the published literature and other materials reflected in such state of the engineering and/or construction knowledge at all times pertinent hereto, were such that TASER neither knew nor could have reasonably known that its product or work presented any foreseeable risk of harm to third persons in the normal expected use of said work, thereby barring or diminishing plaintiffs' recovery herein.

(dd)    Any alleged injuries, to the extent they are found to be wholly or partially attributable to the product or products of TASER which is expressly denied by TASER, were the direct and proximate result of an idiosyncratic reaction which was not reasonably foreseeable by defendant, and which was not the result of any conduct or

1  negligence on the part of defendant, nor the result of any defect in any product

2  manufactured or distributed by TASER.

3      (ee)  The contributory negligence of plaintiffs' decedent was a proximate cause

4  in bringing about death. The plaintiffs' recovery against TASER should be reduced in

5  proportion to the amount of negligence attributable to the decedent.

6      (ff)  The plaintiffs' recovery is barred because any injury or damage suffered

7  by plaintiff was caused solely by reason of the plaintiff's wrongful acts and conduct and

8  the willful resistance to peace officers in the discharge of their duties.

9      (gg)  The plaintiffs' recovery is barred because TASER did not owe a duty to

10  any plaintiff.

11  **2.     PLAINTIFFS' STATEMENT OF RELIEF CLAIMED.**

12      Plaintiffs seek compensatory damages against all defendants and punitive

13  damages against defendants Dominici, Godwin, Livingston, Ruiz and TASER

14  (Defendants City of Salinas and Salinas Police Department are immune from punitive

15  damage liability.)

16      Plaintiffs Betty Lou Heston and Robert H. Heston seek wrongful death damages

17  in an amount to be proven at trial. Ms. Heston was born February 14, 1943, and Mr.

18  Heston December 1, 1938.  This loss will be proved through plaintiffs' testimony and

19  the testimony of their daughter Misty Kastner, their son-in-law Kurt Kastner and Nathan

20  Lavid, M.D.

21      The personal representative of the estate seeks loss of enjoyment of life damages

22  in an amount to be proven at trial. This loss will be proved through plaintiffs' testimony

23  and the testimony of Misty Kastner, Kurt Kastner and Nathan Lavid, M.D. The

24  decedent, Robert C. Heston, was 40 years old on the day of this incident and had a life

25  expectancy of 39.5 years.

26      Plaintiffs seek reimbursement of burial and funeral expenses in the sum of

27  $1,189.30.

28      Plaintiffs will seek reimbursement of their attorneys' fees pursuant to 42 U.S.C.

§§ 1983, 1988 if they prevail on any federal civil rights claim, and will seek costs if they prevail on any claim.

**3.      UNDISPUTED AND STIPULATED FACTS**

(a)      At the relevant time, defendants Ruiz and Dominici were sergeants and defendants Godwin and Livingston were officers employed by the City of Salinas and the Salinas Police Department. In doing the acts relevant to this lawsuit they were acting within the scope of their employment and under color of state law.

(b)      Defendant TASER manufactured and marketed the TASER® Model M26 Electronic Control Devices (ECDs) used in this incident.

(c)      Robert C. Heston was born June 1964, and died February 20, 2005.

(d)      On February 19, 2005, the decedent lived with his parents, plaintiffs Robert H. Heston  and Betty Lou Heston at 139 Rodeo Avenue, Salinas, California.

(e)      Shortly after 1:30 p.m. on February 19, 2005, Mr. Heston called  911.

(f)      Various Salinas police officers responded to plaintiffs' home. After investigating, they left. The decedent remained at the house.

(g)      At about 2:20 p.m. Mr. Heston called 911 a second time.

(h)      Various Salinas police officers, including each of the individual defendants, responded to plaintiffs' home.

(i)      Police and the plaintiffs' son were involved in a confrontation during which the police used TASER Model TASER® M26 ECDs at the decedent.

(j)      The decedent suffered cardiac arrest and died the next day.

(k)      Plaintiffs incurred the total amount of $1,189.30 in funeral and burial expenses.

(l)      TASER ECD downloads depict device trigger pulls and not delivered current to the body.

**4.      STATEMENT OF DISPUTED FACTUAL ISSUES:**

(a)      Whether defendants Godwin, Livingston, and Ruiz subjected the decedent to excessive force with TASER® M26 Electronic Control Devices (ECDs);

(b)     Whether defendant Dominici was an integral part any constitutional violation, or whether he is liable in his supervisory capacity;

(c)     Whether the City of Salinas or the Salinas Police Department were deliberately indifferent in the training and supervision of officers using ECDs;

(d)     Whether any defendant acted negligently;

(e)     Whether the decedent acted negligently;

(f)     Whether the TASER® M26 ECDs used by the defendants were marketed free from defects, including adequate warnings;

(g)     Whether any wrongful conduct by any defendant was a substantial factor in causing the decedent's death; and

(h)     The nature and extent of plaintiffs' damages.

In addition, defendant TASER asserts that the following facts are disputed. Plaintiffs disagree that such facts are disputed but do dispute the particular phrasing of the statements as set forth by TASER:

(i)     All of the ECDs functioned as designed.  This does not include delivering current into the body. [Plaintiffs believe this statement should read as follows:   All of the ECDs used during this incident were fully functional and in proper working order at the time.]

(j)     In the last century of medical, scientific, electrical, and engineering research there exists no peer-reviewed published human scientific literature that finds that the small amount of energy delivered into a person by an ECD is foreseeable to cause serious injury or death. [Plaintiffs believe this statement should read as follows: Whether any peer-reviewed, published human scientific literature exists which has determined that an ECD can cause serious human injury or death.]

**5.     WHETHER ALL OR PART OF ACTION MAY BE PRESENTED UPON AGREED STATEMENT OF FACTS:**

The parties agree that no part of this action may be presented based upon an agreed statement of facts.

**6.      STIPULATIONS REQUESTED OR PROPOSED:**

The parties have not yet reached any stipulations, but are continuing to meet and confer in that regard.

**7.      DISPUTED POINTS OF LAW:**

**Plaintiffs**

Plaintiffs contend that the Court has resolved all disputed issues of law in its rulings on TASER's motion to dismiss and the Salinas defendants' motions for summary judgment and reconsideration. There are Ninth Circuit and California pattern instructions covering all the substantive issues for jury determination. Accordingly, although plaintiffs agree with most of the legal principles stated by defendants, they do not agree that there are legal disputes remaining.

**Defendants City of Salinas, Salinas Police Department, Michael Dominici, Juan Ruiz, Lek Livingston and James Godwin**

Defendants City of Salinas, Salinas Police Department, Michael Dominici, Juan Ruiz, Lek Livingston and James Godwin contend that the following points of law are in dispute:

**(a)      Whether the conduct of the officers constituted unreasonable force after Robert Heston was on the floor.**

The question of whether police officers have used unreasonable force is analyzed only under the Fourth Amendment's prohibition against unreasonable seizures and related objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388, 394-95, 104 L. Ed.2d 443, 109 S. Ct. 1865 (1989); *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 921 (9th Cir. 2001).

The force used to make an arrest is excessive only if it is "unreasonable" under the Fourth Amendment considering the totality of the circumstances presented to the officers. *Graham v. Connor*, 490 U.S. 386, 388, 394-95 (1989). The "reasonableness" of the particular force must be judged from the perspective of a reasonable officer on the scene at the time, not with the 20/20 hindsight available in the calm of a courtroom.

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Id.* at 396-397.

The *Graham* test for reasonableness requires careful attention to the circumstances of the incident, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting. *Graham*, supra, 396; *see also Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (the question is "whether the totality of the circumstances justifies a particular sort of . . . seizure"). When an officer ". . . has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent that harm by using deadly force." *Garner*, *supra* 11; *Brousseau v. Haugen* 543 U.S. 194, 197-198 (2004).

**(b)    Was the use of ECDs in the disputed facts of this case after Robert Heston was on the floor unreasonable force because the officers could have found some alternative means?**

The Ninth Circuit has held that officers cannot be judged based on whether they had less intrusive means if the force used was reasonable.  The appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them. *Scott v Henrich*, 319 Fed. 3d 912, 915 (9th Cir 1994);  *Illinois v. Lafayette*, 462 U.S. 640, 647, 77 L. Ed. 2d 65, 103 S. Ct. 2605 (1983); *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-57 n.12, 49 L. Ed. 2d 1116, 96 S. Ct. 3074 (1976).  Officers thus need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable. citing *Illinois v. Lafayette*, 462 U.S. 640, 647 (other citations omitted).  On the other hand, the Ninth Circuit has also held that, "In some cases ..., the availability of alternative methods of capturing or subduing a suspect may be a factor to consider". *Smith v Hemet*, 394 Fed. 3d 689, 702 (9th Cir. 2005); *Chew v. Gates*, 27 F.3d

1432, 1441 n.5 (9th Cir. 1994).

**(c)      Was any conduct of police officers before Heston went to the floor a violation of his constitutional rights?**

Tactics and decision making by officers before they use force are not constitutional violations. "Reasonable care" is not the standard, and even if an officer should provoke a violent reaction because of some defect in planning does not prevent the officer from using reasonable force after the negligent provocation. *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir. 2002). The fact that some expert disagrees with an officer's strategy leading up to a confrontation is irrelevant to an analysis of the use of force. *Id*. at 1189.

**(d)      Was the supervisor liable for any constitutional violation?**

A supervisor may be liable if he or she actually participated in unreasonable force, or failed to control his or her subordinates. *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003). But if there was no unreasonable force supervisors are likewise not liable. *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).

**(e)      Are the Officers entitled to qualified immunity?**

Qualified immunity for government officials was established by our Supreme Court for those situations where the conduct of government officials does not violate clearly established statutory or constitutional rights of which a reasonable person should have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-818 (1982).  Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir. 1993).When there is a dispute whether the force used constituted a violation of a civil right, then the court must determine whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the right was not clearly established or the officers were reasonably mistaken, qualified immunity applies.  To answer the second question the court must decide whether it would be clear to a reasonable officer whether his

conduct was unlawful in the situation he or she confronted. *Id*. at 202. An officer may have all the correct relevant facts, but have a misunderstanding about whether a particular amount of force is legal under the circumstances. If the mistake is reasonable, the officer is entitled to qualified immunity. *Id*. at 205. Qualified immunity is supposed to protect officers from the ". . . sometimes 'hazy border between excessive and acceptable force', and to ensure that before they are subjected to suit officers must be on notice that their conduct is unlawful". *Id*. at 206 (internal citation omitted).

   **(f)   Are the officers and City liable for assault and battery by a police officer?**

   Plaintiffs alleging assault or battery by police officers must establish that there was unreasonable force pursuant to the federal standards in section 1983 cases. *Susag v. City of Lake Forest, et al.*, 94 Cal App 4th 1401, 1412-1413 (2002). There is no tort of battery by a police officer unless the force applied is unreasonable. *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1273 (1998). The tests of *Graham v. Connor* applying the "calculus of reasonableness" with allowance for the fact that officers are "forced to make split second judgments in circumstances that are tense, uncertain and rapidly evolving . . ." apply to state battery claims. *Edson*, *supra* at 1273 citing *Graham*, *supra* at 396-397.

   A public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused. Cal. Gov't Code § 820.2. The immunity of section Gov't. Code section 820.2 is viewed the same way as the Fourth Amendment reasonableness analysis. In other words, whether the circumstances ". . . reasonably created a fear of death or serious bodily harm to the officer or to another. . ." so that the officer's conduct was justified because he or she ". . . reasonably feared for his safety, and that of others in the area." *Martinez v. City of Los Angeles*, 47 Cal. App. 4th 334, 349 (1996), citing *Kortum v. Alkire*, 69 Cal. App. 3d 325, 333 (1977). Officers are also immune from liability for acts or omissions, exercising due care, in the execution or

enforcement of any law. Cal. Gov't Code § 820.4.  The reasonableness test applies to the statute. The City of Salinas is not liable for Plaintiffs' state tort claims since its employees are not liable. Cal. Gov't Code § 815.2.

**(g)     Is the City of Salinas and the Salinas Police Department liable based on a *Monell* claim?**

The parties have stipulated and the Court has ordered that (1) there is no policy, custom or practice regarding unconstitutional use of a TASER; (2) there is no official policy likely to result in a constitutional violation; and, (3) there is no custom or practice permitting conduct which would lead to a constitutional violation.

The legal questions remaining to be decided regarding the City of Salinas and the Salinas Police Department include (1) whether they failed to train and (2) whether they failed to supervise because they did not use the TASER data downloads.  A city can be found liable under section 1983 only where the city itself causes the constitutional violation at issue. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694-695 (1978). Any claim against the City is moot if Plaintiffs cannot establish that the officers used unreasonable force on Robert C. Heston. *Forrester v. City of San Diego*, 25 F.3d 804, 808 (9th Cir. 1994).  The government entity must actually inflict or cause the injury by its policy or custom to create Section 1983 liability. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Plaintiffs must establish that there is a causal nexus between the constitutional violation and the municipal custom or policy. *City of Canton, supra* at 385-386. Municipal liability is limited to actions for which the municipality is actually responsible. *Pembaur v. Cincinnatti*, 475 U.S. 469, 479 (1986). Plaintiffs must show that thee Officers violated Robert Heston's constitutional rights under a longstanding practice, or custom that is the operating procedure of the City (*Monell, supra* at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995)), and they did so because City and the Police Department were deliberately indifferent to training or supervision. Deliberate indifference is a stringent standard of fault requiring proof that a municipal actor consciously disregarded a known or obvious consequence of his

action. *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 410 (1997).Absent a formal governmental policy, a plaintiff has to establish a "long-standing practice or custom which constitutes the standard operating procedure of the local government entity." *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992). The custom must be so "persistent and widespread" that it constitutes a "permanent and well-settled City policy." *Monell*, supra at 691. Liability for improper custom must not be predicated on isolated or sporadic incidents, but must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted). Absent an express, existing unconstitutional city policy, proof of a single incident of unconstitutional activity is not sufficient to impose custom or practice liability under *Monell*. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (1985).There are limited circumstances in which an allegation of deliberate indifference to training can be a basis for liability under Section 1983. *City of Canton, supra* at 387. To be liable for deliberate indifference to training, Plaintiff must prove that the failure was so egregious that the City policy is "the moving force behind the constitutional violation". *City of Canton, supra* at 388. It must be a deliberate choice to follow a course of action made from various alternatives with deliberate indifference to the city's inhabitants. *Id*. (other citations omitted). The failure to train must reflect a "deliberate" or "conscious" choice which amounts to a deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton*, *supra* at 388-389. The issue is whether the training is adequate, and, if inadequate, whether such training can justifiably be said to represent city policy. *Id.* Likewise, a city will not be liable just because one officer may be unsatisfactorily trained, for the officer's short-comings may have resulted from factors other than a faulty training program. *Id.* 390-391. In order to establish liability for deliberate indifference based on inadequate training, plaintiffs must show that the defendants City of Salinas and the Salinas Police Department failed to adequately train their police officers and knew their failure to train

adequately made it highly predictable that their police officers would engage in conduct that would deprive persons such as Robert C. Heston of his rights under the Constitution and laws of the United States.

**Defendant TASER:**

Defendant TASER contends that the following points of law are in dispute:

Whether TASER is liable to plaintiffs for products liability under a theory of negligence and/or strict liability:

(a)     Plaintiffs claim that decedent Robert C. Heston was harmed by a product manufactured  by TASER (the ADVANCED TASER M26 Electronic Control Device (ECD, device, or M26) which contained a manufacturing defect; was defectively designed; or did not include sufficient instructions or warning of potential safety hazards. CACI 1200.  To  establish a claim for strict product's liability based on a manufacturing defect, plaintiff must prove all of the following:  (a)  that TASER manufactured the product (the ADVANCED TASER M26 Electronic Control Device (ECD, device, or M26); (b) that the product contained a manufacturing defect when it left TASER's  possession;  (c) that the product was used or misused in a way that was reasonably foreseeable to TASER; (d) that plaintiffs were harmed; and (e) that the product's defect was a substantial factor in causing plaintiffs' harm. (CACI 1201)

(b)     A product contains a manufacturing defect if the product differs from the manufacturer's design or specifications or from other typical units of the same product line. (CACI 1202)

(c)     Plaintiffs claim that the design of the TASER ECD caused them harm.  To establish this claim, plaintiffs must prove all of the following: (a) that TASER manufactured the product; (b) that, at the time of the use, the product was substantially the same as when it left TASER's possession; (c)  that the product was used in a way that was reasonably foreseeable to TASER; and (d) that the product's design was a substantial factor in causing harm to plaintiffs. (CACI 1204)  If plaintiffs prove the four preceding elements, the burden shifts to TASER to prove that the benefits of the TASER

ECDs design outweigh the risks of the design.   The following factors should be considered: (a) the gravity of the potential harm resulting from the use of the product; (b) the likelihood that such harm would occur; (c) the feasibility of an alternative design; 4) The cost of an alternative design; and (d) the disadvantages of an alternative design. (CACI 1204) (See also; *Bernal v. Richard Wolf Medical Instruments Corp.* (1990) 221 Cal. App. 3d 1326, 1333)

(d)   Plaintiffs claim that the product lacked sufficient instructions or warning of potential risks.   To establish this claim, plaintiffs must prove all of the following: (a) that TASER manufactured the product (TASER ECD); (b) that the product had potential risks that were known or knowable by the use of scientific knowledge available at the time of manufacture; (c) that the potential risks presented a substantial danger to users of the product; (d) That ordinary consumers would not have recognized the potential risks; (e) that TASER failed to adequately warn of the potential risks; (f) that the product was used in a way that was reasonably foreseeable to name of defendant; (g) that plaintiffs were harmed; and (h) that lack of sufficient warnings was a substantial factor in causing plaintiffs harm. (CACI 1205)

(e)   TASER claims that plaintiffs' harm was caused, in whole or in part, by decedent Robert C. Heston's negligence. To succeed on this claim, TASER must prove both of the following: (a) that the decedent Robert C. Heston was negligent; and (b) that this negligence was a substantial factor in causing plaintiffs' harm. (CACI 1207)   If the product was misused or modified in a way that was reasonably foreseeable to TASER, it may still succeed on this claim if the jury finds that the misuse or modification was negligent and was a substantial factor in causing  plaintiffs' harm. (CACI 1207)   If TASER proves this, plaintiffs' damages are reduced by the jury's determination of the percentage of decedent Robert C. Heston's negligence. (CACI 1207)

(f)   Plaintiffs claim that they were harmed by TASER's  negligence and that it should be held responsible for that harm.   To establish this claim,  plaintiffs must prove all of the following: (a) that TASER designed, and/or manufactured the product;

(b) that TASER was negligent in designing and/or manufacturing the product; (c) that plaintiffs were harmed; and (d) that TASER's negligence was a substantial factor in causing plaintiffs harm. (CACI 1220)

(g) A designer or manufacturer is negligent if it fails to use the amount of care in designing or manufacturing the product that a reasonably careful designer or manufacturer would use in similar circumstances to avoid exposing others to a foreseeable risk of harm. In determining whether TASER used reasonable care, the jury should balance what TASER knew or should have known about the likelihood and severity of potential harm from the product against the burden of taking safety measures to reduce or avoid the harm. (CACI 1221)

(h) Plaintiffs claim that TASER was negligent by not using reasonable care to warn about the product's dangerous condition or about facts that make the product likely to be dangerous. To establish this claim, plaintiffs must prove all of the following: (a) that TASER manufactured the product; (b) that TASER knew or reasonably should have known that the product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner; (c) that TASER knew or reasonably should have known that users would not realize the danger; (d) that TASER failed to adequately warn of the danger or instruct on the safe use of the product; (e) that a reasonable manufacturer under the same or similar circumstances would have warned of the danger or instructed on the safe use of the product; (f) that plaintiffs were harmed; and (g) that TASER's failure to warn or instruct was a substantial factor in causing plaintiffs harm. (CACI 1222)

8. **WITNESSES LIKELY TO BE CALLED AT TRIAL**:

Plaintiffs will likely call the following witnesses to testify at trial:

(a) Robert Heston;

(b) Betty Lou Heston;

(c) Misty Kastner;

(d) Kurt Kastner;

| | |
|---|---|
| 1 | (e)   Clifford Satree; |
| 2 | (f)   Craig Fairbanks; |
| 3 | (g)   Michael Dominici; |
| 4 | (h)   James Godwin; |
| 5 | (i)   Lek Livingston; |
| 6 | (j)   Juan Ruiz; |
| 7 | (k)   Tim Simpson; |
| 8 | (l)   Valentin Paredez; |
| 9 | (m)   Jeffrey Gibson; |
| 10 | (n)   Michael Groves; |
| 11 | (o)   Terry Haddix, M.D.; |
| 12 | (p)   Mark Meyers, M.D.; |
| 13 | (q)   Nathan Lavid, M.D.; |
| 14 | (r)   Ernest Burwell; and |
| 15 | (s)   Roger Clark. |

In addition to the foregoing, defendants City of Salinas, Salinas Police Department, and Michael Dominici, James Godwin, Lek Livingston and Juan Ruiz will likely call the following witnesses to testify at trial:

(t)   Ron Sanford;

(u)   James R. Missett, M.D., Ph.D.;

(v)   Mark Synder, M.D.;

(w)   Daniel Ortega;

(x)   Angel Gonzales;

(y)   Rudolfo Roman;

(z)   Daniel Perez;

(aa)   John Mount;

(bb)   Edward Peterson;

(cc)   Linda Peterson;

(dd)   Julio Monroy;

(ee)   Kim Amador; and

(ff)   Marisol Duran.

In addition to the foregoing, defendant TASER will likely call the following witnesses to testify at trial:

(gg)   Patrick ("Rick") W. Smith;

(hh)   Andrew Hinz;

(ii)   Steve Tuttle;

(jj)   Hans Marrero;

(kk)   Rick Guilbault;

(ll)   Max Nerheim;

(mm)   Milan Cerovic;

(nn)   Jeffrey D. Ho, M.D., F.A.C.E.P,

(oo)   Vincent J. M. DiMaio, M.D.,

(pp)   Mark W. Kroll, Ph.D., F.A.C.C.,

(qq)   John G. Peters, Jr., M.P.A., Ph.D.

(rr)   Michael A. Evans, Ph.D.,

(ss)   Adam K. Aleksander, Ph.D., P.E., CSP,

(tt)   Dr. Richard F. Clark

(uu)   Dr. Raymond E. Ideker

(vv)   Dr. Mark R. Lehto

(ww)   Dr. Richard M. Lucerie

(xx)   Dorin Panescu, Ph.D.

(yy)   Dr. Charles B. Wetli

(zz)   Dr. Deborah C. Mash

(aaa)   Dr. Michael Graham.

/////////////

/////////

9.    OTHER EVIDENCE THE PARTIES INTEND TO OFFER AT TRIAL:

**Evidence To Be Offered by Plaintiffs**

Plaintiffs intend to offer the testimony of Patrick Smith, CEO and designee of defendant TASER, by playing excerpts from his videotape deposition.

Plaintiffs may offer substantive evidence by reading brief passages from the deposition transcripts of some of the following witnesses:  Craig Fairbanks, Michael Dominici, James Godwin, Lek Livingston, Juan Ruiz,  Jeffrey Gibson, Michael Groves, Ron Sanford, Adam Aleksander, Ph.D., Richard Clark, M.D., Vincent Di Maio, M.D., Michael Evans, Ph.D., Michael Graham, M.D., Jeffrey Ho, M.D., Raymond Ideker, M.D., Ph.D., Richard Luceri, M.D., Deborah Mash, Ph.D., Dorin Panescu, Ph.D., and John Peters, Ph.D.

Plaintiffs may offer the responses of TASER, to Plaintiff Robert H. Heston's Special Interrogatories Nos. 1, 2, 4 and 12 (Dated Oct. 6, 2006).

Plaintiffs intend to file a Separate Exhibit List on the day of the Final Pre-Trial Conference, and the parties will meet and confer on exhibits.

**Evidence To Be Offered by Defendants City of Salinas, Salinas Police Department, and  Michael Dominici, James Godwin, Lek Livingston and Juan Ruiz**

Defendants City of Salinas, Salinas Police Department, and  Michael Dominici, James Godwin, Lek Livingston and Juan Ruiz intend to file a Separate Exhibit List on the day of the Final Pre-Trial Conference, and the parties will meet and confer on exhibits.

**Evidence To Be Offered by Defendant TASER**

Defendant TASER has filed a Separate Exhibit List, and the parties will meet and confer on exhibits.

**10.    Other Relevant Subjects**

The parties are filing herewith their Motions in Limine to narrow and resolve the myriad evidentiary disputes among them.

**Plaintiffs' Motions in Limine**

1.     MIL No. 1 to limit number of expert witnesses permitted to be called by Defendant TASER;

2.     MIL No. 2 to limit opinions of expert witnesses to their areas of expertise;.

3.     MIL No. 3 to preclude witnesses not designated as experts from offering expert opinions; and

4.     MIL No. 4 to preclude defendants from offering certain irrelevant and prejudicial evidence and arguments at trial.

**Motions in Limine of Defendants City of Salinas, Salinas Police Department, Michael Dominici, Juan Ruiz, Lek Livingston and James Godwin**

1.     To exclude testimony of Roger Clark;

2.     To exclude testimony of Ernest Burwell;

3.     To exclude testimony regarding credibility; and

4.     To exclude hearsay testimony by Terri Haddix M.D.

**Motions in Limine of Defendant TASER**

1.     MIL No. 1 to exclude the expert opinions and testimony of plaintiffs' expert, Dr. Mark R. Myers, or, in the alternative, for a *Daubert* hearing;

2.     MIL No. 2 to exclude the expert opinions and testimony of plaintiffs' expert, Dr. Haddix, or, in the alternative, for a *Daubert* hearing;

3.     MIL No. 3 to exclude the expert opinions and testimony of plaintiffs' expert, Roger Clark, or, in the alternative, for a *Daubert* hearing;

4.     MIL No. 4 — withdrawn ( related to plaintiffs' expert Dr. Werner Spitz whom plaintiffs have now withdrawn as an expert);

5.     MIL No. 5 for an order that plaintiffs, plaintiffs' attorneys, and plaintiffs' witnesses (including  experts) shall not, in the presence of the jury, testify, offer nor in any way refer to any media account (e.g. newspaper article, magazine article, television broadcast, radio broadcast, or transcripts of any television or radio broadcast), referencing the subject incident, in any manner;

6.     MIL No. 6 for an order that plaintiffs, plaintiffs' attorneys, and plaintiffs' witnesses (including experts) shall not, in the presence of the jury, testify, offer nor in any way refer to, any failure of Defendant TASER to call any particular witness to testify at the time of trial, nor to comment on what the testimony of any such witness would have been;

7.     MIL No. 7 for an order that plaintiffs, plaintiffs' attorneys, and plaintiffs' witnesses (including experts) shall not, in the presence of the jury, testify, offer nor in any way refer to the testimony of any expert witness not previously identified;

8.     MIL No. 8 for an order that plaintiffs, plaintiffs' attorneys, and plaintiffs' witnesses (including experts) shall not, in the presence of the jury, testify, offer or in any way refer to the legal representation by defense counsel's law firm of these Defendants in other matters or of other clients in other matters;

9.     MIL No. 9 for an order that plaintiffs, plaintiffs' attorneys, and plaintiffs' witnesses (including experts) shall not, in the presence of the jury, testify, offer, nor in any way refer to any subsequent remedial measures, including, but not limited to, warnings, which may have been taken by Defendant TASER following the incident at issue in this lawsuit;

10.    MIL No. 10 for an order that the trial of this case be trifurcated into three phases: liability, compensatory damages, and punitive damages, and that plaintiffs, plaintiffs' attorneys, and plaintiffs' witnesses (including experts) shall not, in the presence of the jury, testify, offer, nor in any way refer to any claim of damages allegedly suffered by the plaintiffs, until such time as plaintiffs have established that Defendant TASER has any liability;

11.    MIL No. 11 for an order that plaintiffs, plaintiffs' attorneys, and plaintiffs' witnesses (including experts) shall not, in the presence of the jury, testify, offer, nor in any way refer to any insurance which Defendant TASER may possess which may cover some or all of any liability the defendant may incur in this litigation;

///////////

12.    MIL No. 12 for an order that plaintiffs, plaintiffs' attorneys, and plaintiffs' witnesses (including experts) shall not, in the presence of the jury, testify or offer expert testimony regarding evidence not noted in plaintiffs' disclosures under FRCP 26 or in the deposition(s) of the expert(s), or regarding matters exceeding the scope of plaintiff's disclosures under FRCP 26 and deposition testimony of the expert(s);

///////////////

/////////

///

13.   MIL No. 13 for an order that plaintiffs, plaintiffs' attorneys, and plaintiffs' witnesses (including experts) shall not, in the presence of the jury, testify, offer, nor in any way refer to any evidence of other incidents, complaints, claims, or lawsuits involving defendant TASER unless the Court first finds, outside the presence of the jury, that the evidence involves matters substantially similar to the facts at issue in this lawsuit, and that the introduction of this evidence will not unfairly prejudice Defendant TASER, confuse the issues, mislead the jury, cause undue delay or waste of time, or require the needless presentation of cumulative evidence.

**APPROVED AS TO FORM AND CONTENT:**

DATED:   March 31, 2008            THE LAW OFFICES OF JOHN BURTON
                                   WILLIAMSON & KRAUSS


                                   BY:  /s/ PETER M. WILLIAMSON
                                        Attorneys for Plaintiffs

DATED:   March 31, 2008            THE LAW OFFICES VINCENT HURLEY


                                   BY:  /s/ VINCENT HURLEY
                                        Attorneys for Defendants
                                        CITY OF SALINAS, et al.

DATED:   March 31, 2008            MANNING, MARDER,
                                   KASS, ELLROD, RAMIREZ, LLP


                                   BY:  /s/ MILDRED K. O'LINN
                                        Attorneys for Defendants
                                        TASER INTERNATIONAL, Inc.