1  John Burton, State Bar No. 86029
   THE LAW OFFICES OF JOHN BURTON
2  414 South Marengo Avenue
   Pasadena, California 91101
3
   Telephone: (626) 449-8300
4  Facsimile: (626) 449-4417
   E-Mail:    jb@johnburtonlaw.com
5
   Peter M. Williamson, State Bar No. 97309
6  WILLIAMSON & KRAUSS
   18801 Ventura Boulevard., Suite 206
7  Tarzana, California 91356

8  Telephone: (818) 344-4000
   Facsimile: (818) 344-4899
9  E-Mail:    pmw@williamson-krauss.com

10 Attorneys for Plaintiffs Betty Lou Heston, individually,
   and Robert H. Heston, individually and
11 as the personal representatives of Robert C. Heston, deceased

12

13             UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15

| | |
|---|---|
| BETTY LOU HESTON and ROBERT H. HESTON, individually, and MISTY KASTNER, as the personal representative of ROBERT C. HESTON, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SALINAS, SALINAS POLICE DEPARTMENT, MICHAEL DOMINICI, JAMES GODWIN, LEK LIVINGSTON, JUAN RUIZ and TASER INTERNATIONAL, INC.,<br><br>Defendants. | Case No. C 05-03658 JW<br><br>PLAINTIFFS' MOTION IN LIMINE NO. ONE TO LIMIT NUMBER OF EXPERT WITNESSES PERMITTED TO BE CALLED BY DEFENDANT TASER INTERNATIONAL; MEMORANDUM OF LAW<br><br>Pretrial Conference:<br><br>Date:      April 29, 2008<br>Time:      1:00 p.m.<br>Courtroom: 8<br><br>Trial:<br><br>Date:      May 13, 2008<br>Time:      9:00 a.m.<br>Courtroom: 8 |

TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 29, 2008 at 1:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom "8" of the above-captioned court, located at 280 South First Street, San Jose, California, plaintiffs will move for an order in limine, pursuant to Fed. R. Evid.702, N.D. Cal. Rule 7-2, and the Court's Standing Order dated January 18, 2005, to limit the number of expert witnesses defendant Taser International, Inc., may call to testify at trial.

This Motion is based on this Notice of Motion, the attached Memorandum of Law, and on such other and further matters as the Court may consider at the hearing of this motion.

DATED: March 31, 2008

                                      Respectfully submitted,

                                      THE LAW OFFICES OF JOHN BURTON

                                      WILLIAMSON & KRAUSS

                                      BY:    /s/ PETER M. WILLIAMSON
                                                     Attorneys for Plaintiffs

MEMORANDUM OF LAW

I.  INTRODUCTION

Plaintiffs Betty Lou Heston and Robert H. Heston bring this action for damages in their individual capacities and as personal representatives of their son, Robert C. Heston, who died from cardiac arrest after Salinas Police Department officers shocked him repeatedly with electronic control devices ("ECD") manufactured by defendant Taser International, Inc. They bring this motion in limine for an order limiting the experts Taser may call.[1]

Plaintiffs called 911 for assistance with their 40-year-old son, who had a history of substance abuse. He appeared under the influence of methamphetamine and was irrational and agitated, damaging household items and throwing some of them out of his parent's house. The responding Salinas police officers shocked Heston repeatedly with five Taser ECDs. During the last five-second shock – the 25th within a period of about 70 seconds, Mr. Heston suffered a cardiac arrest. Although he was revived after more than ten minutes of down time, Heston suffered irreversible brain damage and died the following day.

Plaintiffs' products-liability claim is that Taser failed to warn about the potentially lethal consequences of repeated ECD shocks. The parties hotly dispute whether Taser ECDs can cause cardiac arrest and were a substantial factor in Heston's demise.

The parties exchanged expert reports in early December, 2006. Taser designated 14 retained experts, including three forensic pathologists, two cardiologists, three electrical engineers, two toxicologists and two emergency physicians. Their reports and attachments total 867 pages, and their opinions often conflict.

Pursuant to the Court's standing order, and to prevent the cumulative testimony of experts, the Court should require Taser to designate one expert in each field to testify at

---

[1] Plaintiffs previously moved the Court to limit Taser's experts in December 2006. The court deferred, permitting depositions of the designated experts to proceed on the condition that Taser pay travel expenses and expert fees. The depositions have now been taken. Plaintiffs again request that TASER choose between its many cumulative experts and select one expert in each particular field to testify at the time of trial.

trial.

II.     SUMMARY OF FACTS

The decedent had a long history of substance abuse, mostly involving methamphetamine and alcohol, and a series of arrests related to drug offenses and consequent run-ins with the police. Three weeks before the incident he was released from prison after serving a year-and-a-half sentence. He was living with his parents and working for his father's concrete business.

Heston was apparently drug free and doing well until Saturday, February 19, 2005, when he appeared at his parents' home in the early afternoon acting strangely. His parents correctly assumed he had relapsed and asked him to leave their home. When he refused, the Salinas Police Department was called and several officers responded. The officers observed Heston and believed he may have been under the influence or having "mental issues," but they left without taking any action.

Within minutes , Mr. Heston again called 911, reporting that his son had become highly agitated and the police needed to return.  Sgt. Dominici and Officer Fairbanks arrived first. Heston was throwing objects out the front door and window, including a rod that bounced harmlessly off Sgt. Dominici's bullet-proof vest. Sgt. Dominici fired his Taser M-26 ECD and Officer Fairbanks fired his a few seconds later. Neither discharge knocked Heston down.  Apparently one of Sgt. Dominici's probes hit the doorjamb instead of the target, and Officer Fairbanks fired from too far away. The darts dislodged from Heston as he stumbled backwards into the living room of the house.

Within minutes, several more officers arrived. Sgt. Ruiz, Officer Livingston and Officer Godwin each fired their ECDs at Heston, administering approximately 25 five-second electric shocks within 74 seconds.  According to the testimony of the officers present, Heston was prone on the floor most of this time, rigid, with his arms curled underneath him.

As the officers' ECD cycles ended, Heston was limp and unresponsive, and his head turned blue. He had no pulse. Paramedics revived him, but only after he suffered

irreversible brain damage. He died the next day.

The medical examiner assigned by the Monterey County Sheriff-Coroner, Terri L. Haddix, M.D., attributed his death to cardiac arrest due to Heston's "agitated state associated with methamphetamine intoxication and applications of Taser."

### III. TASER SHOULD ELECT AMONG ITS CUMULATIVE EXPERTS

#### A. Plaintiffs are Prejudiced by TASER's Designation of Cumulative Experts.

The Court's standing order states that unless "application is made prior to the close of expert discovery, each party will be limited to calling only one expert witness in each discipline involved in the case." January 18, 2006 Order, para. 3. TASER made no such application.

This provision embodies the trial court's discretion to exclude cumulative experts. See, e.g., United States v. Alisal Water Corp., 431 F.3d 643, 659-60 (9th Cir. 2005). While the court previously denied plaintiffs' motion to limit TASER's designation of multiple experts as premature, plaintiffs are now preparing for trial without knowing which experts TASER intends to call, and therefore which theories they intend to argue.

#### B. TASER's Three Pathologists

Taser designated three forensic pathologists to criticize Dr. Haddix; Vincent J. M. DiMaio, M.D., Michael Graham, M.D., and Charles V. Wetli, M.D.[2] These three pathologists have comparable qualifications and state nearly verbatim the opinion that discharges from the ECDs did not contribute to Mr. Heston's cardiac arrest.

Dr. DiMaio concluded in his Rule 26 Report:

> It is my opinion that, in all medical probability, Robert Heston died as a result of the Excited Delirium Syndrome induced by his use of methamphetamine. The use of the Taser did not cause or directly contribute

---

[2] The Sheriff-Coroner had two other pathologists, John R. Hain, M.D., and Steven B. Karch, M.D., review Dr. Haddix' autopsy and issue reports. Both concurred with Dr. Haddix that the taser shocks contributed to Mr. Heston's death.

to this death.

Exhibit 1 at 4.

Dr. Graham concluded in his Rule 26 Report:

Significant factors in Mr. Heston's death include methamphetamine-induced excited delirium; physical exertion, including forcible restraint; and, pre-existing heart disease (left ventricular hypertrophy and fibrosis). It is also my opinion to a reasonable degree of medical certainty that Mr. Heston's death was not caused or contributed to by any electrical discharges he received from the Taser devices.

Exhibit 2 at 2.[3]

Dr. Wetli concluded in his Rule 26 Report:

It is therefore my opinion to a reasonable degree of medical certainty that Mr. Heston died of methamphetamine-induced excited delirium and that the only contributory cause of death was the myocardial hypertrophy (cardiac enlargement). The Taser applications did not contribute to the death either directly or indirectly.

Exhibit 3 at 2.

Depositions of these experts, however, brought out significant differences regarding the mechanism by which Mr. Heston's "excited delirium" – an undisputed fact in this case, may have caused his cardiac arrest. Dr. DiMaio attributed it to an excess of catecholamines, such as adrenalin. Dr. Wetli's opinion was broader, He testified: "I think it's a combination of a variety of things, like the surges of norepinephrine, the catecholamines, the metabolic acidosis. All of these things interacting together is what caused it." Dr. Graham admitted he did not know what caused Mr. Heston's cardiac arrest, but suggested causes distinct from Dr. DiMaio's:

"I don't know what the mechanism causing that [Heston's cardiac arrest] is. Some people

---

[3] There was no "forcible restraint" in this case. Apparently, Dr. Graham copied this opinion from some other matter.

will attribute it to the metabolic acidosis and the hypokalemia [low potassium], it could be from central nervous system dysfunction, I don't think we know the answer to that."

In keeping with its Standing Order, the Court should require Taser to elect one of these three doctors to testify at the time of trial.

C.  Taser's Two Cardiologists

TASER has designated Raymond E. Ideker, M.D., and Richard M. Lucerie, M.D. Like the three pathologists, they too have similar qualifications and opinions.

Dr. Ideker concluded in his Rule 26 Report:

> It is my opinion, to a reasonable degree of medical probability, that Mr. Heston's death was caused by sudden cardiac arrest due to an arrhythmia, either asystole or ventricular fibrillation, but that the pulses from the Taser electronic control devices did not electrically stimulate the heart to cause this arrhythmia. Since there was no indication of ventricular fibrillation, no record of use of a defibrillator throughout his medical course, and the first recorded rhythm was asystole, it is my opinion that the sudden cardiac arrest was more likely caused by asystole than by ventricular fibrillation. It is also my opinion, to a reasonable degree of medical probability, that the sudden cardiac arrest leading to Mr. Heston's death was caused by an excited delirium state due to acute-on-chronic drug abuse.

Exhibit 4 at 9.

Dr. Lucieri concluded in his Rule 26 Report:

> It is my opinion, to a reasonable degree of medical probability, that the use of the Taser electronic control devices did not cause or contribute to Mr. Heston's death. There was no cardiac fibrillation and no use of a defibrillator throughout his medical course.
>
> It is also my opinion, to a reasonable degree of medical probability, that Mr. Heston's death was caused by an excited delirium state due to acute-on-chronic drug abuse with subsequent metabolic, respiratory, hepatic,

  renal and cardiac failure. The underlying chronic cardiac abnormalities found
  at autopsy contributed to his inability to survive this cascade of events.

Exhibit 5 at 6 (unnumbered).[4]

  The only distinction between the two opinions is that Dr. Ideker believes Mr. Heston may have experienced ventricular fibrillation, while Dr. Lucieri more affirmatively rules it out. This issue could become important to the jury because cardiac arrest from direct electrical stimulation of the heart, as well as from methamphetamine overdose, generally involves ventricular fibrillation.

  The Court should order TASER to elect between these two cardiologists.

  D. TASER's Two Emergency Room Doctors and Two Toxicologists

  Taser designated two emergency medicine doctors, Richard F. Clark, M.D., and Jeffrey D. Ho, M.D., also to opine on cause of death. These witnesses duplicate each other and, although practicing in a different speciality, offer opinions cumulative with the testimony of the pathologists and cardiologists. They should either both be excluded, or Taser should be ordered to elect between them.

  Dr. Clark is also a toxicologist, and Taser designated a second toxicologist, Michael A. Evans, Ph.D. TASER should be ordered to elect between them.

  These three overlapping witnesses give near identical opinions:

Dr. Clark concluded:

  It is my opinion, to a reasonable degree of medical probability, that Mr. Heston's death was caused by an excited delirium state due to acute-on-chronic drug abuse with subsequent metabolic, respiratory, hepatic, renal and cardiac failure. The underlying chronic cardiac abnormalities found at autopsy contributed to his inability to survive this cascade of events.

Exhibit 6 at 5 (unnumbered).

---

[4] Both Taser cardiologists opine that direct electrical stimulation from the Taser ECD's of Mr. Heston's heart did not, in all probability, cause his cardiac arrest. Plaintiffs agree. Accordingly, their testimony is of marginal relevance.

Dr. Ho concluded:

> It is my opinion, to a reasonable degree of medical probability, that the use of the Taser ECDs did not cause or contribute to Mr. Heston's death. Mr. Heston had several other factors that are clearly known risk factors for sudden death such as acute-on-chronic illicit stimulant (methamphetamine) abuse and toxicity, abnormal cardiac enlargement and signs and symptoms consistent with excited delirium.
>
> It is also my opinion, to a reasonable degree of medical probability, that these factors directly contributed to Mr. Heston's death and his inability to survive the cascade of events following his initial resuscitation.

Exhibit 7 at 13 (unnumbered).

Dr. Evans, who unlike the other two is not a medical doctor, concluded:

> It is my opinion . . . that the actions of Mr. Heston on 02/19/05 and the death of Mr. Heston on 02/20/05 were consistent with and directly related to his ingestion of Methamphetamine.

Exhibit 8 at 14.

Dr. Evans testified at deposition, however, that "I have no expertise in terms of cause of death," "I'm not qualified to declare Mr. Heston's cause of death," and he declined to offer an opinion as to whether the ECD shocks can be eliminated as a cause of death in this case.

Plaintiffs seek an order barring both Dr. Clark and Dr. Ho from testifying on the cause of death, as such testimony duplicates that of TASER's pathologists and cardiologists. If the Court is inclined to allow an emergency doctor to testify, however, plaintiffs request that Taser be ordered to elect between them.

Plaintiffs concede that the opinion of a toxicologist may have some relevance, although they agree with Dr. Clark and Dr. Evans that Mr. Heston's irrational and agitated state resulted from his ingestion of methamphetamine. Consequently, they have not designated a toxicologist.

Regardless, they ask that the Court order TASER to elect between Dr. Clark and Dr. Evans as its toxicology expert.

### E. TASER's Three Electrical Engineers

TASER has designated three electrical engineers, Adam K. Aleksander, Ph.D., Mark W. Kroll, Ph.D., and Dorin Panescu, Ph.D. Dr. Aleksander inspected the five Taser ECD's used in this incident, and determined them to be free of defects and in good working order. Other than that, the qualifications and proposed testimony of the three experts is duplicative. Taser should be ordered to select one of them.

### 4. CONCLUSION

For the foregoing reasons, plaintiffs' motion to limit expert witnesses and exclude inappropriate opinions should be granted.

DATED: March 31, 2008

                          Respectfully submitted,

                          THE LAW OFFICES OF JOHN BURTON
                          WILLIAMSON & KRAUSS


                          BY:  /s/ PETER M. WILLIAMSON
                                    Attorneys for Plaintiffs