1  JOHN BURTON, State Bar No. 86029
   THE LAW OFFICES OF JOHN BURTON
2  414 South Marengo Avenue
   Pasadena, California 91101
3
   Telephone:   (626) 449-8300
4  Facsimile:   (626) 449-4417
   E-Mail:      jb@johnburtonlaw.com
5
   PETER M. WILLIAMSON, State Bar No. 97309
6  WILLIAMSON & KRAUSS
   18801 Ventura Boulevard., Suite 206
7  Tarzana, California 91356
8  Telephone:   (818) 344-4000
   Facsimile:   (818) 344-4899
9  E-Mail:      pmw@williamson-krauss.com

10 Attorneys for Plaintiffs Betty Lou Heston, individually,
   and Robert H. Heston, individually and
11 as the personal representatives of Robert C. Heston, deceased

12

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15

| | |
|---|---|
| 16 BETTY LOU HESTON and ROBERT H. HESTON, individually, and MISTY KASTNER, as the personal representative of ROBERT C. HESTON, deceased, | Case No. C 05-03658 JW |
| 17 | PLAINTIFFS' OPPOSITION TO TASER'S MOTION IN LIMINE NO. 10 FOR AN ORDER TO TRIFURCATE THE LIABILITY, COMPENSATORY DAMAGES AND PUNITIVE DAMAGES PHASES OF THE TRIAL |
| 18 | |
| 19 Plaintiffs, | |
| 20 v. | |
| 21 CITY OF SALINAS, SALINAS POLICE DEPARTMENT, MICHAEL DOMINICI, JAMES GODWIN, LEK LIVINGSTON, JUAN RUIZ and TASER INTERNATIONAL, INC., | Pretrial Conference: |
| 22 | Date:      April 29, 2008 Time:      1:00 p.m. Courtroom: 8 |
| 23 | |
| 24 Defendants. | Trial: |
| 25 | |
| 26 | Date:      May 13, 2008 Time:      9:00 a.m. Courtroom: 8 |
| 27 | |

28

I.     <u>INTRODUCTION</u>

By its Motion in Limine No. 10, defendant TASER International, Inc., seeks an order to trifurcate the trial into three distinct phases: (1) liability, (2) compensatory damages, and (3) punitive damages. Plaintiffs agree that trial should be bifurcated into separate liability and damages phases, and have tendered jury instructions appropriately. Such an order warrants certain rulings to exclude irrelevant and prejudicial evidence from the liability phase.

Plaintiffs oppose further dividing the damages phase into one phase for compensatory damages and another for punitive damages, however, because there is no reason to do so.

II.     TRIAL SHOULD BE BIFURCATED SO THAT LIABILITY AND DAMAGES ARE TRIED SEPARATELY.

Plaintiffs agree that trial should be bifurcated into separate liability and damages phases pursuant to Fed. R. Civ. P. 52(b), primarily to avoid prejudice. Evidence relating solely to damages during the liability phase may prejudice defendants by stirring juror sympathy in favor of plaintiffs, who lost their son. On the other hand, evidence of past matters involving the decedent, including his history of substance abuse, altercations with police officers and his parents, and imprisonment, would unfairly prejudice plaintiffs.

Accordingly, if the Court orders bifurcation of liability and damages, plaintiffs also request that in the liability phase defendants, their attorneys and witnesses (including experts) be admonished not to, in the presence of the jury, mention or refer to evidence concerning the following subjects which are admittedly relevant in the damages phase but would be highly prejudicial to plaintiffs in the liability phase:

           (1)     Robert C. Heston's history of substance abuse;

           (2)     Robert C. Heston's prior contacts with law enforcement, except to the extent such information was known by any of the officers who were involved in this incident, and can be shown to have impacted their conduct;

(3)   Robert C. Heston's criminal history, except to the extent such information was known by any of the officers who were involved in this incident, and can be shown to have impacted their conduct; and

(4)   Robert C. Heston's alleged prior assaultive behavior towards other family members, except to the extent such information was known by any of the officers who were involved in this incident, and can be shown to have impacted their conduct.

While all of the evidence described above is arguably admissible in the damages phase of the trial, it would be irrelevant, misleading and highly prejudicial to plaintiffs' liability claims.  By their own admissions, defendant police officers Dominici, Godwin, Livingston and Ruiz did not know Heston and had never had any contact with him prior to the day of this incident.   Although some of the defendant officers did become aware, from radio communications they received at the time, of general information concerning prior encounters between Heston and other Salinas police officers, Dominici, Godwin, Livingston and Ruiz did not know the specifics of those prior contacts nor did they know anything about Heston's prior drug usage or his prior criminal record.

Further, it is obvious, based on the conduct of the defendant officers during the **two** times they responded to the Heston house on the day of this incident, that the information defendants had learned about Heston did **not** affect their decision making.   All of the negative information they learned, by way of radio communications, about Heston's prior contacts with police was acquired prior to their use of force.  Heston's parents were asking the defendant officers to remove Heston from their home, but they refused to take any action.  More importantly, when they returned to the Heston home the second time, the defendant officers did not take action based on what they knew about Heston's past, but rather on what they observed him doing – acting in a bizarre fashion, throwing various items out of the house and dragging his father across the room.   Unless defendants can demonstrate that their decision to shock Heston with TASER® Model M26's while he was lying on the floor was based upon what they learned that day about his prior history, such evidence should not be admissible during the liability phase.

The instant case involves a claim of "excessive force" by the defendant officers resulting in Heston's death. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." **Graham v. Connor** 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed.2d 443 (1989). This balancing test entails consideration of the totality of the facts and circumstances in the particular case. The reasonableness of the officer's conduct is to be evaluated with "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer and whether he is actively resisting arrest or attempting to evade arrest by flight." **Id.** at 396. Since the aforementioned evidence was not considered by Dominici, Godwin, Livingston or Ruiz as justification for their deployment of their TASER® Model M26's against Heston, such evidence is irrelevant in determining the objective reasonableness of their actions and should be excluded in the Phase One – Liability portion of the trial.

Plaintiffs further base their request to exclude, in the Phase One – Liability portion of the trial, evidence of Heston's prior history (prior substance abuse, prior criminal record, prior contacts with the Salinas Police Department and prior assaultive behavior towards other family members) on Fed. R. Evid. 403, which permits the Court to exclude evidence, even though relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury."

Prejudice alone is not sufficient to warrant exclusive under Rule 403. To justify exclusion, the prejudice must be unfair. The Advisory Committee Note explains that "unfair prejudice" means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." [1] Unfairness may be found in any form of evidence that may cause a jury to base its decision on something other than the

---

[1] Advisory Committee Note to Rule 403, App. 01[2]

established propositions in the case.[2]  Prejudice is also unfair if the evidence was designed to elicit a response from the jurors that is not justified by the evidence.[3]  Examples of unfair prejudice include: 1) evidence that appeals to jury's sympathies, 2) evidence that arouses jurors' sense of horror, 3) evidence that provokes a jury's instinct to punish, and 4) evidence that triggers other intense human reactions.

It is clear that the mere mention of the fact that Robert C. Heston had a prior history of substance abuse, prior contacts with the Salinas Police Department, a prior criminal record and prior incidents of assaultive behavior towards family members will unduly prejudice plaintiffs by confusing and inflaming the jury.  Hearing such evidence, jurors would likely speculate about the prior criminal history and presume him to be a dangerous criminal, capable of doing anything including harming police officers and/or family members.  Jurors would likely consider such prior contacts with the Salinas Police Department in evaluating the conduct of defendant police officers Dominici, Godwin, Livingston and Ruiz even though they themselves never knew the specifics of such contacts and, certainly, never considered them as part of their decision to deploy TASER® Model M26's against Heston while he was on his parents' living room floor.

Plaintiffs will not obtain a fair trial of their liability claims if evidence of their son's prior history is introduced during the liability phase of the trial.   On the other hand, bifurcation of liability and damages would allow the jury to consider the facts and law as they relate to the issues presented and would not preclude the introduction by defendants of relevant evidence in the damages phase.

Accordingly, any comment upon, or attempt to introduce such evidence will be improper and highly prejudicial to the plaintiffs.  Even if the Court sustained an objection to the evidence at trial and instructed the jury to disregard it, the evidence would be so prejudicial and inflammatory that plaintiffs could not receive a fair trial.

---

[2]  See; <u>United States vs. Hankey</u> (9th Cir. 2000) 203 F. 3d 1160, 1172-1173; **Tennison vs. Circus Circus Enters** (9th Cir. 2001) 244 F. 3d 684-, 689-690

[3]  See; **United States vs. Lim** (9th Cir. 1993) 984 F. 2nd 331, 334-335

III.   THERE IS NO REASON TO TRY COMPENSATORY AND PUNITIVE DAMAGES IN SEPARATE PHASES.

While TASER's Motion in Limine for an order to trifurcate the trial sets forth good reasons for bifurcating the liability and damages phases of the trial, the motion is noticeably silent as to why the damages phase itself should be bifurcated beyond the mere conclusion that "there are no significant disadvantages of trifurcating this case." (TASER Motion, P. 4:13)

For purposes of determining the merits of TASER's Motion in Limine for Trifurcation, defendants have failed to make an adequate showing that the resources of the court will be best utilized if the damages phase of the trial were divided into two parts. In order to establish good cause for the granting of their motion, the defendants have the sole burden of making an adequate factual showing that there are valid reasons for trifurcation. Here, the opposite is true. Adding a third phase of the trial, after the jury has already deliberated in two earlier phases, will neither "expedite" nor "economize" the trial. Trifurcation will not simplify the factual presentation but cause repetition in the presentation. It will not reduce costs nor save time but, rather, increase costs by expanding the length of the trial. Simply put, trifurcation in this case will not promote "judicial economy."

The court must look beyond the mere conclusions of the defendants and cannot blindly accept these conclusions without further inquiry. Given their inadequate showing in this regard, the court is within its discretion to deny TASER's Motion to Trifurcate, and it should do so.

However, in the event that the Court should grant TASER's request for **bifurcation** of the liability and damages phases of the trial, and assuming one jury will be impaneled to hear both liability and damages phases, plaintiffs request a further order that counsel be permitted (assuming counsel are afforded some amount of time to question prospective jurors) to conduct voir dire on all of the damage-related issues.

///////////

IV.   CONCLUSION

Based on the foregoing, plaintiffs do not oppose bifurcation of the trial between liability and damages phases. Accordingly, the Court should exclude evidence in the Phase One – Liability portion of the trial which, while admittedly relevant in the damages phase would be highly prejudicial in the liability phase such that it would deny plaintiffs the right to a fair trial.

On the other hand, plaintiffs do oppose trifurcation of the case by adding an additional phase specifically for punitive damages.  Compensatory and punitive damages should be determined in one phase, not two.

DATED:   April 14, 2008

Respectfully submitted,

THE LAW OFFICES OF JOHN BURTON
WILLIAMSON & KRAUSS

BY:   ___/s/ PETER M. WILLIAMSON_____
              Attorneys for Plaintiffs