IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| Betty Lou Heston, et al., | NO. C 05-03658 JW |
|---|---|
| Plaintiffs, | **CLOSING INSTRUCTIONS** |
| v. | |
| City of Salinas, et al., | |
| Defendants. | |

Members of the jury, now that you have heard all the evidence, it is my duty to instruct you on the law which applies to this case. Copies of these instructions have been made available for you to consult.

As I have instructed you, it is your duty to find the facts from all the evidence in the case. To those facts you must apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. In deciding the case you must not be influenced by any prejudices or sympathy. This means that you must decide the case solely on the evidence before you and according to the law. You will recall that you took an oath promising to do so at the beginning of the case.

You must follow all of my instructions. You must not single out some and ignore others; they are all important.

The evidence from which you are to base your verdict consists of: the sworn testimony of witnesses, both on direct and cross-examinations, regardless of who called the witness; the exhibits which have been received into evidence; and any facts to which the lawyers have agreed or stipulated.

If there is a conflict between the testimony of one or more witnesses and that of other witnesses, you must decide which testimony to believe and which testimony not to believe. You may disbelieve all or any part of any witness' testimony. In making that decision, you should take into account a number of factors including the following:

(1)   Was the witness able to see, or hear, or know the things about which that witness testified?

(2)   How well was the witness able to recall and describe those things?

(3)   What was the witness' manner while testifying?

(4)   Did the witness have an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case?

(5)   How reasonable was the witness' testimony when considered in light of all the evidence in the case?

(6)   Was the witness' testimony contradicted by what that witness said or did at another time, or by the testimony of other witnesses, or by other evidence?

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things. You need to consider whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.

The persuasiveness of the evidence presented by each side does not necessarily depend on the number of witnesses testifying on one side or the other. You must

United States District Court
For the Northern District of California

2

consider all the evidence in the case, and you may decide that the testimony of a smaller number of witnesses on one side has greater persuasiveness than that of a larger number on the other side.

You have heard testimony from individuals who, because of education or experience, have become experts in a particular field. The law permits experts to state opinions about matters in the field of their expertise and they are permitted to state the reasons for those opinions.

Expert opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves. In deciding whether to believe an expert's testimony, you should consider the expert's training and experience, the facts the expert relied on, and the reasons for the expert's opinion.

With respect to each claim, the Plaintiffs have the burden of establishing by a preponderance of the evidence all of the facts necessary to prove that claim. This means that Plaintiffs have to produce evidence which, considered in light of all the facts, leads you to believe that what Plaintiffs claim is more likely true than not. To put it differently, if you were to put Plaintiffs' and Defendants' evidence on opposite sides of a scale, Plaintiffs would have to make the scale tip in Plaintiffs' favor. If you evaluate the evidence and you find that the evidence is evenly balanced between the two sides, your verdict must be in favor of the Defendants. If you evaluate the evidence and you decide that what the Plaintiffs claim is more likely true than not true, in other words, if the scale tips to the Plaintiffs' side–even slightly, then your verdict should be rendered in favor of the Plaintiffs.

As I instructed you at the beginning of the case, you might have heard of proof beyond a reasonable doubt. That is a stricter standard, i.e., it requires more proof than a preponderance of evidence. The reasonable doubt standard does not apply to a civil case and you should therefore put it out of your mind.

3

1    Evidence may be direct or circumstantial.  Direct evidence is testimony by a

2    witness about what that witness personally saw or heard or did.  Circumstantial

3    evidence is indirect evidence; that is, it is proof of one or more facts from which one

4    can find another fact.  You are to consider both direct and circumstantial evidence.

5    The law permits you to give equal weight to both, but it is for you to decide how much

6    weight to give to any evidence.

7    During the trial, if I ordered that evidence be stricken from the record and that

8    you disregard or ignore the evidence, this means that when you are deciding the case,

9    you must not consider the evidence which I told you to disregard.

10   During the trial, you heard testimony from experts about studies and report

11   published after February 19, 2005, the date of the events in this case.  The Plaintiffs'

12   claims against the City of Salinas Police Department, and Michael Dominici, Juan

13   Ruiz, James Godwin, or Lek Livingston relate to what those Defendants knew before

14   February 19, 2005.  Therefore, the information from studies and reports published

15   after February 19, 2005, cannot be considered by you to decide any of the claims

16   against the City of Salinas Police Department, or Michael Dominici, Juan Ruiz, James

17   Godwin, or Lek Livingston.

18   During your deliberations, you may review evidence presented and admitted

19   during the trial.  Those exhibits capable of being displayed electronically will be

20   provided to you in that form, and you will be able to view them in the jury room.  Ms.

21   Garcia will show you how to operate the computer and other equipment; how to locate

22   and view the exhibits on the computer; and how to print the exhibits.  You will also be

23   provided with a paper list of all exhibits received in evidence.  If you need additional

24   equipment or supplies, you may make a request by sending a note.

25   There is more than one Defendant in this case.  You must consider the evidence

26   against each Defendant separately.  The verdict form will contain a place for you to

27   indicate your verdict as to each Defendant.  If you find that the Plaintiffs have not

28

**United States District Court**
For the Northern District of California

4

proved a claim as to a particular Defendant, you must return a verdict against the Plaintiffs on that claim as to that Defendant.

One of the Defendants in this case, TASER International, is a corporation. All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party. Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of their authority.

This is a lawsuit in which the Executor of the Estate of a deceased person and his parents are claiming a right to recover money damages from individual police officers, the City of Salinas Police Department, and TASER International. Such a lawsuit can be brought under federal laws and under laws of the State of California. Plaintiffs are making some claims against some defendants under federal laws and some claims against other defendants under California laws. A plaintiff is permitted to make a claim under both federal and California law. With respect to each claim, I will instruct you on what the Plaintiffs must prove against each Defendant in order to receive your verdict. A plaintiff who proves more than one claim against a defendant is entitled to receive your verdict on every claim which the plaintiff has proved. However, simply because a plaintiff has proved multiple claims does not mean that the plaintiff is entitled to duplicate or multiple damages. As to each Defendant, I will instruct you on what the Plaintiffs must prove on each separate claim. Afterward, I will instruct you on the law with respect to damages.

In these instructions, I will refer to the electronic control device product of TASER International as the Taser ECD.

# FIRST CLAIM

## FEDERAL LAW

### DEPRIVATION OF RIGHTS PROTECTED BY CONSTITUTION
### BY PERSONS ACTING UNDER COLOR OF LAW

Plaintiffs' First Claim is under federal law.  The First Claim is asserted against Defendants Police Officers Juan Ruiz, Lek Livingston, James Godwin, and Michael Dominici for depriving Robert C. Heston of rights protected by the Constitution or laws of the United States.  In order to recover under this First Claim, the Plaintiffs must prove by a preponderance of the evidence that:

1.      A particular Defendant Police Officer acted under color of law as a member of the City of Salinas Police Department;

2.      While acting in such a capacity, that Defendant Police Officer committed an act or omission which deprived Robert C. Heston, now deceased, of a right protected by the Constitution or laws of the United States;

3.      As a consequence of the acts or omission of that Defendant Police Officer:  (a) prior to his death, Robert C. Heston was deprived of his civil rights to be free from excessive force,; and (b) separately, Plaintiffs Betty Lou Heston and Robert H. Heston, the parents of Robert C. Heston, suffered harm because, as a consequence of the excessive force, Robert C. Heston died.

I will now discuss each of these elements with you.

As I have instructed you, you must decide the case with respect to each defendant separately.  Plaintiffs have asserted this First Claim against four individual Police Officers.  You must decide whether the Plaintiffs have proven each element against each Defendant Police Officer.  The verdict form will have a place for a separate finding as to each Defendant Police Officer.

The federal law which entitles a plaintiff to recover money damages for infliction of excessive force is set forth in Title 42 of the United States Code at

United States District Court

For the Northern District of California

Section 1983.  Section 1983 provides that a plaintiff may recover money damages if the plaintiff proves by a preponderance of the evidence that a defendant, while "acting under color of law," deprives a person of rights guaranteed by the Constitution or laws of the United States.

Under the first element, the Plaintiffs must prove that a Defendant Police Officer "acted under color of law."  A police officer who is attempting to detain or arrest a person is acting under "color of law" because the "law" gives the police officer the right to make a detention or arrest under proper circumstances.  The parties have stipulated that the Police Officer Defendants were acting under color of law.

Under the second element, the Plaintiffs must prove that a Defendant Police Officer committed an act which deprived Robert C. Heston of "a right protected by the Constitution or laws of the United States."  The Fourth Amendment to the Constitution of the United States protects individuals from "unreasonable searches and seizures."  A detention or an arrest is a "seizure" – a seizure of the person.  A police officer may lawfully detain or arrest a person when the police officer has probable cause to believe that the person is under the influence of an illegal drug or has committed an assault and battery upon another person.

Notice that in the second element, both an act or an omission can be the basis of recovery.  A Defendant Police Officer is liable if that Defendant observes another police officer using excessive force and the Defendant Police Officer does not intercede to prevent the use of excessive force, again under circumstances in which a reasonable police officer would do so.

In this case, the parties have stipulated that when the Police Officer Defendants returned to the Heston home on the second occasion, they had probable cause to arrest Robert C. Heston.  When a police officer has probable cause to detain or arrest a person, the police officer may use reasonable force to make the detention or arrest.  A person being arrested or detained has a duty not to resist a police officer making an

United States District Court

For the Northern District of California

arrest, unless the police officer is using unreasonable force.  A police officer may only use such force as is "objectively reasonable" under all of the circumstances.

You must decide whether one or more of the Police Officer Defendants used unreasonable force in detaining and arresting Robert C. Heston.  A detention or arrest is "unreasonable," and therefore a violation of rights protected by the Constitution or laws of the United States if a police officer uses "excessive force" in making a detention or an arrest, even if there is lawful cause for making the detention or arrest. In other words, you must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.

In determining whether a Defendant Police Officer used "excessive force" in this case, consider all of the circumstances known to the Defendant Police Officer on the scene, including:

(1)    The severity of the crime or other circumstances to which the Defendant Police Officer was responding;

(2)    Whether Robert C. Heston posed an immediate threat to the safety of the Defendant Police Officer or to others;

(3)    The officer's understanding or Robert C. Heston's physical condition and mental state;

(4)    Whether Robert C. Heston was actively resisting detention or arrest or attempting to evade arrest by flight;

(5)    The amount of time and any changing circumstances during which the Defendant Police Officer had to determine the type and amount of force that appeared to be necessary;

(6)    The type and amount of force used;

(7)     The risk of injury from the amount and type of force used;

(8)     The availability of alternative methods to subdue Robert C. Heston;

(9)     Whether force was applied after any resistance had ceased;  and

(10)    Whether the type of force applied was reasonable in accomplishing the objective of achieving compliance with lawful police orders being given to Robert C. Heston;

The deployment of a Taser ECD against a person is the use of force.  The purpose of the device is to deliver electric shocks to an individual to disable the individual so that police officers can apply restraints to the individual.  In this case, you must decide if one or more Defendant Police Officer delivered one or more electric shock cycles from his Taser ECD when a reasonable police officer under the same circumstances would not have done so.

In these instructions, I am using the word "deployment" to refer to the delivery of electric shock cycles from a Taser ECD.

A "prolonged deployment" refers to multiple, repeated electric shock cycles delivered to a person from one or more Taser ECDs.

With respect to this claim, Plaintiff Misty Kastner, the Executor of the Estate of Robert C. Heston, is entitled to your verdict if you find that excessive force was used, irrespective of whether the force caused the death of Robert C. Heston.

The money damages claimed by Plaintiffs Betty Lou Heston and Robert H. Heston, the parents of Robert C. Heston, are for their loss of the society and companionship of their child.  They are entitled to recover damages only if you find that the excessive force was a substantial factor in causing the death of Robert C. Heston.

9

**SECOND CLAIM**

**FEDERAL LAW**

**FAILURE ON THE PART OF**

**CITY OF SALINAS POLICE DEPARTMENT**

**TO ADEQUATELY TRAIN OR SUPERVISE**

Plaintiffs' Second Claim is also under federal law and is asserted against the City of Salinas Police Department.  Under federal law, a plaintiff may recover money damages against a City Police Department if an individual was deprived of a right protected by the Constitution or laws of the United States and that deprivation was caused by an official police department policy or practice.  Included within a police department's official policy or practice are its policies and practices with respect to training or supervision of police officers.  Supervision includes effectively monitoring the use of force by police officers.  Plaintiffs claim that Robert C. Heston was deprived of his constitutional right to freedom from application of excessive force because the City of Salinas Police Department did not adequately train or adequately supervise the Police Officer Defendants on using the Taser ECD.

In order to prevail on this Claim, the Plaintiffs must prove each of the following elements by a preponderance of the evidence:

1.      One or more police officers employed by the City of Salinas Police Department deprived Robert C. Heston of rights protected by the Constitution or laws of the United States by using excessive force in the deployment of Taser ECDs against him;

2.      The training or supervision policies or practices of the Defendant City of Salinas Police Department were not adequate to train or supervise Salinas Police Officers to handle the usual and recurring situations with which they must deal with respect to the deployment of Taser ECDs;

United States District Court

For the Northern District of California

3.      The Defendant City of Salinas Police Department was deliberately indifferent to the obvious consequences of its failure to train or supervise their police officers adequately with respect to the deployment of Taser ECDs; and

4.      The failure of the Defendant City of Salinas Police Department to provide adequate training or supervision caused the deprivation of the constitutional rights of Robert C. Heston by the Police Officer Defendants; that is, the Salinas Police Department's failure to train or supervise is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused either one or both of the following injuries:  (a) prior to his death, Robert C. Heston was deprived of his civil rights to be free from excessive force and suffered damages; and (b) separately, Plaintiffs Betty Lou Heston and Robert H. Heston, the parents of Robert C. Heston, suffered damages because the excessive force was a substantial factor in causing the death of Robert C. Heston.

Notice that the first element of this Claim requires that you find in favor of the Plaintiffs with respect to the first two elements of the First Claim, namely that one or more Salinas Police Officer deprived Robert C. Heston of a right protected by federal law.  However, simply because you find one or more police officers liable does not mean that you must find the City of Salinas Police Department liable.  If the training or supervision provided by a City Police Department is not proved inadequate, the City is not liable simply because a police officer acts inconsistently with the officer's training or supervision.

"Deliberate indifference" by the Salinas Police Department is the conscious choice to disregard the consequences of its acts or omissions.  The Plaintiffs may prove deliberate indifference with respect to this Claim by showing that the Defendant City of Salinas Police Department knew its failure to train or supervise adequately made it highly predictable that its police officers would deploy Taser ECDs in a manner that would deprive a person, such as Robert C. Heston of his rights.

1   "Deliberate indifference" refers to the conduct of Defendant City of Salinas Police

2   Department and not the conduct of a police officer in using the Taser ECD.

### THIRD CLAIM

### CALIFORNIA LAW

### BATTERY

6       In their Third Claim, the Plaintiffs claim that Police Officer Defendants Juan

7   Ruiz, Lek Livingston, James Godwin, and Michael Dominici committed a battery

8   against Robert C. Heston because they used excessive force against him.  Under

9   California law, a battery is an intentional offensive touching of a person.  A plaintiff

10  may recover money damages for a battery committed by a defendant.  In addition, if

11  the battery is committed by the defendant while the defendant is acting in the course

12  and scope of employment, the plaintiff may recover money damages against the

13  employer of the defendant.  In order to recover on the battery claim, Plaintiffs must

14  prove the following elements by a preponderance of the evidence:

15       1.    On February 19, 2005, while acting in the course and scope of

16  employment as a Salinas Police Office, Police Officer Defendants Juan Ruiz, Lek

17  Livingston, James Godwin, or Michael Dominici, or all of them, detained and arrested

18  Robert C. Heston;

19       2.    In the course of the detention and arrest, the Police Officer Defendants

20  touched Robert C. Heston in an offensive manner, namely by intentionally using

21  excessive force in the deployment of Taser ECDs against him;

22       3.    Robert C. Heston did not consent to the offensive touching;

23       4.    As a consequence of the intentional act of the Police Officer Defendants

24  either one or both of the following injuries occurred:  (a) prior to his death, Robert C.

25  Heston was deprived of his civil rights to be free from excessive force and suffered

26  damages; and (b) separately, Plaintiffs Betty Lou Heston and Robert H. Heston, the

27

28                                        12

United States District Court
For the Northern District of California

parents of Robert C. Heston, suffered damages because, as a consequence of the excessive force, Robert C. Heston died.

Notice that with respect to this claim, the Plaintiffs have the burden to prove that the amount of force used by one or more Police Officer Defendants was excessive. The previous instructions I have given to you with respect to reasonable and excessive force apply to this Claim.

**FOURTH CLAIM**

**CALIFORNIA LAW**

**NEGLIGENCE BY MANUFACTURER IN FAILING TO WARN**

Plaintiffs' Fourth Claim is against TASER International only. In their Fourth Claim, Plaintiffs claim that TASER International is liable under the principles of "negligent product liability." Under California law, the manufacturer of a product must conduct itself in accordance with what a reasonable manufacturer of the product would do. Conduct which falls below this standard of care is considered "negligent." In this case, the Plaintiffs claim that a reasonable manufacturer of an ECD would have warned purchasers that prolonged deployment could cause acidosis to a degree which poses a risk of cardiac arrest in the person against whom the device is deployed. Plaintiffs claim that TASER International was negligent in failing to warn purchasers of this risk with respect to the M-26 ECD. In order to recover under the Fourth Claim, Plaintiffs must prove the following by a preponderance of the evidence:

1.     TASER International was the manufacturer of Taser ECDs which are devices capable of delivering electric shocks to a person against whom they are deployed;

2.     At the time TASER International manufactured and sold Taser ECDs, a reasonably prudent manufacturer of an electronic control device knew or reasonably should have known that the M-26 ECD was dangerous or likely to be dangerous because prolonged exposure to electric shock from the device potentially causes

1   acidosis to a degree which poses a risk of cardiac arrest in a person against whom the

2   device is deployed;

3        3.      A reasonably prudent manufacturer of an ECD would have warned

4   purchasers of this risk;

5        4.      TASER International failed to adequately warn purchasers about this

6   risk;

7        5.      On February 19, 2005, while using the product in a manner reasonably

8   foreseeable by TASER International, members of the Salinas Police Department used

9   a prolonged deployment of Taser ECDs against Robert C. Heston;

10       6.      The failure by TASER International to warn the Salinas Police Officers

11  of the risks of prolonged deployment was a substantial factor in causing the officers to

12  use a prolonged deployment against Robert C. Heston;

13       7.      As a consequence of the prolonged deployment either one or both of the

14  following injuries occurred:  (a) prior to his death, Robert C. Heston suffered acidosis

15  to a degree which caused him to have a cardiac arrest; and (b) separately, Plaintiffs

16  Betty Lou Heston and Robert H. Heston, the parents of Robert C. Heston, suffered

17  harm because, as a consequence of the cardiac arrest, Robert C. Heston died.

18                              **FIFTH CLAIM**

19                            **CALIFORNIA LAW**

20                       **STRICT PRODUCTS LIABILITY**

21       Plaintiffs' Fifth Claim is against TASER International only.  In their Fifth

22  Claim, Plaintiffs claim that TASER International is liable under the principles of

23  "strict product liability."  Under California law, there are two different bases under

24  which a manufacturer may be found liable for harm caused by its products.  The first

25  basis is called "negligent product liability."  I have instructed you on the law of

26  negligent failure to warn in the Fourth Claim.  Under "strict product liability," if a

27  manufacturer knows of a risk posed by its product or if the risk is knowable through

28                                     14

scientific information available, and the risk is not obvious to the purchaser of the product, and the manufacture does not warn of the risk, the product is deemed "defective," and the manufacturer may be held liable for harm caused by the product, irrespective of whether a reasonably prudent manufacturer would have given a warning or not. In order to recover under their Fifth Claim, Plaintiffs must prove the following by a preponderance of the evidence:

1.     TASER International was the manufacturer of Taser ECDs which are devices capable of delivering electric shocks to a person against whom they are deployed;

2.     In or around 2005, at the time TASER International manufactured and sold Taser ECDs to the Salinas Police Department, TASER International knew or it was knowable by the use of available scientific information that prolonged exposure to shocks from ECDs potentially causes acidosis to a degree which poses a substantial danger, namely of causing a person against whom the device is deployed to have a cardiac arrest;

3.     Ordinary purchasers of the Taser ECDs would not have recognized this risk;

4.     TASER International failed to adequately warn purchasers of this risk;

5.     On February 19, 2005, while using the product in a manner reasonably foreseeable by TASER International, members of the Salinas Police Department used a prolonged deployment of Taser ECDs against Robert C. Heston;

6.     The failure by TASER International to adequately warn the Salinas Police Officers of the risks of prolonged deployment was a substantial factor in causing the prolonged deployment of Taser ECDs by the officers against Robert C. Heston;

7.     As a consequence of the prolonged deployment either one or both of the following injuries occurred:  (a) prior to his death, Robert C. Heston suffered acidosis

United States District Court

For the Northern District of California

which in turn caused him to have a cardiac arrest; and (b) separately, Plaintiffs Betty Lou Heston and Robert H. Heston, the parents of Robert C. Heston, suffered harm because, as a consequence of the cardiac arrest, Robert C. Heston died.

## COMPENSATORY DAMAGES

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

The Plaintiffs have the burden of proving damages by a preponderance of the evidence.  The opinion of witnesses are not required as to the amount of reasonable compensation.  Furthermore, the argument of counsel as to the amount of damages is not evidence of reasonable compensation.

### As to The Estate of Robert C. Heston:

Under the laws of both the State of California and the United States, the Executor of the Estate of a deceased person is entitled to recover for any injury inflicted upon the deceased person prior to death.

If, under the instructions of the Court, you find that the conduct of a defendant caused harm to Robert C. Heston, prior to his death, you must determine the amount of damages which will compensate for that harm and award them to Plaintiff Misty Kastner, the Executor of his Estate.  Damages means the amount of money which would have reasonably and fairly compensated Robert C. Heston for any injury or loss you find was caused by the Defendants' conduct.  With respect to Robert C. Heston's pre-death damages, you must consider the nature and extent of any injuries, the loss or damages that Robert C. Heston sustained or incurred before death, including any exemplary damages that he would have been entitled to recover had he lived.  Under California law, these damages do not include damages for pain and suffering.

If you find in favor of Plaintiffs on the First and Second Claims, but find that Plaintiff Kastner has not proved that Robert C. Heston sustained damages, then you must return a verdict for the Plaintiffs in the nominal sum of one dollar.

If you find in favor of Plaintiffs on the Third Claim, and you find that the conduct was committed in the course and scope of their employment, your damage award would be assessed against the Individual Police Officer or Officers and the City of Salinas Police Department, as the employer of the officer or officers.

**As to Robert H. Heston and Better Lou Heston**

The damages claimed by Robert H. Heston and Betty Lou Heston fall into two categories called economic damages and non-economic damages. You will be asked to state the two categories of damages separately on the verdict form. Robert H. Heston and Betty Lou Heston do not have to prove the exact amount of their damages. However, you must not speculate or guess in awarding damages.

Robert H. Heston and Betty Lou Heston claim the following economic damages:

1.      The financial support, if any, that Robert C. Heston would have contributed to the family during either the life expectancy that Robert C. Heston had before his death or the life expectancy of Robert H. Heston and Betty Lou Heston, whichever is shorter;

2.      The loss of gifts or benefits that Robert H. Heston and Betty Lou Heston would have expected to receive from Robert C. Heston;

3.      Funeral and burial expenses; and

4.      The reasonable value of household services that Robert C. Heston would have provided.

Your award of any future economic damages must be reduced to present cash value. The parties have agreed that the funeral expenses incurred by Plaintiffs to date are $1,189.30.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    Robert H. Heston and Betty Lou Heston also claim the following non-economic

2    damages, namely, the loss of Robert C. Heston's love, companionship, comfort, care,

3    assistance, protection, affection, society, moral support.

4    No fixed standard exists for deciding the amount of non-economic damages.

5    You must use your judgment to decide a reasonable amount based on the evidence and

6    your common sense.  Your award for non-economic damages must be reduced to

7    present cash value.

8    In determining Robert H. Heston and Betty Lou Heston's loss, do not consider:

9    1.    Robert H. Heston and Betty Lou Heston's grief, sorrow, or mental

10         anguish;

11   2.    Robert C. Heston's pain and suffering; or

12   3.    The poverty or wealth of Robert H. Heston and Betty Lou Heston.

13   Damages for wrongful death may be based on a person's life expectancy.  In

14   deciding a person's life expectancy, you may consider, among other factors, the

15   average life expectancy of a person of that age, as well as that person's health, habits,

16   activities, lifestyle, and occupation.   According to a table of mortality, the life

17   expectancy of a male person aged 40 years is 39.5 additional years.  According to a

18   table of mortality, the life expectancy of a female person aged 65 years is 18.4

19   additional years.  According to a table of mortality, the life expectancy of a male

20   person aged 69 years is 15.5 additional years.  This published information is evidence

21   of how long a person is likely to live but is not conclusive.  It is an average life

22   expectancy of persons who have reached that age.

23   These figures may be considered by you in connection with other evidence

24   relating to the probable life expectancy of Robert C. Heston and each individual

25   Plaintiff, including evidence of occupation, health, habits and other activities, bearing

26   in mind that many persons live longer and many die sooner than the average.

27

28                                              18

### Damages Resulting from Negligence or Strict Product Liability

Damages for a Claim of Negligent Failure to Warn or for Strict Product Liability are subject to reduction under the law of comparative fault.  If you find that TASER International is liable under the Fourth or Fifth Claim, or both, you must determine whether the harm to Robert C. Heston was caused, in whole or in part, by his own negligent conduct.  A person is negligent if he does something that a reasonably careful person would not do or if he fails to do something that a reasonably careful person would do in the same situation.  If you find that Robert C. Heston was negligent and that this negligence was a substantial factor in causing his death, you must decide on the percentage of his responsibility for his injuries.

You must also determine the comparative fault between Defendants with respect to Plaintiffs' strict liability and negligence claims.  If either TASER International or the Police Officer Defendants were at fault regarding the use of the Taser ECDs and the use of the Taser ECDs was a substantial factor in causing Robert C. Heston's death, then you must decide the percentage of their responsibility for his own injuries in comparison to the percentage of responsibility of TASER International.

The percentage fault of the parties must add up to 100%.  However, you only need to calculate their percentage of fault, not an actual dollar number.  I will make the final calculation of the apportionment of damages in later proceedings.

### The Same Injuries Resulting from Conduct of Multiple Defendants

If you find that the Police Officer Defendants and the City of Salinas Police Department and TASER International, or any combination of these are liable for the same injuries to the Plaintiffs, you must decide, as among the liable Defendants the percentage of responsibility between or among them.  The verdict form will have a place for you to indicate these percentages if such an allocation is necessary from your findings.

**PUNITIVE DAMAGES**

The purposes of punitive damages are to punish a defendant and to deter a defendant and others from committing similar acts in the future.  If you find that punitive damages are appropriate, you must use reason in setting the amount.  Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party.  In considering punitive damages, you may consider the degree of reprehensibility of the Defendants' conduct and the relationship of any award of punitive damages to any actual harm inflicted on the Plaintiffs.

Under the law, punitive damages may be no more than 10 times the amount of compensatory damages, but can be as little in amount as the jury decides.

**As to Police Officer Defendants**

If you find for Plaintiffs against a Police Officer Defendant and if you award compensatory damages or nominal damages, you may, but are not required to, award punitive damages.

You may award punitive damages only if you find a Police Officer Defendant's conduct was malicious, or in reckless disregard of Plaintiffs' rights.  Conduct is malicious if it is accompanied by ill-will, spite, or if it is for the purpose of injuring another.  Conduct is in reckless disregard of Plaintiffs' rights if, under the circumstances, it reflects complete indifference to the rights of others.

**As to the City of Salinas Police Department**

Punitive damages may not be awarded against the City of Salinas Police Department.

**As to Defendant TASER International**

If you find for Plaintiffs against TASER International on the Fourth and Fifth Claims, you may award punitive damages if you find by clear and convincing evidence that TASER International's conduct constitutes a conscious disregard of the

United States District Court

For the Northern District of California

probability of injury to others. You must find that TASER International was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid those consequences.

## ARGUMENT OF COUNSEL

I will now permit counsel for the parties to make their closing arguments. Counsel for Plaintiffs will make a closing argument, followed by the closing arguments by counsel for Defendants. If he does not use all of his allotted time, counsel for Plaintiffs will be permitted a brief rebuttal argument and then I will have some brief additional instructions for you with respect to the conduct of your deliberations. Remember, statements of the attorneys are not evidence.

## DUTY TO DELIBERATE

When you retire, you should elect one member of the jury as your foreperson, i.e., your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

During the course of your deliberations, you may take rest breaks or lunch breaks as you wish. Since we will be standing by pending your deliberations,

United States District Court

For the Northern District of California

please send us a note as to what your schedule will be.  During any break, do not deliberate further upon the case.  Cease all deliberations until your foreperson has brought you back into session with all of you present.

## RETURN OF VERDICT

After you have reached unanimous agreement on a verdict, your foreperson will fill in the form that will be given to you, sign and date it and advise the marshal or clerk of court outside your door that you are ready to return to the courtroom.

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you will find a form for that purpose included in the material sent into the jury room.  Any one of you may communicate with me by filling out the form.  Bring it into my Chambers and give it to me or a member of my staff.  No member of the jury should ever attempt to communicate with me except by a signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court.  Remember that you are not to tell anyone—including me or Ms. Garcia— how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.


Dated: June 3, 2008

_____
JAMES WARE
United States District Judge

22