1  John Burton, State Bar No. 86029
   THE LAW OFFICES OF JOHN BURTON
2  414 South Marengo Avenue
   Pasadena, California  91101
3
   Telephone:  (626) 449-8300
4  Facsimile:  (626) 449-4417
   E-Mail:     jb@johnburtonlaw.com
5
   Peter M. Williamson, State Bar No. 97309
6  WILLIAMSON & KRAUSS
   18801 Ventura Boulevard., Suite 206
7  Tarzana, California  91356
8  Telephone:  (818) 344-4000
   Facsimile:  (818) 344-4899
9  E-Mail:     pmw@williamson-krauss.com
10 Attorneys for Plaintiffs Betty Lou Heston, individually,
   and Robert H. Heston, individually and
11 as the personal representatives of Robert C. Heston, deceased
12
13              **UNITED STATES DISTRICT COURT**
14             **NORTHERN DISTRICT OF CALIFORNIA**
15

| | |
|---|---|
| 16  BETTY LOU HESTON and ROBERT H. HESTON, individually, and MISTY KASTNER, as the personal representative of ROBERT C. HESTON, deceased, | Case No. C 05-03658 JW |
| 17 | **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM RE: AWARDING ATTORNEYS' FEES ON JUDGMENT AGAINST DEFENDANT TASER INTERNATIONAL, INC., AND DENYING COSTS TO SALINAS DEFENDANTS** |
| 18 | |
| 19          Plaintiffs, | |
| 20      v. | |
| 21  CITY OF SALINAS, SALINAS POLICE DEPARTMENT, MICHAEL DOMINICI, JAMES GODWIN, LEK LIVINGSTON, JUAN RUIZ and TASER INTERNATIONAL, INC., | **Trial:** |
| 22 | Date Commenced: May 13, 2008 |
| 23 | |
| 24          Defendants. | Date of Verdict**:**    June 6, 2008 |

25
26
27
28

1

**TABLE OF CONTENTS**

2 **Contents**                                                                                          **Page**

3 Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

4 Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

5 I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

6 II.     THE COURT SHOULD EXERCISE ITS DISCRETION TO AWARD
        PLAINTIFFS THEIR REASONABLE ATTORNEYS' FEES.. . . . . . . . . . . .   1
7
8 III.    THE COURT SHOULD FIND A LODESTAR OF $1,605,435.92.. . . . . . . .   5

9        A.      Plaintiffs Should Be Awarded Fees For All the Work Performed.. . . .   5

10       B.       Plaintiffs' Fee Request Is Reasonable.. . . . . . . . . . . . . . . . . . . . . . . .   6

11               1.      The Number of Hours Claimed Is Reasonable.. . . . . . . . . . . . .   7

12               2.      Plaintiffs are Entitled to Fees for Litigating the Fee Petition.. . .   8

13               3.      The Hourly Rates Claimed Are Reasonable.. . . . . . . . . . . . . . .   8

14               4.      Litigation Expenses.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

15       D.      The Court Should consider a Multiplier.. . . . . . . . . . . . . . . . . . . . . . .   10

16               1.      The Novelty and Difficulty of the Issues Involved
                        and the Skill Displayed in Presenting Them.. . . . . . . . . . . . . .   10

17       2.      The Extent to Which the Case Precluded Other Employment.. . . . . .   11

18       3.      Contingent Risk.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

19 IV.     THE COURT SHOULD EXERCISE ITS DISCRETION NOT
        TO AWARD COSTS IN FAVOR OF THE SALINAS DEFENDANTS.. . .   13
20
 V.      CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Case**                                                             **Page(s)**

*Association of Mexican-American Educators v.  California*,
    231 F.3d 572 (9th  Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Beasley v.  Wells Fargo Bank, N.A.*,
    235 Cal. App.3d 1407 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bihun v. AT&T Information Systems, Inc.*,
    13 Cal.App.4th 976 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bouman v. Block*,
    940 F.2d 1211 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Brewster v. Dukakis*,
    786 F.2d 16 (1st Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Chalmers v. Los Angeles*,
    796 F.2d 1205 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*City of Oakland v. Oakland Raiders*,
    203 Cal.App.3d 78 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*City of Riverside v. Rivera*,
    477 U.S. 561 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Crommie v. Public Utilities Commission*,
    840 F. Supp. 719 (N.D. Cal. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Downey Cares v. Downey Community Development Corp.*,
    196 Cal. App.3d 983 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Farmer v. Arabian American Oil Co.*,
    379 U.S.  227 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Guam Society of Obstetricians & Gynecologists v. Ada*,
    100 F.3d 691 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Guinn v. Dobson*,
    23 Cal.App.4th 262 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hensley v. Eckerhart*,
    461 U.S. 424  (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5

*Ketchum v.  Moses*,
    24 Cal.4th 1122 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,11

*Lyons v. Chinese Hospital Assn.*,
    136 Cal.App.4th 1331 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Mendez v. County of San Bernardino*,
    540 F.3d 1109 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1

**Case**                                                                              **Page(s)**

2

*Moreno v. City of Sacramento,*
   534 F.3d 1106 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3

4

*Odima v. Westin Tucson Hotel,*
   53 F.3d 1484  (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5

*San Bernardino Valley Audubon Society v. County of San Bernardino,*
   155 Cal. App.3d 738 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

6

*Satrap v. Pacific Gas & Electric Co.,*
   42 Cal. App. 4th 72 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7

8

*Schaulis v. CTB/McGraw-Hill Inc.,*
   496 F. Supp 666 (N.D. Cal.1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

9

*Serrano v. Priest,*
   20 Cal.3d 25 (1977) (*Serrano* III).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,11

10

*Serrano v. Unruh,*
   32 Cal.3d 621 (1982)  (*Serrano* IV) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5,7

11

12

*Stanley v. University of So. Calif.,*
   178 F.3d 1069 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

13

*Sundance v. Municipal Court,*
   192 Cal. App.3d 268 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

14

15

*Teague v. Bakker,*
   35 F.3d 978 (4th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

16

*Ustrak v. Fairman,*
   851 F.2d 983 (7th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

17

18

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

19

*Wing v. Asarco, Inc.,*
   114 F.3d 986 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

20

21

*Woodland Hills Residents Assn., Inc. v. City Council of Los Angeles,*
   23 Cal.3d 917 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

22

23

**Other Authority**

24

42 U.S.C. § 1988. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

25

Fed. R. Civ. P. 54.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

26

Cal. Civ. Proc. Code § 1021.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

27

Editorial: "The Police and Tasers," *The New York Times*, June 24, 2008. . . . . . . . 2

28

1   **I.   INTRODUCTION**

2        On June 6, 2008, the jury rendered a split verdict, finding in favor of the Salinas

3   defendants and against plaintiffs, but in favor of plaintiffs and against defendant

4   TASER International, Inc.  As the Court directed in its order of October 24, 2008,

5   affirming the verdict of liability but striking the punitive damages, plaintiffs herewith

6   document their attorneys' fees for purposes of the Court's making a discretionary

7   award pursuant to Cal. Civ. Proc. Code § 1021.5, the private attorney-general theory.

8        Plaintiffs also respectfully request that the Court exercise its discretion not to

9   award costs in favor of the Salinas defendants.

10       For the reasons which follow, plaintiffs respectfully request a fee award based

11  on a lodestar of $1,605,435.92, enhanced by any multiplier the Court deems

12  appropriate.

13  **II.   THE COURT SHOULD EXERCISE ITS DISCRETION TO AWARD**

14  **PLAINTIFFS THEIR REASONABLE ATTORNEYS' FEES.**

15       As explained in their moving papers, plaintiffs respectfully urge the Court to

16  exercise its discretion to award plaintiffs their attorneys' fees under the California

17  "private attorney general" statute because of the benefit this litigation has rendered to

18  the public and the lack of a fund available to pay fees.

19       Cal. Civ. Proc. Code § 1021.5 provides, in relevant part:

20       Upon motion, a court may award attorneys' fees to a successful party

21       against one or more opposing parties in any action which has resulted in

22       the enforcement of an important right affecting the public interest if: (a)

23       a significant benefit, whether pecuniary or non-pecuniary, has been

24       conferred on the general public or a large class of persons, (b) the

25       necessity and financial burden of private enforcement . . . are such as to

26       make the award appropriate, and (c) such fees should not in the interest

27       of justice be paid out of the recovery, if any.

28  Here, all three criteria are satisfied.

1    First, the verdict has already performed a valuable public service. The TASER

2    ECD is a new device, on the market for less than ten years, and possesses significant

3    health risks not obvious to the police-officer user. The device has become ubiquitous

4    in law enforcement, yet training is provided by TASER and the device has largely

5    escaped review by governmental agencies and medical researchers. The Court will

6    recall the testimony that Peace Officer Standards and Training (POST), the California

7    agency responsible for "establish[ing] minimum standards for training of . . . peace

8    officers," *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1123 (9th Cir. 2008),

9    has yet to issue any training standards or use guidelines regarding TASER's products.

10    In this case the jury decisively rebuked TASER's false claims of safety. The

11    Court will recall TASER's counsel's opening statement, and her repetition of TASER's

12    reckless claim that there was not a "scintilla" of proof that TASER ECDs can cause

13    cardiac arrest through acidosis, or in any other manner. For the better part of ten years,

14    this is what TASER has been telling police officers during their training. That

15    misinformation– motivated by TASER's sales department and its slogan that TASER

16    is "Saving lives every day" – has resulted in a series of tragic deaths such as Mr.

17    Heston's.

18    Already, this historic verdict has caused police agencies in California, and

19    indeed throughout the nation, to take heed of the risks caused by prolonged and

20    multiple applications of ECD electric current, and will eventually force TASER to

21    revise its training and warnings so that unnecessary deaths such as Robert Heston's can

22    be avoided in the future. *See, e.g.*, Editorial: "The Police and Tasers," *The New York*

23    *Times*, June 24, 2008. Thus this lawsuit benefits the general public, which is subject

24    to TASER ECD exposure from local police agencies.

25    Second, as the Court saw at trial, plaintiffs' counsel had to make an

26    extraordinary effort to overcome the considerable financial resources of TASER

27    International to present a compelling case to the jury. Pretrial preparation was

28    unnecessarily expensive because TASER's counsel insisted, over plaintiffs' objection,

on designating 14 retained expert witnesses, located throughout the United States, although it called only four to testify at trial.

Even with the Court's order that TASER pay its own experts for deposition time and reimburse plaintiffs' counsel for their travel expenses, expert discovery took an exceptional amount of resources. Plaintiffs' counsel had to spend weeks traveling to Alabama, Florida, New Jersey, Nevada, St. Louis, Minnesota, Idaho, Indiana and Texas.

During this process, plaintiffs' counsel advanced over $200,000.00 in out-of-pocket expenses and accrued over 3,000 hours in attorney and staff time, due primarily to the complex scientific and medical issues raised. With punitive damages stricken, there is no fund available out of which plaintiffs can pay their counsel. The compensatory damages will be depleted  just reimbursing out-of-pocket costs not reimbursable through the cost bill.

While the Court has discretion to deny fees where "the plaintiff's personal stake in the outcome was not disproportionate to the burden of private enforcement, even where the litigation enforced an important right and conferred a significant benefit upon the public," *Satrap v. Pacific Gas & Electric Co.*, 42 Cal. App. 4th 72, 78 (1996), that was not the case here. "Under the private burden prong of Section 1021.5, fees are recoverable ' "when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff out of proportion to his individual stake in the matter." *Woodland Hills Residents Assn., Inc. v. City Council of Los Angeles*, 23 Cal.3d 917, 941 (1979), *see also, e.g., Lyons v. Chinese Hospital Assn.*, 136 Cal. App.4th 1331, 1348 (2006).

Plaintiffs' counsel accepted this case knowing that the decedent was a troubled man with a significant drug history who had ingested methamphetamine and lost control of his behavior in the throes of a paranoid delusion. Under such circumstances a significant compensatory damages award is generally not feasible, and any such award would likely be reduced, as this one was, by the obvious comparative fault of the

decedent.  Section 1021.5 "private attorney general" fees must be awarded as punitive damages are not available so that plaintiffs' counsel are adequately compensated for their work in promoting the public interest and so that plaintiffs can have some compensation for their loss.

## III.    THE COURT SHOULD FIND A LODESTAR OF $1,605,435.92.

### A.    Plaintiffs Should Be Awarded Fees For All the Work Performed.

"Lawyers must eat, so they generally won't take cases without a reasonable prospect of getting paid." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1110 (9th Cir. 2008).  Although plaintiffs did not prevail on all their claims, courts have repeatedly held that attorneys should recover their full fees and expenses if they achieve meaningful and substantial relief, even if they do not prevail on every theory or against every party. *Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir. 1991) (plaintiff proceeding under multiple theories for sex discrimination and prevailing on FEHA claims entitled to recover attorneys' fees). As the Supreme Court explained, "[l]itigants in good faith may raise alternative legal grounds and the court's rejection of certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). If the rule were otherwise, attorneys would be discouraged from taking on high risk cases such as this one. *See also Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995); *Serrano v. Unruh*, 32 Cal.3d 621 (1982); *Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. 1996) ("plaintiffs cannot be faulted for their thoroughness" in pleading related claims).

A "fully compensatory fee" is one that encourages the vindication of important rights through recovery of all costs and time spent on the case, calculated at private market rates.  It must ensure that attorneys are paid for all the time they devote to the litigation.  It is not limited by the number of causes of action on which relief is awarded, or the amount of damages recovered.  *See City of Riverside v. Rivera*, 477 U.S. 561, 581 (1986).  Parsing discrete issues according to their relative importance or

outcome is disfavored because doing so would require the trial court to make mini-determinations of prevailing party status on each dispute.  *See Brewster v. Dukakis*, 786 F.2d 16, 18 (1st Cir. 1986).  Once plaintiff has been determined to be the prevailing party, he is entitled to all reasonable time spent:

> Where "the plaintiff's claims of relief . . . involve a common core of facts or [are] based on related legal theories," so that "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."

*Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) (quoting *Hensley v. Eckerhart*, 461 U.S. at 435 (1983)).

In this case, it is apparent that all of plaintiffs' claims were interrelated, arising out of a common nucleus of operative fact, specifically the repeated shocking of their son Robert Heston until he sustained an acidosis related cardiac arrest. All the claims the jury considered were factually and legally interconnected.  Apportionment of plaintiffs' attorney's fees is therefore inappropriate.

## B. Plaintiffs' Fee Request Is Reasonable.

Under California law, courts are required to calculate an attorneys' fees award such that it provides full compensation for all the time reasonably expended in the litigation.  *Serrano v. Unruh*, 32 Cal.3d 621, 632-34, 639 (1982) (Serrano IV).  The purpose of the inquiry is to award a fee that will be "likely to entice competent counsel to undertake difficult public interest litigation." *San Bernardino Valley Audubon Society v. County of San Bernardino*, 155 Cal. App.3d 738, 755 (1984).  To accomplish this goal, the California courts have adopted the "lodestar" and "multiplier" formula for fee awards under public interest fee shifting statutes. Under this method, the court first computes the "lodestar" fees by multiplying the number of hours reasonably expended by each attorney by the reasonable hourly rate for that attorney's services.

*Serrano v. Priest*, 20 Cal.3d 25, 48 (1977) (*Serrano III*).   The court then enhances this "lodestar" by a "multiplier" to account for various factors in the litigation, including: (a) the contingent nature of the risk assumed by counsel; (b) the difficulty of the questions involved and the skill displayed in presenting them; and (c) the extent to which representation of the plaintiff precluded counsel from other employment. *Id*. at 48-49.   The product of the "lodestar" and the "multiplier" yields the amount of the total fee award.

**1.  The Number of Hours Claimed Is Reasonable**.

Plaintiffs seeks compensation for hours for the efforts of his trial counsel, John Burton and Peter M. Williamson, Mr. Williamson's partner Todd Krauss, Richard Thompson, an experienced legal assistant, Jaime Lemone, a retired nurse who works part-time as a medical-legal consultant, and Sandra Leonardis, an executive secretary.

The extensive tasks performed by plaintiffs' counsel are listed in the compilation of time records attached to the declarations of John Burton and Peter M. Williamson. All times listed in the compilation were reasonably spent in securing the successful resolution of this groundbreaking lawsuit.  Moreover, in reviewing the records, counsel has exercised billing judgment and is not seeking recovery for time that was spent on administrative or semi-clerical tasks, or on tasks that were duplicative or not sufficiently productive.

As is evident from a review of counsels' time records, the vast majority of time was spent in the extensive discovery, analysis of complex medical expert information and opinion, preparation of the opposition to summary judgment and reconsideration, blocking appeal and delay of the trial, extraordinary in limine challenges, trial preparation and trial.  Because of counsel's skill, knowledge and experience, this action was litigated efficiently and expeditiously, without unnecessary expenditure of time, or needless or duplicative work.  Given the difficult legal and factual issues raised in the litigation as evidence particularly by the extensive expert discovery and in limine motions, the length of the trial, the number of attorneys retained by and available to

1   defendants, the significant results obtained at trial and the complexity of the issues

2   raised in the post-trial motions, the total time expended was very reasonable.

3        Fees recoverable under fee-shifting statutes such as section 1021.5 "ordinarily

4   should include compensation for all hours reasonably spent." *Serrano IV*, 32 Cal.3d at

5   639; *Sundance v. Municipal Court* 192 Cal. App.3d 268, 273 (1987). The time

6   expended by counsel on behalf of plaintiffs in this action was reasonable, and should

7   be fully compensated.

8                  **2.       Plaintiffs are Entitled to Fees for Litigating the Fee Petition.**

9        It is well-established under California law, that a prevailing plaintiff is entitled

10  to recover fees and expenses for work performed in preparing and prosecuting an

11  attorneys' fees motion, so-called "fees on fees." *Serrano IV*, 32 Cal.3d at 639-39;

12  *Guinn v. Dobson,* 23 Cal.App.4th 262, 270 (1994) (failure to compensate for fees-on-

13  fees work would dilute fee awards and frustrate the purpose of the fee-shifting statutes);

14  *Downey Cares v. Downey Community Development Corp.*, 196 Cal. App.3d 983, 997-

15  98 (1987). In this application, plaintiffs have incorporated a small of fees incurred in

16  connection with these  papers. Plaintiff is entitled to full compensation for such time

17  and expenses.

18                 **3.       The Hourly Rates Claimed Are Reasonable.**

19       Under California law, reasonable hourly rates must be determined according to

20  prevailing market rates for attorney services. *Serrano IV*, 32 Cal.3d at 640-43; *see also*

21  *Bihun v. AT&T Information Systems, Inc.*, 13 Cal.App.4th 976, 997 (1993) ( appellate

22  court approved hourly rate of $450.00 twelve years ago, finding that hourly rates are

23  determined by "fees customarily charged by that attorney and others in the community

24  for similar work"). This, in turn, requires consideration of two primary factors: (1) the

25  experience and expertise of plaintiff's counsel; and (2) prevailing hourly rates for

26  attorneys of comparable experience and expertise in this legal community. *Serrano IV*,

27  32 Cal.3d at 640-43 and n. 31.

28

The hourly rates requested for Plaintiff's counsel in this action are as follows:

| | |
|---|---|
| John Burton (Attorney) | $500.00 per hour |
| Peter Williamson (Attorney) | $450.00 per hour |
| Todd Krauss (Attorney) | $250.00 per hour |
| Richard Thompson (Legal Assistant) | $125.00 per hour |
| Jaime Lemone, R.N. (Nurse Consultant) | $150.00 per hour |
| Sandy Leonardis (Executive Secretary) | $125.00 per hour |

The backgrounds and tasks performed by these time keepers are set forth in the declarations of John Burton and Peter M. Williamson.

### 4. Litigation Expenses.

Plaintiffs expended $182,308.42 in out-of-pocket expenses, some of which cannot properly be claimed in a memorandum of costs – expenditures including travel, parking, photocopying and messenger services, mock jury expenses, and expert fees.[1] These "litigation expenses," which are detailed in counsel's declarations, should be included in the lodestar. "Even though not normally taxable as costs, out-of-pocket expenses incurred by an attorney which would normally be charged to a fee paying client are recoverable as attorney's fees" under fee shifting statutes. *See Chalmers v. Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986) (42 U.S.C. § 1988).

Plaintiffs have prepared a cost bill, claiming $78,795.98 in taxable costs. Exhibit F. If the Court awards the litigation expenses, plaintiffs will not file the cost bill so there will be no double recovery.

Plaintiffs' total basic lodestar fees, determined by multiplying the number of hours expended by the hourly rate of each attorney and adding litigation expenses (including those which could be claimed in the bill of costs), is $1,605,435.92.

---

[1] Plaintiffs claim that the expert fees paid to Dr. Mark Myers are recoverable costs.

C.    **The Court Should Consider a Multiplier.**

Under the circumstances of this case, the Court might consider a multiplier. As the California Supreme Court explained,

> Under *Serrano III*, the lodestar is the basic fee for comparable legal services in the community; *it may be adjusted by the court* based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. (*Serrano III, supra*, 20 Cal. 3d at p. 49.) The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services. The "'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'" (*Ibid.*)

*Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (emphasis added). Each of the foregoing factors militates in favor of enhancing the lodestar here.[2]

1.    **The Novelty and Difficulty of the Issues Involved and the Skill Displayed in Presenting Them.**

Under what the courts call the "quality" factor, an upward "multiplier" is justified based on the novelty and complexity of the litigation and the skill displayed in presenting the case. *Wing v. Asarco, Inc.*, 114 F.3d 986 (9th Cir. 1997) (upholding multiplier of 2.0 based in part on quality of representation and the excellent result

---

[2]No multiplier is available under federal law.

obtained); *Vizcaino v. Microsoft Corp.*,290 F.3d 1043, 1051 (9th Cir. 1997) (upholding multiplier of 3.65 based on complexity and length of case). One specific consideration in adjusting a "lodestar" upward is the "results obtained," an exception result justifies an upward adjustment. *City of Oakland v. Oakland Raiders*, 203 Cal.App.3d 78, 84 (1988) (2.34 multiplier justified in part by novelty of issues and success of result obtained).

Here, the result obtained justifies an upward adjustment. The jury verdict was a national event. It marks the *first* time that TASER International has been held responsible for a death due to the negligent marketing of its product..

The case's complexity justifies a fee enhancement. The claims and defenses raised by the parties to the action resulted in unusual wrinkles. Especially important was plaintiffs need to understand the complex medical issues – which TASER sought to discredit or obscure at every turn – and to simplify them for presentation to the jury.

The skill and expertise of plaintiffs' counsel also justifies an upward enhancement in this case. This factor is difficult to argue modestly. Both plaintiffs' counsel enjoy exemplary reputations in their fields. The Court is certainly in the position to make its own assessment. Perhaps the best evidence in the record, however, consists of TASER's post-trial briefing, which implicitly recognizes the quality of the result achieved by arguing so vigorously against the amount of damages awarded.

**2.     The Extent to Which the Case Precluded Other Employment**.

Another factor that justifies an upward enhancement is the extent to which the case precluded counsel from accepting other employment. Here, the representation of plaintiff was assumed by John Burton, a solo practitioner, and Peter M. Williamson, a partner in a two-attorney firm. For more than three years, Mr. Burton or Mr. Williamson had to make themselves available for depositions, most of which were outside their own geographic area, drafting, and making court appearances requiring travel to San Jose. They worked virtually full-time on the case for the months of March, April and May 2008.

As explained in the accompanying declaration, in order to assure full, complete and effective representation of plaintiffs, Mr. Burton and Mr. Williamson had to limit their caseload carefully.  This too justifies an enhanced award.  *Serrano III*, 20 Cal.3d at 49; *Ketchum*, 24 Cal.4th at 1132.

### 3.   Contingent Risk.

The purpose of the contingent risk multiplier is "to determine a fee that is likely to entice competent counsel to undertake difficult public interest cases" and "cases of significant societal importance" by increasing the fee to compensate for the risks assumed. *Crommie v. Public Utilities Commission*, 840 F. Supp. 719,725 (N.D. Cal. 1994).  In other words, "the purpose [of the contingent risk multiplier] is to compensate for the risk of loss generally in contingency cases as a class." *Beasley v. Wells Fargo Bank, N.A.*, 235 Cal. App.3d 1407, 1419 (1991).  If any category of cases warrants a contingent risk multiplier, it is this one, where a company claims itself invulnerable to allegations brought on behalf of drug abusers and others targeted by users of its device.

Aside from the difficulties inherent in this particular sort of claim, it is well-established that the risk of loss generally in contingency cases merits enhanced compensation. *Beasley*, 235 Cal. App.3d at 1419.  As is established in the declarations of counsel submitted herewith, attorneys expect to receive compensation well in excess of their hourly billing rate in cases in which their compensation is contingent upon success, and would decline to represent plaintiffs in risky civil rights cases if it were not for this expectation. In light of the substantial risks of contingency litigation, and the need for experienced and competent counsel to represent plaintiffs in litigation affecting the public interest, it is important that courts award enhanced compensation in contingent risk litigation.

The contingency factor alone warrants a 2.0 multiplier.

**IV.   THE COURT SHOULD EXERCISE ITS DISCRETION NOT TO AWARD COSTS IN FAVOR OF THE SALINAS DEFENDANTS.**

Although Fed. R. Civ. P. 54(d)(1) creates a presumption in favor of awarding costs to a prevailing party, the rule also expressly vests the trial court with discretion to deny costs, so long as the court specifies appropriate reasons for doing so. *Association of Mexican-American Educators v. California*, 231 F.3d 572, 591-92 (9th Cir. 2000) (en banc).

In *Association of Mexican-American Educators*, plaintiffs brought suit under Title VII of the Civil Rights Act of 1964, against the State of California challenging the validity of the "CBEST" test used to qualify applicants to certain public schools. One of the challenges was to the "higher order" mathematics in the test. During the pendency of the action, defendant changed the mathematical component of the test. Plaintiffs sought to enjoin the use of the test and lost, the district court denied defendant's costs of $216,443.67. The district court gave four reasons for doing:   1) the case "involve[d] issues of substantial importance," 2) there was great economic disparity between plaintiffs, who were individuals and "small nonprofit educational organizations," and the State of California; 3) the issues in the case were close and difficult; and 4) plaintiffs' case, though unsuccessful, had merit. *Id.*, at 592.[3]

The Court should specify in an order denying costs here all four of the foregoing grounds. The issues are substantial and important. The problem of in-custody deaths relating to TASER usage is ongoing.  There is no question that economic disparity exists between the parties, and any objective review would show both that the issues were complex and plaintiffs' case against the Salinas defendants, though unsuccessful, was justified.

---

[3]The Ninth Circuit en banc opinion also noted approvingly, that although this circuit had not previously "approved of 'the good faith of the losing party,' other circuits have." *Id*. n. 15 (citing *Teague v. Bakker,* 35 F.3d 978, 997 (4th Cir. 1994)).

In *Stanley v. University of So. Calif.*, 178 F.3d 1069 (9th Cir. 1999), a case dismissed on summary judgment, the defendants were awarded costs over plaintiff's objection. On appeal the Ninth Circuit held that the district court should have considered the plaintiff's limited financial resources; and "the chilling effect of imposing such high costs on future civil rights litigants." *Id.*, at 1079. The Circuit court found the coach's argument that she would be rendered indigent was a compelling reason to deny a cost award stating "indigency is a factor that the district court may properly consider on deciding whether to award costs." *Id.*, at 1080.

Here, plaintiffs are of modest means and retired, with a variety of health issues. Although they appeared to have a $5.4 million judgment against TASER International, the Court has made legal rulings taking away all but $153,000 of the damages, an amount that would not even cover their own out-of-pocket expenses in this litigation.

The "imposition of such high costs on losing civil rights plaintiffs of modest means may chill civil rights litigation in this area . . .   Without civil rights litigants who are willing to test the boundaries of our laws, we would not have made much of the progress that has occurred in this nation since *Brown v. Board of Education*." *Stanley*, 178 F.3d at 1080.[4]   Years ago, one California district court put the matter as follows:

> To approve the cost bill proposed by defendant . . . would lead to a harsh result when plaintiff is an individual litigant and defendant is a large corporation. This case has been vigorously litigated, and this Court concludes that it would place an undue burden to tax costs against plaintiff. To do so in this context could only chill individual litigants of modest means seeking to vindicate their individual and class rights under the civil rights laws.

---

[4]In *Farmer v. Arabian American Oil Co.*, 379 U.S.  227, 235 (1965), the court cautioned district judges against "too great a movement in the direction of some systems of jurisprudence that are willing, if not indeed anxious, to allow litigation costs so high as to discourage litigants from bringing lawsuits, no matter how meritorious they might in good faith believe their claims to be."

1   *Schaulis v. CTB/McGraw-Hill Inc.*, 496 F. Supp 666, 680 (N.D. Cal.1980).

2       For the foregoing reasons, plaintiffs urge that the Court enter their proposed

3   judgment, or another form of judgment without awarding costs to the Salinas

4   defendants.

5   **V.      CONCLUSION.**

6       For the foregoing reasons, plaintiffs urge that the Court award them attorneys'

7   fees in the amount of $1,605,435.92 , and consider a multiplier, such as 2. The Court

8   should exercise it discretion to deny costs to the Salinas defendants.

9

10  DATED:   November 10, 2008

11                                  Respectfully submitted,

12                                  THE LAW OFFICES OF JOHN BURTON

13                                  WILLIAMSON & KRAUSS

14

15

16                                  BY:  ___/s/   JOHN BURTON_____
                                         Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28