1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

8

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

SAN JOSE DIVISION

10

Betty Lou Heston, et al.,                                      NO. C 05-03658 JW

11

                Plaintiffs,              **ORDER GRANTING PLAINTIFFS'**
   v.                                                          **MOTION FOR ATTORNEY FEES;**

12

                                        **DENYING DEFENDANT SALINAS'**
City of Salinas, et al.,                                     **MOTION FOR COSTS**

13

                Defendants.

14

                                     /

15

## I.  INTRODUCTION

16

       Robert C. Heston, Jr. died after electronic shock devices called "Tasers" were deployed

17

against him by Salinas Police Officers.  His mother and father and the executor of his estate

18

(collectively, "Plaintiffs") initiated this civil action against the City of Salinas, the individual police

19

officers (collectively, "Salinas") and against TASER International ("TASER").

20

       Plaintiffs claimed, *inter alia*, that the police violated Robert C. Heston's civil rights in their

21

use of excessive force.  Plaintiffs also claimed that TASER negligently failed to provide warnings

22

that repeated applications of the electrical current in the deployment of a Taser can cause cardiac

23

arrest, especially on persons who are in an agitated or excited physical state.  The case was tried to a

24

jury, which returned verdicts in favor of Defendant Salinas and against Defendant TASER for

25

negligently failing to warn.

26
27
28

**United States District Court**
For the Northern District of California

1   Presently before the Court are Plaintiffs' Motion for Attorney Fees[1] and Defendants Salinas'

2   Motion for Costs.[2]  The Court conducted a hearing on December 22, 2008.  Based on the papers

3   submitted to date and oral argument, the Court GRANTS Plaintiffs' Motion for Attorney Fees and

4   DENIES Salinas' Motion for Costs.

5   **II.  BACKGROUND**

6       Plaintiffs alleged that the police officers subjected Robert C. Heston to excessive force in

7   violation of his Fourth Amendment rights and deprived Plaintiffs Betty Lou Heston and Robert H.

8   Heston of their due process rights to familial relations in violation of the Fourteenth Amendment.[3]

9   Plaintiffs also alleged that Defendant TASER (1) negligently manufactured the TASER M26 ECDs

10  ("ECD"); (2) failed to provide adequate warnings that repeated applications of the electrical current

11  in the deployment and the use of a TASER ECD can cause cardiac arrest, especially on persons who

12  are in an agitated or excited physical state; and (3) is strictly liable for failure to provide adequate

13  warnings.  (October 24 Order at 2.)

14      The case was tried to a jury.  On June 6, 2008, the Jury returned a verdict finding that the

15  police officers did not use excessive force when they deployed their Tasers against Robert C.

16  Heston.  Thus, the jury found that the police officers did not violate the constitutional rights of the

17  deceased or his parents, nor did the officers commit a battery.  Since there was no finding against the

18  individual officers, the jury, as instructed, did not make a finding with respect to the City of Salinas.

19  (See Jury Verdict, Docket Item No. 323.)

20      With respect to Defendant TASER, the Jury found that on February 19, 2005, Salinas police

21  officers subjected Robert C. Heston to a prolonged deployment from Tasers; that Defendant

22  _____

23      [1]  (hereafter, "Plaintiffs' Motion," Docket Item No. 349.)

24      [2]  (hereafter, "Salinas Motion," Docket Item No. 338.)

25      [3]  A more complete recitation of the background of this case may be found in the Court's
    previous orders.  (See December 20, 2007 Order Granting in Part and Denying in Part Defendants'
26  Motion for Summary Judgment, Docket Item No. 122; Order Granting Defendant TASER's
    Renewed Motion for Judgment; Denying Defendant TASER's Alternative Motion for a New Trial at
27  1-2, hereafter, "October 24 Order," Docket Item No. 374.)

28                                              2

United States District Court

For the Northern District of California

1  TASER's failure to warn of the risks associated with a prolonged deployment was a substantial

2  factor in causing the police officers to administer a prolonged deployment; and that as a

3  consequence of the prolonged deployment, Robert C. Heston suffered acidosis to a degree which

4  caused him to have a cardiac arrest, leading to his death.  (See Jury Verdict, Docket Item No. 323.)

5  In sum, the Jury found that reasonably prudent manufacturers of electronic control devices knew or

6  should have known that prolonged administration of electricity from the devices pose a danger, i.e.,

7  a risk of acidosis, to a degree which posed a risk of cardiac arrest.  The jury found that Defendant

8  TASER failed to warn purchasers of those risks.

9       With respect to the survival action brought by the Executor of the Heston Estate, the Jury

10  awarded $21,000 in compensatory damages and $200,000 in punitive damages to the Estate.  With

11  respect to the wrongful death action brought by the parents, the Jury awarded $1,000,000 in

12  compensatory damages and $5,000,000 in punitive damages to the parents.  (See Jury Verdict,

13  Docket Item No. 323.)  However, the Jury found that Robert C. Heston was 85% comparatively at

14  fault in causing his injuries.  Accordingly, the judgment for compensatory damages in favor of

15  Heston's Estate and his parents was reduced to $3,150[4] and $150,000, respectively.  (See October 24

16  Order at 8.)

17       On October 24, 2008, the Court found that the Jury's award of $200,000 in punitive damages

18  to the Estate and $5,000,000 in punitive damages to the family were improper as a matter of law.

19  (October 24 Order at 11-13.)  Thus, Plaintiffs' total remaining recovery is $153,150.

20       Presently before the Court are Plaintiffs' Motion for Attorney Fees and Salinas' Motion for

21  Costs.

22

23

24

25

26  ───────────────

27  [4] (See Order Granting Defendant Taser International, Inc.'s Ex Parte Application to Correct One Error in the 10-24-08 Order *Nunc Pro Tunc*, Docket Item No. 391.)

28                                          3

# IV.  DISCUSSION

**A.**     **Plaintiffs' Motion for Attorney Fees**

Plaintiffs move for attorney fees under Cal. Code Civ. Proc. § 1021.5.  This section provides an exception to the general rule that each party bears its own attorney fees in litigation.  Section 1021.5 provides as follows:

> a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Cal. Code Civ. Proc. § 1021.5.  California has identified four conjunctive requirements for applying the exception: (1) a plaintiff must be a successful party in an action resulting in the enforcement of an important right affecting the public interest; (2) a significant benefit, whether pecuniary or nonpecuniary, must have been conferred on the general public or a broad class of persons, (3) the necessity and financial burden of private enforcement must transcend the litigant's personal interest in the controversy, and (4) such fees should not in the interest of justice be paid out of the recovery. Vasquez v. State, —Cal. Rptr. 3d—, No S143710, 2008 WL 4936884, *4 (Cal. 2008).  A trial court has considerable discretion in deciding whether fees are appropriate.  Id.

**1.**     **Important Right Affecting the Public Interest**

Plaintiffs contend that this action concerned the enforcement of an important right affecting the public interest.[5]

Whether an important public interest is at stake requires "an examination of the subject matter of the action–i.e., whether the right involved was of sufficient societal importance."  Beasley v. Wells Fargo Bank, 235 Cal. App. 3d 1407, 1417-18 (1991).  A court "must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate

---

[5] (Plaintiffs' Reply to TASER's Supplemental Opposition to Motion for Award of Attorneys' Fees on Judgment at 7, hereafter, "Reply," Docket Item No. 7.)

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  an important right so as to justify an attorney fee award under a private attorney general theory."

2  Woodland Hills Residents Assn., Inc. v. City Council, 23 Cal. 3d 917, 938 (Cal. 1979).

3        The use of Tasers by police departments has become increasingly widespread.  Their

4  growing prevalence as a law enforcement weapon makes the warnings given about their use an issue

5  of significant societal importance.  Thus, the issue of whether Defendant TASER owes a duty to

6  warn police about the risks of cardiac arrest under certain circumstances concerns an important right

7  affecting the public interest.  Here, Plaintiffs directly affected a public interest because their lawsuit

8  alleged that Defendant TASER breached a duty to warn police departments about certain risks

9  associated with metabolic acidosis and prolonged exposure to electric shock from Tasers.

10  Ultimately, Plaintiffs were successful in proving that Defendant TASER's negligent failure to warn

11  Salinas police officers that prolonged application of electric current from Tasers increased the risk of

12  death from metabolic acidosis, in part, resulting in the unintended death of Robert C. Heston.

13        Defendant TASER disputes the societal importance of Plaintiffs' successful negligence claim

14  on the ground that it does not vindicate any legislative or constitutional goal.  (Opposition at 9-10.)

15  However, a court does not determine whether an action concerns an important public interest by

16  looking solely to whether it is grounded in statutory or constitutional rights.  A court "must

17  realistically assess the litigation and determine, from a practical perspective, whether or not the

18  action served to vindicate an important right . . . ."  Woodland Hills, 23 Cal. 3d at 938.  There is no

19  requirement under § 1021.5 that the vindicated right be statutory or constitutional.  See Estrada v.

20  FedEx Ground Package System, Inc., 154 Cal. App. 4th 1, 4 (2007).  In addition, a plaintiff may

21  recover attorney fees against private companies and public entities alike, as long as the requirements

22  of § 1021.5 are satisfied.  Press v. Lucky Stores, 34 Cal. 3d 311, 317-18 (Cal. 1983).

23        Accordingly, the Court finds that the subject matter of Plaintiffs' action sufficiently concerns

24  an important right affecting the public interest.

25

26

27

28                                5

**United States District Court**
For the Northern District of California

**2.      A Significant Benefit to the Public or a Large Class of Persons**

Plaintiffs contend that their successful verdict benefits the public in two significant ways. First, the verdict is causing police departments across the nation and the world to heed the risks of prolonged and repeated use of Taser electric current.  Second, the verdict will eventually cause Defendant TASER to revise its training and warnings.  (Motion at 7.)

The public derives a benefit any time "illegal private or public conduct is rectified." Woodlands, 23 Cal. 3d at 939.  However, an of award attorney fees under § 1021.5 is appropriate only when the public benefit is *significant*–i.e., beyond the usual interest "in seeing that legal strictures are properly enforced."  Id.  Determining the significance of a public benefit requires "realistically assessing the gains that have resulted in the particular case." Flannery v. California Highway Patrol, 61 Cal. App. 4th 629, 635 (Cal. Ct. App. 1998).  "The evidence of the size of the population benefitted by a private suit is not always required.  The substantial benefit may be conceptual or doctrinal, and need not be actual and concrete, so long as the public is primarily benefitted." Planned Parenthood v. Aakhus, 14 Cal. App. 4th 162, 172 (Cal. Ct. App. 1993).

Here, as discussed at trial, Defendant TASER markets its products as an effective *non-lethal* tool for law enforcement.  Indeed, Defendant TASER highlights the *non-lethal* nature of its Tasers when used under a variety of circumstances, including multiple or prolonged deployments.  From the evidence in this case, the jury found that TASER's ECD is likely to be dangerous where "prolonged exposure to electric shock from the device potentially causes acidosis to a degree which poses a risk of cardiac arrest in a person against whom the device is deployed," and that Defendant TASER's failure to warn of such a risk "was a substantial factor in causing the officers to use the device in such a way."  (See Jury Verdict, Docket Item No. 323.)  In support of their motion, Plaintiffs provide evidence that, as a result of this verdict, law enforcement officials all over the world are re-considering and potentially reforming their usage and training policies for Tasers.  For example, Plaintiffs provide excerpts from a special parliamentary report concerning the use of

United States District Court

For the Northern District of California

Tasers by a local Australian police department.  The report specifically discusses Plaintiffs' verdict, and offers the following recommendation:

> The [New South Wales] Police Force [should] develop policies to inform police about the most appropriate way to manage a situation involving a person thought to be experiencing, or displaying characteristics associated with, excited delirium or psychosis. . . . [W]e feel that police should have strict guidance about when it is reasonable to apply multiple or prolonged charges.[6]

The notoriety of Plaintiffs' first-of-its-kind verdict, in some circumstances, has prompted a number of TASER customers and prospective customers to consider the risk of repeated and prolonged Taser electric charges on individuals in an excited or delirious state.  (See, e.g., Leonardis Decl., Exs. M, N, O.)

Additionally, while Defendant TASER has yet to adopt a warning addressing the risks of metabolic acidosis, Plaintiffs insist that it will eventually address the risk of acidosis in its training policies and warnings.  Defendant TASER contends that Plaintiffs have not caused any changes to its policies because it adopted warnings concerning prolonged exposure to TASER electrical charges before the initiation of Plaintiffs' suit.  (Opposition at 13.)  However, the warnings provided by Defendant TASER concern "strong muscle contractions that may impair breathing and respiration," and recommend avoiding prolonged or extensive multiple discharges "to minimize the potential for over-exertion of the subject or potential impairment of full ability to breathe over a protracted time period."[7]  Such warnings do not address the obligation Defendant TASER owed Robert C. Heston to warn police about the risk of causing metabolic acidosis to the point of cardiac arrest.[8]  Although Defendant TASER may choose not to alter its policies or warnings as a result of Plaintiffs' action,

---

[6]  (Declaration of Sandy Leonardis in Support of Plaintiffs' Reply to TASER's Opposition to Motion for Award of Attorneys Fees on Judgment, Ex. O, hereafter, "Leonardis Decl.," Docket Item No. 397.)

[7]  (Declaration of Patrick Smith in Support of Defendant TASER International, Inc.'s Opposition to Plaintiffs' Conditional Motion for Attorneys Fees, Ex. C, Docket Item No 383.)

[8]  The Court also notes that TASER's current warnings do not address metabolic acidosis. (Leonardis Decl., Ex. L.)

United States District Court

For the Northern District of California

1   the specter that further liability could result from such inaction remains a conceptual benefit to the

2   public.[9]

3        Accordingly, the Court finds that a significant benefit has been conferred on the public.

4        **3.      The Financial Burden of Private Enforcement**

5        Plaintiffs contend that the private burden of this litigation transcends their personal interest

6   because significant compensatory damages were not feasible and the availability of punitive

7   damages was uncertain.  (Motion at 6.)

8        When the primary effect of a lawsuit "was to advance or vindicate a plaintiff's personal

9   economic interests, an award of fees under § 1021.5 is improper."  Flannery, 61 Cal. App. 4th at 635

10  (Cal. Ct. App. 1998) (citing Press, 34 Cal. 3d at 319-20).  "Section 1021.5 was not designed as a

11  method for rewarding litigants motivated by their own pecuniary interests who only coincidentally

12  protect the public interest."  Beach Colony II v. Cal. Coastal Com., 166 Cal. App. 3d 106, 114 (Cal.

13  Ct. App. 1985).  Since the purpose of § 1021.5 is to encourage public interest lawsuits that offer

14  private litigants little personal incentive, a court must assess a plaintiff's individual stake by

15  considering the expected value of the litigation at the time they decided to bring suit.  Los Angeles

16  Police Protective League v. City of Los Angeles, 188 Cal. App. 3d 1, 9 (Cal Ct. App. 1986).  This

17  expected value determination is not measured by the amount of recovery that was sought or that was

18  actually obtained.  Instead, it is based on the plaintiff's actual recovery discounted by the reasonable

19  probability of succeeding at the time the suit was filed.  Id.  Then, the court must compare the

20  expected value to the actual costs.  Id.

21       This case resulted in, for the first time, a successful verdict by a jury against Defendant

22  TASER for negligence which caused a death.  Thus, at the time that Plaintiffs decided to bring this

23  suit, there was a significant possibility that Plaintiffs would recover nothing.  The expected value of

24  the litigation is further mitigated by Plaintiffs' and their counsel's recognition that Robert C. Heston

25

26  _____

27       [9]  The Court will not speculate as to the existence or scope of any collateral estoppel in future
    actions arising out of the Judgment of this action.

28                                          8

had contributed to his own death through a history of drug abuse and use of methamphetamine at the time of his death.  The possibility of punitive damages at the initiation of this suit was also highly uncertain because, as discussed in the Court's October 24 Order, Heston's Estate would have to establish "conscious disregard" by Defendant TASER.  (October 24 Order at 11.)  In addition, punitive damages are not available in a wrongful death action.  (October 24 Order 13.)

Plaintiffs' actual total recovery was $153,150.  Plaintiffs' counsel submitted a lodestar of $1,423,127.50.[10]  Thus, Plaintiffs' actual recovery is significantly less than the cost of the litigation even if it is not discounted to reflect the substantial risk of non-recovery incurred by Plaintiffs and their counsel.

Defendant TASER points out that a court can look to the recovery sought to determine a plaintiff's personal stake where doing otherwise would allow attorney fees to become a form of insurance to plaintiffs who significantly overestimate the value of their case.  <u>Satrap v. Pacific Gas & Elec. Co.</u>, 42 Cal. App. 4th 72, 79 (1996).  The Court finds that this case does not reflect the kind of circumstances described in <u>Satrap</u>.  Due to the novelty of Plaintiffs' negligence theory and the likelihood that any recovery would be diminished by Robert C. Heston's contribution to his own death, Plaintiffs were faced with the substantial risk of recovering very little or nothing at all.  As such, Plaintiffs' actual recovery is the best measure of the action's expected value.

Accordingly, the Court finds that the financial burden of Plaintiffs' action transcends their personal interest in the outcome.

**4.      The Interest of Justice**

Plaintiffs contend that due to the inequity between their recovery and the costs of this action, an award of attorney fees avoids injustice.  (Motion at 6.)

---

[10]  (Plaintiffs' Supplemental Memorandum Re: Awarding Attorneys Fees on Judgment Against Defendant TASER and Denying Costs to Salinas Defendants at 8, hereafter, "Supplemental Memo," Docket Item No. 389.) The Court does not include the $182,308.42 for "Litigation Expenses" in its consideration of attorney fees.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Despite a significant benefit to the public, Plaintiffs are faced with the prospect of paying their attorneys out of a relatively minor recovery.  The non-fee litigation expenses of Plaintiffs' counsel alone exceeds the recovery.[11]  Further, Plaintiffs' attorneys vigorously litigated this case on a contingency-fee basis and, without the benefit of recovering fees from the losing party, stand to be paid significantly less than the reasonable value of conducting this action.[12]  Thus, the Court finds that it would be contrary to the interest of justice to require Plaintiffs to be solely responsible for litigation that has inured a significant benefit to the public.  Further, it would be contrary to the interest of justice for Plaintiffs' counsel, in a case like this, to receive a fee drastically less than the reasonable valuable of their services.

Accordingly, in the interest of justice, Plaintiffs' attorney fees will not be limited to an amount based on the recovery.

In sum, the Court finds the <u>Vasquez</u> factors support the grant of fees in this case and GRANTS Plaintiffs' Motion for Fees.  The Court proceeds to consider whether the lodestar should be adjusted due to the nature and result of this case.

### 5.    Enhancement of Attorneys Fees

Plaintiffs contend that the Court should multiply its lodestar by two based on the difficulty and novelty of the questions involved and the skill displayed by the attorneys.  (Supplemental Motion at 9.)

A court may adjust a lodestar to reflect a higher amount in an effort to "fix a fee at the fair market value for the particular action."  <u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1132 (Cal. 2001).  The factors a court should consider include the following:  "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of the fee

---

[11] (Declaration of John Burton in Support of Plaintiffs' Request for Attorneys' Fees ¶ 19, hereafter, "Burton Decl.," Docket Item No. 388.)

[12] (Declaration of Peter Williamson in Support of Plaintiffs' Request for Attorneys Fees ¶ 13-14, Docket Item No. 387.)

10

award."  The purpose of a fee enhancement "is primarily to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases as a class.  To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether."  Id.

In this case, the Court declines to apply a multiplier.  The difficulty of the case and the skill of Plaintiffs' counsel are reflected in the proposed lodestar through the large expenses and hourly rates.  Although Plaintiffs' counsel worked on contingent-fee basis, the Court finds that awarding the full amount of an appropriate lodestar is adequate to compensate Plaintiffs' counsel for the contingent risk they incurred in representing Plaintiffs in this action.  In addition, Plaintiffs were not the prevailing parties on their claims against the other Defendants.

Accordingly, the Court finds that application of an upward multiplier is inappropriate in this case.

**B.     Salinas' Motion for Costs**

Defendant Salinas moves for an award of costs from Plaintiffs under Fed. R. Civ. P. 54(d)(1).

Federal Rule of Civil Procedure 54(d)(1) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs."  Thus, Rule 54(d) creates a presumption in favor of awarding costs to prevailing parties, and "it is incumbent upon the losing party to demonstrate why the costs should not be awarded."  Stanley v. University of Southern California, 178 F.3d 1069, 1079 (9th Cir. 1999).  Whether to relieve the losing party of the presumption is within the discretion of the trial court.  Assoc. of Mexican-American Educators v. California, 231 F.3d 572, 592 (9th Cir. 2000).  However, a court must specify its reasons for refusing to award costs.  Id.  This requirement is "in essence, a requirement that the court explain why a case is not 'ordinary' and why, in the circumstances, it would be inappropriate and inequitable to award costs."  Id. at 593.  In addressing whether costs are appropriate, courts should also consider "the chilling effect of imposing such high costs on future civil rights litigation."  Stanley, 178 F.3d at 1079.

United States District Court

For the Northern District of California

1   This is an extraordinary case.  Although Plaintiffs' civil rights claim against Salinas was

2   unsuccessful, it was part-and-parcel of an action that has provided a significant benefit to the public.

3   With respect to the potential chilling effect of imposing costs, requiring Plaintiffs to pay Defendant

4   Salinas' costs would be contrary to the goal under § 1021.5 of incentivizing private litigants to bring

5   actions that provide significant public benefit but offer little personal reward.  Here, Plaintiffs

6   brought their civil rights claim in good faith, and it concerned issues that were important, complex

7   and novel.  Awarding costs in such a case substantially risks chilling future civil rights litigation.

8   Accordingly, the Court DENIES Defendant Salinas' Motion for Costs.

9   **V.  CONCLUSION**

10   The Court GRANTS Plaintiffs' Motion for Attorney Fees and awards to Plaintiffs from

11   Defendant TASER the amount of $1,423,127.  The Court DENIES Defendant Salinas' Motion for

12   Costs.  Judgment shall be entered accordingly.

13

14   Dated: January 30, 2009

15   JAMES WARE
     United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28                                    12

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Douglas Frank Young dyoung@hurleylaw.com
John Christopher Burton johnburtonlaw@yahoo.com
Michael A Brave brave@laaw.com
Mildred Katherine O'Linn mko@mmker.com
Peter M. Williamson pmw@williamson-krauss.com
Susan J. Matcham susanm@ci.salinas.ca.us
Susan K. Blitch sblitch@hurleylaw.com
Vanessa W. Vallarta vanessav@ci.salinas.ca.us
Vincent P. Hurley vphurley@hurleylaw.com

**Dated: January 30, 2009**          **Richard W. Wieking, Clerk**


By:   **/s/ JW Chambers**
          **Elizabeth Garcia**
          **Courtroom Deputy**

United States District Court
For the Northern District of California